UNITED STATES BANKRUPTCY COURT

DISTRICT OF RHODE ISLAND

In re:

CITY OF CENTRAL FALLS,
RHODE ISLAND

Debtor

**Case No. 11-13105**

**Chapter 9**

**PLAN FOR THE ADJUSTMENT OF
DEBTS OF CITY OF CENTRAL
FALLS, RHODE ISLAND**

**Date:**
**Time:**
**Judge: The Honorable Frank J. Bailey**

## TABLE OF CONTENTS                                                    Page

| | | |
|---|---|---|
| **I.** | **DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION** | …1 |
| | A. Definitions | 1 |
| | B. Rules of Construction | 6 |
| **II.** | **TREATMENT AND DEADLINE FOR THE ASSERTION OF ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS** | 6 |
| | A. Treatment of Administrative Claims | 6 |
| | B. Treatment of Professional Claims | 6 |
| | C. Priority Claims In Chapter 9 | 7 |
| | D. Deadline for the Filing and Assertion of Administrative Claims (Other Than Ordinary Course Administrative Claims) and Professional Claims | 7 |
| **III.** | **DESIGNATION OF CLASSES OF CLAIMS** | 7 |
| **IV.** | **TREATMENT OF CLAIMS** | 13 |
| **V.** | **ACCEPTANCE OR REJECTION; CRAM DOWN** | 20 |
| | A. Voting of Claims | 20 |
| **VI.** | **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** | 21 |
| | A. Assumption of Executory Contracts and Unexpired Leases | 21 |
| | B. Cure Payments | 21 |
| | C. Rejection of Executory Contracts and Unexpired Leases | 21 |
| | D. Claims Arising From Rejection | 21 |
| | E. Executory Contracts and Unexpired Leases Not Included In Motion | 22 |
| **VII.** | **IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS PLAN** | 22 |
| | A. Claims and Causes of Action | 22 |
| **VIII.** | **DISTRIBUTIONS** | 23 |
| | A. Delivery of Distributions | 23 |
| | B. Undeliverable Distributions | 23 |
| | C. Distributions of Cash | 24 |
| | D. Timeliness of Payments | 24 |
| | E. Compliance With Tax Requirements | 24 |
| | F. Time Bar to Cash Payments | 25 |
| | G. No Distributions on Account of Disputed Claims | 25 |
| | H. No Postpetition Accrual | 25 |

**IX.    DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; PROSECUTION OF OBJECTIONS TO DISPUTED CLAIMS** ................................................ 25

    A.    Claims Objection Deadline; Prosecution of Objections ................................ 25

    B.    Reserves, Payments, and Distributions With Respect to Disputed Claims .... 26

**X.    EFFECT OF CONFIRMATION** .............................................................. 26

    A.    Discharge of the City ...................................................................... 26

    B.    Injunction ..................................................................................... 27

    C.    Term of Existing Injunctions or Stays .............................................. 27

**XI.    RETENTION OF AND CONSENT TO JURISDICTION** .................................. 27

**XII.    CONDITIONS PRECEDENT** ................................................................ 29

**XIII.    MISCELLANEOUS PROVISIONS** .......................................................... 29

    A.    Severability ................................................................................... 29

    B.    Governing Law .............................................................................. 30

    C.    Effectuating Documents and Further Transactions.............................. 30

    D.    Notice of Effective Date ................................................................. 30

    E.    Termination of Receiver……………………………………………………..30

**<u>Exhibit List to Plan of Debt Adjustment</u>**

A.   Holders of $12,000,000 City of Central Falls, Rhode Island General Obligation School
     Bonds, dated July 15, 1999

B.   Holders of $8,700,000 City of Central Falls, Rhode Island General Obligation Municipal
     Facility Bonds, dated October 1, 2007

C.   Comparison Table of Restructured Health Care Benefits

D.   List of Class 7 Retiree Health Insurance Claims

E.   Comparison Table of Restructured Pension Benefits

F.   List of Class 8 Retiree Accidental Disability Claims

G.   List of Class 9 Retiree $10,000 and Under Circuit Breaker Pension Claims.

H.   List of Class 10 Retiree Reduced to $10,000 Circuit Breaker Pension Claims

I.   List of Class 11 Retiree 45% Circuit Breaker Pension Claims

J.   List of Class 12 Retiree Pension Claims

K.   Revised Payment Schedule for Rescue Lease

**NOTE: The Bankruptcy Court has not yet approved a disclosure statement with respect to the proposed Plan of Adjustment of Debts. The filing of this Proposed Plan is not intended to and should not be construed to be a solicitation of acceptances of the Plan.**

The City of Central Falls, Rhode Island (the "City"), a debtor under Chapter 9 of the United States Bankruptcy Code (the "Bankruptcy Code"), hereby proposes the following Plan of Adjustment of Debts (the "Plan") pursuant to § 941 of the Bankruptcy Code.

## I.  DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION.

### A.  Definitions.

1.  **Administrative Claim** means any Claim for an administrative expense of the kind described in §§ 503(b) or 507(a)(2) of the Bankruptcy Code.

2.  **Allowed Claim** means a Claim that:

a.  is asserted in a proof of claim filed in compliance with § 501 of the Bankruptcy Code and any applicable orders of the Bankruptcy Court and as to which: (i) no objection has been filed within the deadline established pursuant to Article IX, § A of the Plan; (ii) the Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim (but only in the amount so allowed); or (iii) the Bankruptcy Court has entered a Final Order under § 502(c) of the Bankruptcy Code estimating the amount of the Claim for purposes of allowance;

b.  is subject to a stipulation between the City and the Holder of such Claim providing for the allowance of such Claim;

c.  is deemed "allowed" pursuant to this Plan;

d.  is designated as "allowed" in a pleading entitled "Designation of Allowed Claims" (or a similar title of the same import) filed with the Bankruptcy Court by the City on or after the Effective Date; or

e.  is an Administrative Claim as to which the Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim (but only in the amount so allowed).

3.  **Assumption Motion** means a motion filed by the City pursuant to § 365(a) of the Bankruptcy Code under which the City seeks approval and authorization for its

assumption of an executory contract or unexpired lease as shall be identified in each such Assumption Motion.

4.     **Ballot** means the ballot(s), in the form(s) approved by the Bankruptcy Court in the Plan Solicitation Order, accompanying the Disclosure Statement and provided to each Holder of a Claim entitled to vote to accept or reject this Plan.  Each such ballot shall also provide creditors whose claim exceeds $2,500.00 with the option of reducing their claims to $2,500.00 in order to become classified as part of the **Class 14 General Unsecured Convenience Claims.**

5.     **Bankruptcy Code** means Title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 9 Case.

6.     **Bankruptcy Court** means the United States Bankruptcy Court for the District of Rhode Island, or such other court that lawfully exercises jurisdiction over the Chapter 9 Case.

7.     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 9 Case, together with the local rules of the Bankruptcy Court applicable to the Chapter 9 Case. Unless otherwise indicated, references in this Plan to "Bankruptcy Rule _____" are to the specifically identified rule of the Federal Rules of Bankruptcy Procedure.

8.     **Bar Date** means the applicable date by which a particular proofs of claim must be filed, as established by the Bankruptcy Court or under the terms of this Plan.

9.     **Cash** means cash and cash equivalents, including withdrawable bank deposits, wire transfers, checks, and other similar items.

10.     **Chapter 9 Case** means the case under Chapter 9 of the Bankruptcy Code commenced by the City, styled as *In re City of Central Falls, Rhode Island,* Case No. 11-13105, currently pending in the Bankruptcy Court.

11.     **City** means the City of Central Falls, Rhode Island, the debtor in the Chapter 9 Case.

12.     **Claim** means a Claim against the City or the property of the City within the meaning of § 101(5) of the Bankruptcy Code.

13.     **Class** means one of the classes of Claims established under § 1122 of the Bankruptcy Code.

14.     **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

15.     **Confirmation Order** means the order of the Bankruptcy Court confirming this Plan pursuant to § 943 of the Bankruptcy Code.

16.     **Disallowed Claim** means a Claim or portion thereof that has been disallowed by an Order.

17.     **Disclosure Statement** means the disclosure statement, and all exhibits and schedules incorporated therein, that relates to this Plan and that is approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented in accordance with the Bankruptcy Code.

18.     **Disputed Claim** means any Claim or portion thereof that has not become allowed and that is not disallowed. In the event that any part of a Claim is Disputed, except as otherwise provided in this Plan, such Claim shall be deemed Disputed in its entirety for purposes of distribution under this Plan, unless the City otherwise agrees in writing in its sole discretion. Without limiting the foregoing, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, reduce, subordinate, or estimate such Claim shall be deemed to be Disputed.

19.     **Effective Date** means the thirtieth (30th) day after the Court enters a Final Order confirming this Plan.

20.     **Final Order** means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not

been reversed, stayed, modified, or amended and as to which: (a) the time to appeal or petition for review, rehearing or certiorari has expired and no appeal or petition for review, rehearing or certiorari is then pending; or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

21.    **General Fund** means the City's chief operating fund, which is used to account for all financial resources except those required to be accounted for in another fund (such as the Restricted Funds).

22.    **General Unsecured Claim** means any unsecured claim that is not an Administrative Claim.

**23.    General Unsecured Claims Pool** means the aggregate of $613,147 for pro rata distribution to Holders of **Allowed General Unsecured Claims**.

24.    **General Unsecured Claims Payment Dates** means June 30, 2013, June 30, 2014, June 30, 2015 and June 30, 2016 or such earlier date(s) on which the City determines to make its annual distribution to Holders of Allowed **Class 13 General Unsecured Claims**.

25.    **Holder** means a creditor that holds a Claim.

26.    **Impaired** means a Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

28.    **Notice of Effective Date** shall have the meaning ascribed to such phrase in Article II, Section D of the Plan.

29.    **Ordinary Course Administrative Claim** means an Administrative Claim, other than a Professional Claim, that represents an obligation incurred post-petition in the ordinary course of business of the City (as determined by the City in its sole discretion).

30.    **Petition Date** means August 1, 2011.

31.    **Plan** means this Plan for the Adjustment of Debts of City of Central Falls, Rhode Island dated September 22, 2011, together with any Exhibits, each in their present form or as they may be altered, amended or modified from time to time in accordance with the provisions of this Plan, the Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

32. **Plan Solicitation Order** means an Order issued by the Bankruptcy Court approving the Disclosure Statement, providing information for the purpose of dissemination and solicitation of votes on and confirmation of this Plan, and establishing certain rules, deadlines, and procedures for the solicitation of votes with respect to and the balloting on this Plan.

33. **Pre-Effective Date Claims** shall have the meaning ascribed to such phrase in Article X, Section 1.

34. **Professional Claim** means a Claim required to be filed pursuant to Article II, Section D of the Plan for approval of amounts, if any, to be paid on or after the Effective Date for services or expenses in the Chapter 9 Case or incident to this Plan rendered by professionals employed by the City or rendering services on behalf of the City.

35. **Rejection Motion** means a motion which may be filed by the City pursuant to § 365(a) of the Bankruptcy Code pursuant to which the City shall seek approval and authorization for the rejection of an executory contract and unexpired lease, as shall be identified in said Rejection Motion.

36. **Restricted Funds** means special purpose and enterprise funds administered by the City and/or trust funds, the use of which is restricted by, among other things, grants, federal law, the Rhode Island Constitution, another Rhode Island law, or City ordinance such that the assets of the Restricted Funds may not lawfully be used to pay obligations of the General Fund.

37. **Rights of Action** means any rights, claims, or causes of action owned by, accruing to, or assigned to the City pursuant to the Bankruptcy Code or pursuant to any contract, statute, or legal theory, including without limitation any rights to, claims, or causes of action for recovery under any policies of insurance issued to or on behalf of the City.

38. **Secured Claim** means a Claim that is subject to a valid, perfected and enforceable lien or security interest, in whole or in part, to the extent of the value of such creditor's interest in the City's property, determined in accordance with § 506(a) of the Bankruptcy Code.

39. **Unclaimed Property** shall have the meaning ascribed to such phrase in

Article XIII, Section B(1) of the Plan.

40. **Unimpaired** means a Claim that is not Impaired within the meaning of § 1124 of the Bankruptcy Code.

### B.   Rules of Construction.

The following rules of construction apply to this Plan: (a) unless otherwise specified, all references in this Plan to "Sections" (or "§" or "§§") and "Exhibits" are to the respective Section in or Exhibit to this Plan, as the same may be amended or modified from time to time; (b) the headings in this Plan are for convenience of reference only and do not  limit or otherwise affect the provisions of this Plan; (c) words denoting the singular number include the plural number and vice versa; (d) the rules of construction set forth in § 102 of the Bankruptcy Code apply; (e) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) apply; and (f) the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

### II.   TREATMENT AND DEADLINE FOR THE ASSERTION OF ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS

#### A.   Treatment of Administrative Claims.

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment, the City shall pay to each Holder of an Allowed Administrative Claim, in full satisfaction, release and discharge of such Claim, Cash in an amount equal to such Allowed Administrative Claim on the later of (i) the Effective Date, (ii) the date on which such Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable.

#### B.   Treatment of Professional Claims.

Pursuant to § 943(a)(3) of the Bankruptcy Code, all amounts paid following the Effective Date or to be paid following the Effective Date for services or expenses in the Chapter 9 Case or incident to this Plan must be disclosed to the Bankruptcy Court and must be reasonable. There

shall be paid to each Holder of a Professional Claim, in full satisfaction, release and discharge of such Claim, Cash in an amount equal to that portion of such Claim that the Bankruptcy Court approves as reasonable, on or as soon as reasonably practicable following the date on which the Bankruptcy Court enters an Order determining such reasonableness. The City, in the ordinary course of its business, and without the requirement for Bankruptcy Court approval, may pay for those attorney services rendered and those costs incurred following the Effective Date.

### C.     Priority Claims in Chapter 9.

The only kind of priority Claims incorporated into Chapter 9 through § 901 of the Bankruptcy Code are Administrative Claims allowed under § 507(a)(2) of the Bankruptcy Code. The treatment of all such Administrative Claims is set forth above in Article II, Section A. No other kinds of priority Claims set forth in § 507 of the Bankruptcy Code are recognized in Chapter 9 cases, and Claims that would constitute priority Claims in a case under another chapter of the Bankruptcy Code are treated in Chapter 9 and in this Plan as General Unsecured Claims.

### D.     Deadline for the Filing and Assertion of Administrative Claims (other than Ordinary Course Administrative Claims) and Professional Claims.

**All requests for payment or any other means of preserving and obtaining payment of Administrative Claims (other than Ordinary Course Administrative Claims) that have not been paid, released, or otherwise settled, and all requests for approval of Professional Claims, must be filed with the Bankruptcy Court and served upon the City no later than thirty (30) days after the date on which the Notice of Effective Date is mailed.** Any request for payment of an Administrative Claim or a Professional Claim that is not timely filed by such date will be forever barred, and Holders of such Claims shall be barred from asserting such Claims in any manner against the City.

## III.     DESIGNATION OF CLASSES OF CLAIMS.

A.     **Class 1** – Claims of Holders of **$12,000,000 City of Central Falls, Rhode Island General Obligation School Bonds, dated July 15, 1999**, outstanding in the amount of approximately $6,670,000 as of the date of the filing of this Plan, bearing the CUSIP numbers

attached hereto as **Exhibit A**.  (Registered owner for notice purposes as of the date of the filing of this Plan: The Depository Trust Company ("DTC")).  The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to Rhode Island General Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  Subject to an annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursements for 97% of principal and interest on the Bonds.  These Claims will hereinafter be referred to as the "**Class 1 $12,000,000 General Obligation School Bonds Claims.**"

B.      **Class 2** – Claims of Holders of **$8,700,000 City of Central Falls, Rhode Island General Obligation Municipal Facility Bonds, dated October 1, 2007**, outstanding in the amount of approximately $7,680,000 as of the date of the filing of this Plan, bearing the CUSIP numbers attached hereto as **Exhibit B**.  (Registered owner for notice purposes as the date of the filing of this plan: DTC.)  The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the Bonds and the interest thereon.  Pursuant  to Rhode Island General Laws § 45-12-1, the Bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  These Claims will hereinafter be referred to as the "**Class 2 $8,700,000 General Obligation Municipal Facility Bonds Claims**."

C.      **Class 3** – Claims of Holders of **$1,420,000 City of Central Falls, Rhode Island General Obligation School Bonds, dated August 15, 2007,** outstanding in the amount of approximately $1,165,000 as of the date of the filing of this Plan. (Registered owner for notice purpose as of the date of the filing this plan: the Rhode Island Health and Educational Building

Corporation ("RIHEBC").  (These "borrower" bonds are part of a pool securing publicly offered bonds issued by RIHEBC—DTC is Registered Owner for notice purposes of bonds issued by RIHEBC).  The borrower bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, the borrower bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  Subject to annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursement for 97% of principal and interest on the borrower bonds which are intercepted by the General Treasurer and paid directly to the RIHEBC bond trustee to pay the borrower bonds.   These Claims will hereinafter be referred to as the "**Class 3 $1,420,000 General Obligation School Bonds Claims**."

D.     <u>**Class 4**</u> – Claims of Holders of **$750,000 City of Central Falls, Rhode Island General Obligation Qualified School Construction Bonds, 2010 Series 1, dated June 29, 2010,** outstanding in the amount of approximately $750,000 as of the date of the filing of this Plan.  (Registered owner for notice purpose as of the date of the filing this Plan: RIHEBC.)  The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.   Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.   Subject to appropriation by the federal government and certain other conditions, the City receives an interest rate subsidy to pay interest on the bonds.   Subject to annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursements for 97% of the principal on the bonds which is intercepted by the General Treasurer and paid directly to the paying agent to pay the bonds.

Pursuant to R.I. Gen. Laws § 45-12-32, the City has directed that additional state aid be intercepted to pay the remaining 3% of principal. These Claims will hereinafter be referred to as the "**Class 4 $750,000 General Obligation School Bonds**."

E.      **Class 5** – Claims of Holders of **$4,250,000 Central Falls, Rhode Island General Obligation School Bonds, 2010 Series 2, dated June 30, 2010,** outstanding in the amount of approximately $4,250,000 as of the date of the filing of this Plan (Registered owner for notice purpose as of the date of the filing this plan: RIHEBC.)  These "borrower bonds" secure qualified school construction bonds issued by RIHEBC which were privately placed with The Washington Trust Company (the "RIHEBC Bonds").  The borrower bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  Subject to an appropriation by the federal government and certain other conditions, RIHEBC receives an interest rate subsidy to pay interest on the RIHEBC bonds which is applied to reduce the payment required from the City on the borrower bonds.  Subject to an annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursements for 97% of principal on the borrower bonds, which is intercepted by the General Treasurer and paid directly to the RIHEBC bond trustee to pay the borrower bonds.  Pursuant to R.I. Gen. Laws § 45-12-32, the City has directed that additional state aid be intercepted to pay the remaining 3% of principal on the borrower bonds.  These Claims will hereinafter be referred to as the "**Class 5 $4,250,000 General Obligation School Bonds**."

F.      **Class 6** – Claim of lessor of **Lease dated April 10, 2009 by and between First Municipal Leasing Corporation and the City** (the "Rescue Lease")**,** outstanding in the amount

of approximately $83,403 as of the date of the filing of this Plan.  The Rescue Lease is secured

by a Horton rescue vehicle Vin No. 1FDFX47R78EE39070.  This Claim will hereinafter be

referred to as the "**Class 6 April 10, 2009 Lease Claim**."  The fiscal year 2012 lease payment is

secured by a R.I. stationery lien on property taxes and general fund revenues.

G.    **Class 7** – Claims of the **police, fire and municipal employee retirees for the

loss of a portion of their health insurance benefits as a result of the restructuring of the

health insurance benefits to be provided by the City** as set forth in **Exhibit C**.   The Class 7

Claimants are specifically identified in **Exhibit D** annexed hereto.  These Claims will hereinafter

be referred to as the "**Class 7 Retiree Health Insurance Claims**."

H.    **Class 8** – Claims of **the police, fire and municipal employee retirees, including

any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1%

Pension Plan, who have had their accidental disability retirement benefits reduced in

accordance with the newly-designed Central Falls Pension Plan** as set forth in **Exhibit E**.

The benefits to these individuals have not been reduced by the application of an Early

Retirement Factor.   The Class 8 Claimants are specifically identified in **Exhibit F** annexed

hereto.   These Claims will hereinafter be referred to as the "**Class 8 Retiree Accidental

Disability Claims**."

I.    **Class 9** - Claims of the **police, fire and municipal employee retirees, including

any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1%

Pension Plan who receive an annual pension benefit of $10,000 or less**.   The Class 9

Claimants are specifically identified in **Exhibit G** annexed hereto.    These Claims will

hereinafter be referred to as the "**Class 9 Retiree $10,000 and Under Circuit Breaker Pension

Claims**."

J.        **Class 10** – Claims of the **police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1% Pension Plan, who, after application of the pension formula set forth in the newly-designed Central Falls Pension Plan, Exhibit E, would receive an annual pension benefit of $10,000**.  The Class 10 Claimants are specifically identified in **Exhibit H** annexed hereto.  These Claims will hereinafter be referred to as the "**Class 10 Retiree Reduced to $10,000 Circuit Breaker Pension Claims**."

K.        **Class 11** - Claims of the **police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1% Pension Plan who, after application of the formula set forth in the newly-designed Central Falls Pension Plan, Exhibit E, limited by the 45% circuit breaker, would receive an annual pension benefit of 45% of their prior pension benefit**.  The Class 11 Claimants are specifically identified in **Exhibit I** annexed hereto.  These Claims will hereinafter be referred to as the "**Class 11 Retiree 45% Circuit Breaker Pension Claims**."

L.        **Class 12** – Claims of **the police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1% Pension Plan, who will receive a reduced benefit under the newly-designed Central Falls Pension Plan**, **Exhibit E** (excluding those Claimants identified as Claimants of **Class 8 Retiree Accidental Disability Claims, Class 9 Retiree $10,000 and Under Circuit Breaker Pension Claims, Class 10 Retiree Reduced to $10,000 Circuit Breaker Pension Claims** and **Class 11 Retiree 45% Circuit Breaker Pension Claims**).  The Class 12 Claimants are specifically identified in **Exhibit J** annexed hereto.  These Claims will hereinafter be referred to as the "**Class 12 Retiree Pension Claims**."

M.      **Class 13** – Claims of the G**eneral Unsecured Creditors (excluding Claims of Claimants of Class 14 General Unsecured Convenience Claims)**.    These Claims will hereinafter be referred to as the "**Class 13 General Unsecured Claims**."

N.      **Class 14** – General Unsecured Claims either (i) Allowed in an amount of less than Two Thousand Five Hundred Dollars ($2,500.00) or (ii) Allowed in an amount greater than $2,500, but which the Holder elects to reduce to Two Thousand Five Hundred Dollars ($2,500.00) when said Holder submits his/hers/its Ballot to the City.  (Said Ballots shall have a section providing for such an election.)  This class is being established for convenience purposes. These Claims will hereinafter be referred to as the "**Class 14 General Unsecured Convenience Claims**."

## IV.  TREATMENT OF CLAIMS

A.      **Class 1 $12,000,000 General Obligation School Bonds Claims.**

1.      **Impairment and Voting.**

This Class is Unimpaired by the Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject this Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Plan.

2.      **Treatment.**

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.

**B.      Class 2 $8,700,000 General Obligation Municipal Facility Bonds Claims.**

### 1.      Impairment and Voting.

This Class is Unimpaired by the Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject this Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Plan.

### 2.      Treatment.

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.

**C.      Class 3 $1,420,000 General Obligation School Bonds Claims.**

### 1.      Impairment and Voting.

This Class is Unimpaired by the Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject this Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Plan.

### 2.      Treatment.

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.

**D.**     **Class 4 $750,000 General Obligation School Bonds.**

**1.**     **Impairment and Voting.**

This Class is Unimpaired by the Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject this Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Plan.

**2.**     **Treatment.**

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.

**E.**     **Class 5 $4,250,000 General Obligation School Bonds.**

**1.**     **Impairment and Voting.**

This Class is Unimpaired by the Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject this Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Plan.

**2.**     **Treatment.**

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.

**F.      Class 6 April 10, 2009 Lease Claim.**

**1.      Impairment and Voting**

This Class is Impaired by this Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holder of the Claim.  Accordingly, the Holder of the Claim in this Class is entitled to vote to accept or reject this Plan

**2.      Treatment.**

On the Effective Date, the term of the Rescue Lease shall be extended by two (2) years, the annual principal payments shall be reduced by 50%, and the annual interest rate shall be reduced by one (1%) percent.  The new payment schedule shall be as set forth in **Exhibit K** annexed hereto.  All other terms and conditions of the Rescue Lease shall remain unaltered and in full force and effect.  On or prior to the Effective Date, at either party's written election, the parties shall enter into a modified lease agreement reflecting these modifications.

**G.      Class 7 Retiree Health Insurance Claims.**

**1.      Impairment and Voting**

This Class is Impaired by this Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject this Plan.

**2.      Treatment.**

The Holders of these Claims will have their health care benefits modified in accordance with the restructured health benefits schedule set forth on **Exhibit C**, annexed hereto, and will be required to pay 20% co-share premium payments.

H.      **Class 8 Retiree Accidental Disability Claims.**

1.      **Impairment and Voting**

This Class is Impaired by this Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject this Plan.

2.      **Treatment.**

The Holders of these Claims will have their accidental disability retirement benefits modified in accordance with the restructured benefit schedule set forth on **Exhibit E**. Specifically, these Claimants will be paid 45% of their salary at the time of retirement, but will not have their benefit reduced by an Early Retirement Factor.  In addition, these Claimants will receive up to 2% COLA applied prospectively, which will not be compounded.

I.      **Class 9 Retiree $10,000 and Under Circuit Breaker Pension Claims.**

1.      **Impairment and Voting**

This Class is Unimpaired by the Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject this Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Plan.

2.      **Treatment.**

The Holders of these Claims will not have their benefits reduced under the newly-designed Central Falls Pension Plan as set forth in **Exhibit E**, annexed hereto.  The City has determined, as a matter of governmental policy, that because the annual pension benefits in this group are relatively low, and the average age of the individuals in this group is older than the average age of the individuals in the other retiree classes, there is a smaller unliquidated benefit

and therefore a lesser impact on the City and the Plan. Moreover, the City has further determined, as a matter of governmental policy, that because these individuals have less ability to adjust and absorb a reduction in benefits, the City will not impact its most vulnerable retirees by reducing their benefits.

### J.    Class 10 Retiree Reduced to $10,000 Circuit Breaker Pension Claims.

#### 1.    Impairment and Voting

This Class is Impaired by this Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject this Plan.

#### 2.    Treatment.

The Holders of these Claims will have their annual pension benefits reduced to $10,000 under the newly-designed Central Falls Pension Plan as set forth in **Exhibit E**. Although the strict application of the new pension plan formula would reduce these individuals' benefits to less than $10,000 annually, the City has determined, as a matter of governmental policy, that it will not reduce benefits below this $10,000 threshold.  The City determined that because the annual pension benefits in this group are relatively low, there is a smaller unliquidated benefit and therefore a lesser impact on the City and the Plan.  Moreover, the City has further determined, as a matter of governmental policy that it would be unfair to reduce benefits below the $10,000 threshold.

### K.    Class 11 Retiree 45% Circuit Breaker Pension Claims.

#### 1.    Impairment and Voting

This Class is Impaired by this Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject this Plan.

2.      **Treatment.**

The Holders of these Claims will have their annual pension benefits reduced by 55% under the newly-designed Central Falls Pension Plan as set forth in **Exhibit E**.  Although strict application of the new pension plan formula would reduce these individuals' benefits to an amount which would be less than 45% of the amount of their pre-petition pension benefit annually, the City has determined, as a matter of governmental policy, that it will not reduce benefits below this 45% threshold.  The City has further determined, as a matter of governmental policy that it would be unfair to reduce benefits below 45% of pre-petition pension benefits, and therefore, the City would lessen the impact of the newly-designed plan on this group of retirees.

L.      **Class 12 Retiree Pension Claims.**

1.      **Impairment and Voting**

This Class is Impaired by this Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject this Plan.

2.      **Treatment.**

The Holders of these Claims will have their benefits reduced in accordance with the formula set forth under the newly-designed Central Falls Pension Plan.  All reductions in this Class shall be less than a 55% reduction of the Holder's prior annual pension benefits.  See **Exhibit E**.

M.      **Class 13 General Unsecured Claims.**

1.      **Impairment and Voting**

This Class is Impaired by this Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holder of the Claim.  Accordingly, the Holders of these Claims in this Class is entitled to vote to accept or reject this Plan

### 2. <u>Treatment</u>

The Holders of these Allowed Claims shall share *pro rata* on or prior to June 30, 2013 from the balance of the General Unsecured Claims Pool after distributions are made to or reserves are created for the Holders of the **Class 14 Convenience General Unsecured Claims** and then the Holders of these Allowed Claims shall share *pro rata* on or prior to June 30, 2014, June 30, 2015, and June 30, 2016 from the General Unsecured Claims Pool.

**N.** **Class 14 Convenience General Unsecured Claims.**

### 1. <u>Impairment and Voting</u>

This Class is Impaired by this Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the holder of the Claim.  Accordingly, the Holders of these Claims in this Class is entitled to vote to accept or reject this Plan

### 2. <u>Treatment</u>

The Holders of these Allowed Claims shall receive a distribution of 50% of the amount of their Allowed Claim from the General Unsecured Claims Pool on or prior to June 30, 2013.

**V.** **<u>ACCEPTANCE OR REJECTION; CRAM DOWN .</u>**

**A.** **<u>Voting of Claims.</u>**

Each Holder of an Allowed Claim classified into Classes 6, 7, 8, 10, 11, 12, 13 and 14 shall be entitled to vote each such Claim to accept or reject this Plan.

With respect to any Impaired Class of Claims that fails to accept this Plan, if any, the City, as proponent of this Plan, requests that the Bankruptcy Court nonetheless confirm this

Plan pursuant to the so-called "cram down" powers set forth in Bankruptcy Code § 1129(b).

## VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### A. Assumption of Executory Contracts and Unexpired Leases.

As to any executory contract or unexpired lease that the City elects to assume, the City shall make the Assumption/Assignment Motion within 60 days from the Effective Date, which, if granted, shall cause the City to assume such contracts and leases pursuant to order of the Bankruptcy Court.

### B. Cure Payments.

After the provision of notice and the opportunity for a hearing on the Assumption/Assignment Motion, in accord with the Bankruptcy Rules, the Bankruptcy Court shall resolve all disputes regarding: (a) the amount of any cure payment to be made in connection with the assumption of any contract or lease; (b) the ability of the City to provide "adequate assurance of future performance" within the meaning of § 365 of the Bankruptcy Code under the contract or lease to be assumed; and (c) any other matter pertaining to such assumption and assignment. Any party to an executory contract or unexpired lease that is included in the Assumption/Assignment Motion that asserts that any payment or other performance is due as a condition to the proposed assumption shall file with the Bankruptcy Court and serve upon the City a written statement and accompanying declaration in support thereof, specifying the basis for its Claim within such deadline and in the manner established for filing objections as shall be set forth in the Assumption/Assignment Motion. The failure to timely file and serve such a statement in accordance with the instructions set forth in the Assumption/Assignment Motion shall be deemed to be a waiver of any and all objections to the proposed assumption and any Claim for cure amounts of the agreement at issue.

### C. Rejection of Executory Contracts and Unexpired Leases.

As to any executory contract or unexpired lease that the City elects to reject, the City shall file a Rejection Motion within 60 days from the Effective Date, which if granted shall cause the City to reject such contracts or lease pursuant to order of the Bankruptcy Court.

**D.**     **Claims Arising From Rejection.**

Proofs of Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court and served on the City no later than thirty (30) days after the date on which notice of entry of the order approving the rejection is mailed. Any Claim for which a proof of claim is not filed and served within such time will be forever barred and shall not be enforceable against the City or its assets, properties, or interests in property. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be classified as Class 13 General Unsecured Claims or Class 14 General Unsecured Convenience Claims, as the case may be, and treated accordingly.

**E.**     **Executory Contracts and Unexpired Leases which are not Included in an Assumption/Assignment Motion or a Rejection Motion.**

Any executory contract or unexpired lease for which an Assumption/Assignment Motion or a Rejection Motion is not filed within 60 days of the Effective Date shall be deemed to be rejected.

## VII.     IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS PLAN

Following the Effective Date, the City will continue to operate pursuant to the Central Falls Charter, the Constitution of the State of Rhode Island and other applicable laws. While the City has submitted a five-year projected budget in his Disclosure Statement to allocate the City's unrestricted resources, the City acknowledges and understands that financial plans and budgets are not fixed in stone, and that on-going adjustments will have to be made during the course of the five year plan duration in order to enable the City to adjust to changing economic, operational needs and other conditions and contingencies. However, this Plan and the City's five year budget represent the City's commitment to the binding treatment of the Holders of Claims in the various Classes as enumerated in this Plan.

**A.**     **Claims and Causes of Action.**

All of the City's claims, causes of action, rights of recovery, rights of offset, recoupment rights to refunds and similar rights shall be retained by the City. The failure to list in the Disclosure Statement any potential or existing Right of Action retained by the City is not intended to and shall not limit the rights of the City to pursue any such action. Unless a Right of

Action is expressly waived, relinquished, released, compromised or settled in this Plan, the City expressly reserves all Rights of Action for later adjudication and, as a result, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Rights of Action upon or after the confirmation or consummation of this Plan or the Effective Date. In addition, the City expressly reserves the right to pursue or adopt against any other entity any claims alleged in any lawsuit in which the City is a defendant or an interested party.

## VIII.  **DISTRIBUTIONS**

### A.  **Delivery of Distributions.**

All distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the Schedule of Claims filed with Bankruptcy Court, as amended, unless the City has been notified by such Holder in a writing that contains an address for such Holder different from the address reflected said Schedule of Claims.

### B.  **Undeliverable Distributions.**

#### 1.  **Holding of Undeliverable Distributions.**

If any distribution to any Holders is returned to the City as undeliverable, no further distributions shall be made to such Holder unless and until the City is notified in writing of such Holder's then-current address. Unless and until the City is so notified, such distribution shall be deemed to be "Unclaimed Property" and shall be dealt with in accordance with the following subsection.

#### 2.  **Unclaimed Property.**

If any entity entitled to receive distributions pursuant to this Plan does not present itself on the Effective Date or on such other date on which such entity becomes eligible for distribution, such distributions shall be deemed to be "Unclaimed Property." Unclaimed Property shall be set aside and held in a segregated account to be maintained by the City pursuant to the terms of this Plan.

#### 3.  **Notification and Forfeiture of Unclaimed Property.**

No later than 60 days after August 31, 2012 the City shall file with the Bankruptcy Court a list of Unclaimed Property, together with a schedule that identifies the name

and last-known address of Holders of the Unclaimed Property; the City otherwise shall not be required to attempt to locate any such entity. On August 31, 2013, all remaining Unclaimed Property and accrued interest or dividends earned thereon shall be remitted to and vest in the City, except as may be provided under the laws of the State of Rhode Island.

 **C.** **Distributions of Cash.**

  Any payment of Cash to be made by the City pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole option of the City.

 **D.** **Timeliness of Payments.**

  Any payments or distributions to be made pursuant to this Plan shall be deemed to be timely made if made within 14 days after the dates specified in this Plan. Whenever any distribution to be made under this Plan shall be due on a day that is a Saturday, Sunday, or legal holiday, such distribution instead shall be made, without interest, on the immediately succeeding day that is not a Saturday, Sunday, or legal holiday, but shall be deemed to have been timely made on the date due.

 **E.** **Compliance With Tax Requirements.**

  The City shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. In connection with each distribution with respect to which the filing of an information return (such as Internal Revenue Service Forms W-2, 1099 or 1042) or withholding is required, the City shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law. With respect to any entity from whom a tax identification number, certified tax identification number, or other tax information is required by law to avoid withholding has not been received by the City, the City at its sole option, may withhold the amount required and distribute the balance to such entity or decline to make such distribution until the information is received.

F.      **Time Bar to Cash Payments.**

Checks issued by the City on account of Allowed Claims shall be null and void if not negotiated within 90 days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the City by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the second anniversary of the Effective Date. After such date, all Claims in respect of voided checks shall be discharged and forever barred and the City shall retain all moneys related thereto.

H.      **No Distributions on Account of Disputed Claims.**

Notwithstanding anything to the contrary in this Plan, and consistent with Article IX, no distributions shall be made on account of any part of any Disputed Claim until such Claim becomes Allowed (and then only to the extent so Allowed). Distributions made after the Effective Date in respect of Claims that were not Allowed as of the Effective Date (but which later became Allowed) shall be deemed to have been made as of the Effective Date.

I.      **No Postpetition Accrual.**

Except as specifically provided in this Plan or Allowed by order of the Bankruptcy Court, the City shall not be required to pay to any Holder of a Claim any interest, penalty or late charge accruing with respect to such Claim on or after the Petition Date.

IX.    **DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; PROSECUTION OF OBJECTIONS TO DISPUTED CLAIMS**

A.      **Claims Objection Deadline; Prosecution of Objections.**

The City shall have the right to object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability or allowance is disputed in whole or in part. Unless otherwise ordered by the Bankruptcy Court, the City shall file and serve any such objections to Claims by the earlier of (i) the date such distribution would otherwise be due or (ii) not later than 180 days after the Effective Date (or, in the case of Claims lawfully filed after the Effective Date, by not later than 180 days after the date of filing of such Claims).

**B.**     **Reserves, Payments, and Distributions with Respect to Disputed Claims.**

Prior to making a *pro rata* distribution to Holders of Class 13 General Unsecured Claims or Class 14 General Unsecured Convenience Claim, the City shall reserve from the amount of the distribution a reserve for such Class 13 General Unsecured Claims or Class 14 General Unsecured Convenience Claim to the extent that such Claims are Disputed Claims. The amount reserved for each such Claim shall be on the same *pro rata* basis as the distribution to Allowed Class 13 General Unsecured Claims and Allowed Class 14 General Unsecured Convenience Claim, as the case may be, based upon the lesser of (a) the amount asserted by the Holder of the Claim to be owing, and (b) such amount as the Bankruptcy Court may estimate for all distribution purposes upon motion of the City, which motion may be made initially or from time to time.

At such time as a Disputed Claim becomes an Allowed Claim, in whole or in part, the City or its agent shall distribute to the Holder thereof the distributions, if any, to which such Holder is then entitled under this Plan. Such distributions, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order (or such other date as the Claim becomes an Allowed Claim), but in no event more than 60 days thereafter. Unless otherwise specifically provided in this Plan or Allowed by order of the Bankruptcy Court, no interest shall be paid on Disputed Claims that later become Allowed Claims.

To the extend a Disputed Claim is disallowed, the amounts held in escrow for that Disputed Claim shall be removed from escrow and re-allocated to the remaining Allowed Claims and Disputed Claims for pro rata distribution or escrow on the next scheduled payment date.

**X.**     **EFFECT OF CONFIRMATION**

**A.**     **Discharge of the City.**

Pursuant to § 944 of the Bankruptcy Code, upon the Effective Date, the City shall be discharged from all debts (as defined in the Bankruptcy Code) of the City and any claims against the City other than (a) any debt specifically and expressly excepted from discharge by this Plan or the Confirmation Order, or (b) any debt owed to an entity that, before the

Confirmation Date, had neither constructive notice, notice nor actual knowledge of the Chapter 9 Case.

The rights afforded in this Plan and the treatment of all Holders of Claims, be they Claims Impaired or Unimpaired under this Plan, shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever arising on or before the Effective Date, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, whether against the City or any of its properties, assets or interests in property. Except as otherwise provided herein, upon the Effective Date, all Claims against the City that arose prior to the Confirmation Date ("Pre-Effective Date Claims") shall be deemed to be satisfied, discharged and released in full, be they Impaired or Unimpaired under this Plan.

### B.     Injunction.

Except as otherwise expressly provided in this Plan, all entities who have held, hold or may hold pre-Effective Date Claims shall be permanently enjoined from and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such pre-Effective Date Claim against the City or its property; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the City or its property with respect to such pre-Effective Date Claims; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against the City or its property; and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the City with respect to any such pre-Effective Date Claim, except as otherwise permitted by § 553 of the Bankruptcy Code.

### C.     Term of Existing Injunctions or Stays.

All injunctions or stays provided for in the Chapter 9 Case pursuant to §§ 105, 362, or 922 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## XI.     RETENTION OF AND CONSENT TO JURISDICTION.

Following the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code and relating to the

City, arising in or related to the Chapter 9 Case or this Plan, and otherwise, for the following:

1. To resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the City is a party or with respect to which the City may be liable, and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

2. To enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, and all other contracts, instruments, releases, and other agreements or documents related to this Plan;

3. To determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the City after the Effective Date or that are instituted by any Holder of a Claim before or after the Effective Date concerning any matter based upon, arising out of, or relating to the Chapter 9 Case, whether or not such action initially is filed in the Bankruptcy Court or any other court;

4. To ensure that distributions to Holders of Allowed Claims are accomplished as provided herein;

5. To hear and determine any objections to Claims or to proofs of claim filed, both before and after the Effective Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

6. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

7. To issue such orders in aid of execution of this Plan, to the extent authorized by § 1142(b) of the Bankruptcy Code;

8. To consider any modifications of this Plan, to cure any defects or omissions, or reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order;

9. To hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

10.     To hear and determine all disputes or controversies arising in connection with or relating to this Plan or the Confirmation Order or the interpretation, implementation, or enforcement of this Plan or the Confirmation Order or the extent of any entity's obligations incurred in connection with or released under this Plan or the Confirmation Order;

11.     To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of this Plan;

12.     To determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document related to this Plan or the Disclosure Statement;

13.     To hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

14.     To enter a final decree closing the Chapter 9 Case.

## XII.   CONDITIONS PRECEDENT.

The entry of the Confirmation Order in form and substance satisfactory to the City is a condition precedent to confirmation of this Plan and the establishment of an Effective Date.  The "effective date of the plan," as used in § 1129 of the Bankruptcy Code, shall not occur, and this Plan shall be of no force and effect, until the said condition precedent is satisfied.

## XIII.   MISCELLANEOUS PROVISIONS

### A.   Severability.

If, prior to the Confirmation Date, any term or provisions of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, with the consent of the City, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force

and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**B.    Governing Law.**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that an Exhibit hereto or Plan Document provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Rhode Island, without giving effect to principles of conflicts of laws.

**C.    Effectuating Documents and Further Transactions.**

Each of the Receiver and employees of the City is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and provisions of this Plan.

**D.    Notice of Effective Date.**

On or before 10 days after occurrence of the Effective Date, the City or its agent shall mail or cause to be mailed to all Holders of Claims a Notice that informs such Holders of: (a) entry of the Confirmation Order; (b) the occurrence of the Effective Date; (c) the assumption and rejection of the City's executory contracts and unexpired leases pursuant to this Plan, as well as the deadline for the filing of Claims arising from such rejection; (d) the deadline established under this Plan for the filing of Administrative Claims; (e) the procedures for changing an address of record pursuant to Article VII of the Plan such other matters as the City deems to be appropriate.

**E.    Termination of Receiver**.

In the event the Rhode Island Director of Revenue terminates the Receiver in conformity with the terms of <u>Act Relating to Cities and Towns – Providing Financial Stability</u>, Rhode Island General Laws § 45-9-1 *et seq*., the rights and obligations of the Receiver under the Plan and the Confirmation Order shall transfer to the appropriate Central Falls officials as

authorized under Rhode Island General Laws, the Central Falls Charter and Central Falls ordinances.

DATED: September 22, 2011

CITY OF CENTRAL FALLS

By: /s/ Robert G. Flanders, Jr., as and only as Receiver of the City of Central Falls, and not individually

Submitted by:

CITY OF CENTRAL FALLS

/s/ Theodore Orson
Theodore Orson, Esq. (No. 3871)
Christine Curley, Esq. (No. 4529)
Orson and Brusini Ltd.
325 Angell Street
Providence, RI 02906
(401) 861-0344
torson@orsonandbrusini.com