**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

In re:

**CITY OF CENTRAL FALLS**
**RHODE ISLAND**

**Case No. Chapter 9**

**DISCLOSURE STATEMENT WITH RESPECT TO THE PLAN FOR THE ADJUSTMENT OF DEBTS OF CITY OF CENTRAL FALLS, DATED**

**Date:**
**Time:**
**Judge: Hon. Frank J. Bailey**

**TABLE OF CONTENTS**

SUMMARY                                                                      3

I.      INTRODUCTION...................................................................................8

        A.      The Purpose of This Disclosure Statement................................9
        B.      Summary of Entities Entitled to Vote on the Plan and of Certain
                Requirements Necessary for Confirmation of the Plan. ........................10
        C.      Voting Procedures, Balloting Deadline, Confirmation Hearing, and
                Important Dates, Deadlines, and Procedures. ............................................11
        D.      Important Notices and Cautionary Statements .........................................12
        E.      Additional Information ..............................................................................13

II.     BACKGROUND INFORMATION...................................................................14

III.    THE CITY'S LIABILITIES AND ASSETS .....................................................14
        A.      Liabilities  .................................................................................................14
        B.      Assets .........................................................................................................14

IV.     SUMMARY OF THE PLAN OF ADJUSTMENT..............................................15
        A.      Classification and Treatment of Claims....................................................15
        B.      Treatment of Executory Contracts and Unexpired Leases ........................27
        C.      Means for Execution and Implementation of the Plan...............................28
        D.      Distributions...............................................................................................29
        E.      Disputed Claims.........................................................................................31
        F.      Continuing Jurisdiction of the Bankruptcy Court.....................................32

V.      CONFIRMATION AND EFFECTIVENESS OF THE PLAN ...........................33
        A.      Voting and Right to Be Heard at Confirmation .......................................33
        B.      The "Best Interests" Test ..........................................................................34
        C.      Feasibility...................................................................................................35
        D       Cram Down..................................................................................................36
        E       Effective Date ............................................................................................36
        F       Effect of Confirmation...............................................................................37

VI.     CERTAIN RISK FACTORS TO BE CONSIDERED ........................................38

VII.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES ...............................38

VIII.   RECOMMENDATION AND CONCLUSION ....................................................39

**NOTE: The Bankruptcy Court Has Not Yet Approved This Disclosure Statement Pursuant To Section 1125(b) Of The Bankruptcy Code For Use In The Solicitation Of The Plan Of Adjustment Of Debts Described Herein. The Filing And Distribution Of This Disclosure Statement Therefore Is Not Intended As, And Should Not Be Construed To Be, A Solicitation Of Acceptance Or Rejection Of That Plan Or Any Other Plan**.

## SUMMARY

The following pages summarize certain important information set forth elsewhere in this Disclosure Statement.  Capitalized terms are defined in the text of this Disclosure Statement and in the Plan, and any capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan.

The Disclosure Statement contains important information that is not summarized in this Summary and that may influence your decision regarding whether to accept or reject the Plan or otherwise affect your rights.  Please do not rely on this Summary standing alone, and please closely read this entire document and the accompanying materials.

The "Plan For The Adjustment Of Debts Of City of Central Falls, Rhode Island, dated September 22, 2011" (the "Plan"), proposed by the City of Central Falls, Rhode Island (the "City"), if confirmed will restructure the City's debt and its operations and put the City on a path towards fiscal stability.  The Plan also addresses and resolves (1) the City's obligations to current and former employees, including those relating to the collective bargaining agreements between the City and its labor organizations; (2) the City's obligation to pay pension benefits and to pay for other post-employment benefits to its current and future retirees; (2) Claims of former employees who were not paid the full amount of accrued sick time and other benefits on their separation from the City; (3) Claims arising from tort and breach of contract lawsuits against the City; and (4) various other trade and vendor Claims.  Importantly, the Plan does not impair the City's bond obligations.

Payment to Holders of General Unsecured Claims and General Unsecured Convenience Claims will be paid a distribution from a pool totaling $613,147 during the five-year plan horizon.  The General Unsecured Convenience Claims will be paid fifty (50%) percent of their Allowed Claim on or prior to June 30, 2013.  The General Unsecured Claims will share *pro rata*

in the balance remaining in FY 2013 claims pool and then will share *pro rata* in the claims pool on or prior to the following payment dates: June 30, 2014, June 30, 2015, and June 30, 2016. While the City regrets that it cannot pay a higher percentage, the fact is that the City lacks the revenues to do so while maintaining an adequate level of municipal services such as the provision of fire and police protection and the repairing of the City's streets.

The Plan does not alter the City's obligations towards funds that are restricted by grants, by federal law and by Rhode Island law; pursuant to the Tenth Amendment to the United States Constitution and the provisions of the Bankruptcy Code that implement the Tenth Amendment, such funds cannot be impacted in the Bankruptcy Case.

The following chart summarizes key information, including the proposed treatment of the various classes of Claims:

| | |
|---|---|
| **Debtor** | City of Central Falls, Rhode Island |
| **Bankruptcy Court** | United States Bankruptcy Court for the District of Rhode Island, the Honorable Frank J. Bailey of the United States Bankruptcy Court for the District of Massachusetts sitting by designation. |
| **Plan** | Plan For The Adjustment Of Debts Of City of Central Falls, Rhode Island, Dated September 22, 2011. |
| **Purpose of the Disclosure Statement** | To provide information of a kind, and in sufficient detail, that would enable a typical Holder of Claims in a class impaired under the Plan to make an informed judgment with respect to voting on the Plan. |
| **Balloting Information** | Ballots have been provided with this Disclosure Statement to creditors known to have Claims that are impaired under the Plan. Ballots must be returned to and received by the Ballot Tabulator by no later than 4:30 p.m., Eastern Standard Time, on __ , 201_. |
| **Ballot Tabulator** | [to be inserted]. |

| | |
|---|---|
| **Confirmation Hearing and Confirmation Objections** | A hearing regarding confirmation of the Plan will be held by the Bankruptcy Court on _____ __, 201_, commencing at ___ a.m., Eastern Standard Time. Objections to confirmation must be filed and served by no later than ____ __, 201_. |
| **Treatment of Claims** | If the Court confirms the Plan and the Plan becomes effective, Claims will be treated as follows: |
| **Administrative Claims** | Paid in full, except to the extent that the Holder of an Administrative Claim agrees to a different treatment. |
| **Class 1 $12,000,000 General Obligation School Bonds Claims** | Unimpaired. The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon. Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues. |
| **Class 2 $8,700,000 General Obligation Municipal Facility Bonds Claims**. | Unimpaired. The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon. Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues. |
| **Class 3 $1,420,000 General Obligation School Bonds Claims** | Unimpaired. The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon. Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues. |
| **Class 4 $750,000 General Obligation School Bonds** | Unimpaired. The bonds are general obligations of the City, and all taxable property in the City is subject to ad *valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon. Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues. |
| **Class 5 $4,250,000 General Obligation School Bonds** | Unimpaired. The bonds are general obligations of the City, and all taxable property in the City is subject to *ad* |

*valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon. Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.

**Class 6 April 10, 2009 Lease Claim**

Impaired. On the Effective Date, the term of the Rescue Lease shall be extended by two (2) years, the annual principal payments shall be reduced by 50%, and the annual interest rate shall be reduced by one (1%) percent. The new payment schedule is set forth in Exhibit K to the Plan.

**Class 7 Retiree Health Insurance Claims**

Impaired. The Holders of these Claims will have their health care benefits modified in accordance with the restructured health benefits schedule set forth on Exhibit C to the Plan, and will be required to pay 20% co-share premium payments.

**Class 8 Retiree Accidental Disability Claims**

Impaired. The Holders of these Claims will have their accidental disability retirement benefits modified in accordance with the restructured benefit schedule set forth on Exhibit E to the Plan.

**Class 9 Retiree $10,000 and Under Circuit Breaker Pension Claims**

Unimpaired. The Holders of these Claims will not have their annual pension benefits reduced under the newly-designed Central Falls Pension Plan as set forth in Exhibit E to the Plan.

**Class 10 Retiree Reduced to $10,000 Circuit Breaker Pension Claims**

Impaired. The Holders of these Claims will have their annual pension benefits reduced to $10,000 under the newly-designed Central Falls Pension Plan as set forth in Exhibit E to the Plan.

**Class 11 Retiree 45% Circuit Breaker Pension Claims**

Impaired. The Holders of these Claims will have their annual pension benefits reduced by 55% under the newly-designed Central Falls Pension Plan as set forth in Exhibit E to the Plan.

**Class 12 Retiree Pension Claims**

Impaired. The Holders of these Claims will have their annual pension benefits reduced by less than 55% in accordance with the formula as set forth under the newly-designed Central Falls Pension Plan as set forth in Exhibit E to the Plan.

| | |
|---|---|
| **Class 13 General Unsecured Claims** | Impaired.  Holders of Allowed General Unsecured Claims will receive their *pro rata* share of the $613,147.00 during the five-year Plan duration from the General Unsecured Claims Pool after distributions are made to or reserves are created for the Holders of the Class 14 Convenience General Unsecured Claims.  Because this class of Claims will include contract and lease rejection Claims which are currently unliquidated, it is impossible at this time to estimate the percentage recovery to Holders of these Claims. |
| **Class 14 General Unsecured Convenience Claims** | Impaired. The Holders of these Claims will receive fifty (50%) of the amount of their Allowed Claim on or prior to June 30, 2013 in a single lump sum payment. |
| **Background Information:** | See Executive Summary of Five Year Financial Projection attached hereto as Exhibit B. |
| **Questions:** | Please contact the Debtor's counsel, Theodore Orson, Orson and Brusini Ltd., 325 Angell Street, Providence, RI 02903 (torson@orsonandbrusini.com)[1] |

Any terms not defined in the Disclosure Statement, shall have the meanings ascribed to them in the Plan.  To the extent that there is any inconsistency between the Plan (including the Exhibits and any supplements to the Plan) and the description in the Disclosure Statement, the terms of the Plan (including the Exhibits to the Plan) will govern.

---

[1] Note that Orson and Brusini Ltd. is intending on moving to 141 Wayland Avenue, Providence, RI 02906 during or about October 2011.  When such move occurs, Orson and Brusini Ltd. shall file a notice of changed address with the Bankruptcy Court.

## I.   **INTRODUCTION**

The City filed a petition under Chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") on August 1, 2011 (the "Petition Date"), which was designated Case Number 11-13105 (the "Chapter 9 Case") and is currently pending before the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court").

The City is the proponent of the Plan, a copy of which is attached to this Disclosure Statement as Exhibit A. At a hearing held on ____ , 201_, the Bankruptcy Court determined that this Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and authorized the City to transmit it to Holders of impaired Claims in connection with the solicitation of votes with respect to the Plan.

The City relied, among other things, on the following documents and information in formulating its Plan of Debt Adjustment, which are attached as Exhibits to this Disclosure Statement.

| | |
|---|---|
| Exhibit B | Executive Summary of Five Year Financial Projection with Appendices |
| Exhibit C | Five Year Financial Plan |
| Exhibit D | Buck Actuarial Analysis and Viability Analysis |
| Exhibit E | Central Falls Non MERS Retiree Data |
| Exhibit F | Explanation of Active Health Care Changes |
| Exhibit G | Explanation of Retiree Health Care Changes |
| Exhibit H | Staffing and Public Safety Operations Central Falls Rhode Island, Police and Fire Recommendations provided by Public Safety Strategies Group |
| Exhibit I | Outstanding Debt Service Schedules |
| Exhibit J | Schedule of Pending Litigation |

In addition, copies of the past five years audited financial statements were considered by the City in formulating its Plan and projections which will be made available for review on the City's website.

As described more fully elsewhere in this document, the City believes that the Plan provides the greatest and earliest possible recoveries to Holders of Claims, that acceptance of the Plan is in the best interests of all parties, and that any alternative restructuring or reorganization would result in delay, uncertainty, expense, litigation and, ultimately, smaller or no distributions to creditors.  Accordingly, **the City urges that you cast your ballot in favor of the Plan.**

A.    <u>**The Purpose of This Disclosure Statement.**</u>

The Bankruptcy Code generally requires that the proponent of a plan of adjustment prepare and file with the applicable bankruptcy court a "disclosure statement" that provides information of a kind, and in sufficient detail, as would enable a typical Holder of Claims in a class impaired under that plan to make an informed judgment with respect to the plan.  This Disclosure Statement provides such information.  *Parties in interest should read this Disclosure Statement, the Plan, and all of the exhibits accompanying such documents in their entirety in order to ascertain:*

1.    How the Plan will affect their Claims against the City;

2.    Their rights with respect to voting for or against the Plan;

3.    Their rights with respect to objecting to confirmation of the Plan; and

4.    How and when to cast a ballot with respect to the Plan.

This Disclosure Statement, however, cannot and does not provide creditors with legal or other advice or inform such parties of all aspects of their rights.  Claimants are urged and advised to consult with their attorneys and/or financial advisors to obtain specific and/or personalized advice regarding how the Plan will affect them and regarding their best course of action with respect to the Plan.

This Disclosure Statement has been prepared in good faith and in compliance with

applicable provisions of the Bankruptcy Code.  Based upon information currently available, the City believes that the information contained in this Disclosure Statement is correct as of the date of its filing.  The Disclosure Statement, however, does not and will not reflect events that occur after September 22, 2011 (and, where indicated, specified earlier dates), and the City assumes no duty and presently does not intend to prepare or distribute any amendments or supplements to reflect such events.

### B. <u>Summary of Entities Entitled to Vote on the Plan and of Certain Requirements Necessary for Confirmation of the Plan.</u>

Holders of Allowed Claims in the following Classes are entitled to vote on the Plan because the Claims in each such Class are "impaired" under the Plan within the meaning of Section 1124 of the Bankruptcy Code:

**Class 6 April 10, 2009 Lease Claim**

**Class 7 Retiree Health Insurance Claims**

**Class 8 Retiree Accidental Disability Claims**

**Class 10 Retiree Reduced to $10,000 Circuit Breaker Pension Claims**

**Class 11 Retiree 45% Circuit Breaker Pension Claims**

**Class 12 Retiree Pension Claims**

**Class 13 General Unsecured Claims**

**Class 14 General Unsecured Convenience Claims**

The Bankruptcy Court may confirm the Plan only if at least one Class of impaired Claims has voted to accept the Plan (without counting the votes of any insiders whose Claims are classified within that Class) and if certain statutory requirements are met as to both non-consenting members within a consenting Class and as to any dissenting Classes.  A Class of Claims has accepted the Plan only when at least one-half in number **and** at least two-thirds in amount of the Allowed Claims actually voting in that Class vote in favor of the Plan.

In the event of a rejection of the Plan by any of the Voting Classes, the City will request

that the Bankruptcy Court confirm the Plan in accordance with those portions of section 1129(b) of the Bankruptcy Code that are applicable to the Chapter 9 Case, which provisions permit confirmation by a process known as "cram down" notwithstanding such rejection if the Bankruptcy Court finds, among other things, that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each rejecting Class.   Other sections of this Disclosure Statement provide a more detailed description of the requirements for acceptance and confirmation of the Plan.

### C.   Voting Procedures, Balloting Deadline, Confirmation Hearing, and Other Important Dates, Deadlines, and Procedures.

#### 1.   Voting Procedures and Deadlines

The City has provided copies of this Disclosure Statement and ballots to all known Holders of impaired Claims in the Voting Classes.  Those Holders of an Allowed Claim in each of the Voting Classes who seek to vote to accept or reject the Plan <u>must</u> complete a ballot and return it to the Court-appointed Ballot Tabulator so that their ballots actually are received by no later than the Balloting Deadline (as defined two paragraphs below).  Ballots do not constitute proofs of claim and must be returned directly to the Ballot Tabulator, **not** to the Bankruptcy Court.  The Ballots will also provide Holders of Allowed Claims in excess of $2,500.00 the option to reduce their Allowed Claims to $2,500.00 so that they may be classified as Holders of Class 14 General Unsecured Convenience Claims.

*All ballots, including ballots transmitted by facsimile, must be completed, signed, returned to, and <u>actually received</u> by the Ballot Tabulator by not later than _____,   201_, at 4:30 p.m.  Eastern Standard Time (the "<u>Balloting Deadline</u>").  Neither Ballots received after the Balloting Deadline, nor ballots returned directly to the Bankruptcy Court rather than by the Ballot Tabulator, shall be counted in connection with confirmation of the Plan.*

#### 2.   Date of the Confirmation Hearing and Deadlines for Objection to Confirmation of the Plan.

The hearing to determine whether the Bankruptcy Court will confirm the Plan (the

"Confirmation Hearing") will commence on _____, 201_, at _.m. Eastern Standard Time in the United States Bankruptcy Court for the District of Rhode Island on the 6th floor of the Federal Center 380 Westminster Street, Providence, Rhode Island 02903.  The Confirmation Hearing may be continued from time to time, including by announcement in open court, without further notice.

Any objections to confirmation of the Plan must be filed with the Bankruptcy Court and served on the following entities so as to be <u>actually received</u> by no later than,  201_  and  copies must be sent to [insert names and addresses of those that must receive objections].  Objections that are not timely filed and served <u>may not be considered</u> by the Bankruptcy Court. ***Please refer to the accompanying notice of the Confirmation Hearing for specific requirements regarding the form and nature of objections to confirmation of the Plan.***

**D.    <u>Important Notices and Cautionary Statements.</u>**

1.  The historical financial data relied upon in preparing the Plan and this Disclosure Statement is based upon the City's books and records.  Although certain professional advisors of the City assisted in the preparation of this Disclosure Statement, in doing so such professionals relied upon factual information and assumptions regarding financial, business, and accounting data provided by the City and third parties, much of which has not been audited.

*The professional advisors of the City have not independently verified such information and, accordingly, make no representations or warranties as to its accuracy.*  Moreover, although reasonable efforts have been made to provide accurate information, the City does not warrant or represent that the information in this Disclosure Statement, including any and all financial information and projections, is without inaccuracy or omissions, or that actual values or distributions will comport with the estimates set forth herein.

2.    ***No entity may rely upon the Plan or this Disclosure Statement or any of the accompanying exhibits for any purpose other than to determine whether to vote in favor of or***

*against the Plan.* Nothing contained in such documents constitutes an admission of any fact or liability by any party, and no such information will be admissible in any proceeding involving the City or any other party, nor will this Disclosure Statement be deemed evidence of the tax or other legal effects of the Plan on Holders of Claims in the Chapter 9 Case.

3.       Certain information included in this Disclosure Statement and its Exhibits contains forward-looking statements. The words "believe," "expect," "anticipate" and similar expressions identify such forward-looking statements. The forward-looking statements are based upon information available when such statements are made, and are subject to risks and uncertainties that could cause actual results to differ materially from those expressed in the statements. A number of those risks and uncertainties are described below. Readers therefore are cautioned not to place undue reliance on the forward-looking statements in this Disclosure Statement. The City undertakes no obligation to publicly update or revise any forward-looking statements, whether as a result of new information, future events or otherwise.

4.       Neither the Securities and Exchange Commission nor any other regulatory agency has approved nor disapproved this Disclosure Statement, nor has any such agency determined whether this Disclosure Statement is accurate, truthful or complete.

E.    **Additional Information.**

If you have any questions about the procedures for voting on the Plan, desire another copy of a ballot, or seek further information about the timing and deadlines with respect to confirmation of the Plan, please write to counsel for the City as follows: Theodore Orson, Esq., Orson and Brusini Ltd., 325 Angell Street, Providence, RI 02906 (torson@orsonandbrusini.com).[2] Please note that counsel for the City cannot and will not provide creditors with any legal advice, including advice regarding how to vote on the Plan or the effect that confirmation of the Plan will have upon Claims against the City.

---

[2] Note that Orson and Brusini Ltd. is intending on moving to 141 Wayland Avenue, Providence, RI 02906 during or about October 2011. When such move occurs, Orson and Brusini Ltd. shall file a notice of changed address with the Bankruptcy Court.

## II.     BACKGROUND INFORMATION

The background information is contained in the Executive Summary of the Five Year Financial Projection attached as Exhibit B.

## III.     THE CITY'S LIABILITIES AND ASSETS

### A.     Liabilities.

The City's liabilities include its outstanding financing obligations, its present and future pension and other post-employment benefit obligations, and vendor and other general unsecured obligations as described in the City's Schedule of Creditors filed with the Court, as amended.

### B.     Assets.

#### 1.     Capital Assets.

While the City owns all manner of capital assets, including buildings, roads, bridges, infrastructure and utility improvements, parks, undeveloped real property and service vehicles (such as fire trucks, police cars and street equipment).  Virtually all of these municipal assets are used daily in the performance of public functions and cannot be easily liquidated — particularly under current market conditions.  They are valued in the City's books and records at depreciated historical cost, which does not represent the cash value that could be recognized by the City in the event of a voluntary sale.

#### 2.     Claims and Causes of Action Against Third Parties.

Parties in interest may not rely on the absence of a reference in this Disclosure Statement or in the Plan as any indication that the City ultimately will not pursue any and all available claims, rights and causes of action against them.  **All parties who previously dealt with the City hereby are on notice** that the Plan preserves certain of the City's rights, claims, causes of action, interests and defenses.  The City expects that any and all meritorious claims will be pursued and litigated after the Effective Date to the extent they remain vested in the City.

## IV.    SUMMARY OF THE PLAN OF ADJUSTMENT

The discussion of the Plan set forth below is qualified in its entirety by reference to the more detailed provisions set forth in the Plan and its exhibits, the terms of which are controlling. Holders of Claims and other interested parties are urged to read the Plan and its exhibits, copies of which are attached to this Disclosure Statement as Exhibit A, in their entirety so that they may make an informed judgment regarding the Plan.

The Plan is premised upon the Executive Summary of Five Year Financial Projection and the Five Year Financial Plan, which are the financial planning documents that presents strategies for the City to maintain a balanced operating budget, to address the City's debts, to rebuild fiscal stability, and to enable the City to continue to provide municipal services through June 30, 2016 and hopefully beyond.  The Executive Summary of Five Year Financial Projection is attached hereto as Exhibit B and the Five Year Financial Plan is attached hereto as Exhibit C.  Note that to the extent that there is any inconsistency between the Plan (including the Exhibits and any supplements to the Plan) and the description in the Disclosure Statement, the terms of the Plan (including the Exhibits to the Plan) will govern.

### A.    Classification and Treatment of Claims.

#### 1.    Unclassified Claims.

The Plan governs the treatment of certain Claims that are not classified into Classes under the Plan.

##### a.    Administrative Expense Claims.

Administrative Expense Claims are Claims of the kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code.  Article II, Section A of the Plan provides for the treatment of Administrative Claims.  Throughout the course of the Chapter 9 Case, the City has endeavored to satisfy administrative expenses as they became due.  Accordingly, the City believes that most Claims that otherwise would constitute Allowed Administrative Claims previously have been or will be satisfied in the ordinary course of business prior to and after the Effective Date.

### (i)   Treatment of All Other Administrative Claims Other Than Professional Claims.

The Plan provides that, except as provided in Article II, Section B of the Plan, with respect to Professional Claims, or to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment, the City or its agent will pay to each Holder of an Allowed Administrative Claim, in full satisfaction, release and discharge of such Claim, cash in an amount equal to such Allowed Administrative Claim in the ordinary course of the City's business, but in no event later than the later of the date that is practicable after (i) the Effective Date, or (ii) the date on which such Claim becomes an Allowed Administrative Claim.

Professional Claims are Claims of professionals for unpaid services and costs incurred by or for the benefit of the City prior to the Effective Date or for services to be rendered following the Effective Date or expenses to be incurred in rendering such services following the Effective Date either in the Chapter 9 Case or incident to the Plan.  No Professional Claims are to be paid for professional fees incurred by or on behalf of any third party or creditors.

Article II, Section B of the Plan provides that, pursuant to section 943(a)(3) of the Bankruptcy Code, all Professional Claims must be disclosed and be reasonable and that, upon being deemed reasonable, the City will pay to each Holder of a Professional Claim, in full satisfaction, release and discharge of such Claim, cash in an amount equal to that portion of such Claim that is deemed reasonable.

The City intends to pay the reasonable fees of its bankruptcy counsel, labor counsel, municipal finance counsel and other professionals, as well as the fees of counsel for the Committee, on a regular basis during the Chapter 9 Case.

The fees described in the preceding paragraph are not subject to Bankruptcy Court review or approval, as Bankruptcy Code § 326 *et seq.* does not apply in Chapter 9 cases.

### b.   Bar Date for Assertion of Requests for Payment of Administrative Claims (Other Than Ordinary Course Administrative Claims) and Professional Claims.

Article II, Section D of the Plan provides that all requests for approval of Administrative Expense and Professional Claims must be filed with the Bankruptcy Court and

served upon the City no later than thirty (30) days after the date on which the Notice of Effective Date is mailed pursuant to the Plan.

**All requests for payment or any other means of preserving and obtaining payment of Administrative Claims (other than Ordinary Course Administrative Claims) that have not been paid, released, or otherwise settled, and all requests for approval of Professional Claims, must be filed with the Bankruptcy Court and served upon the City no later than thirty (30) days after the date on which the Notice of Effective Date is mailed.** Any request for payment of an Administrative Claim or a Professional Claim that is not timely filed by such date will be forever barred, and Holders of such Claims shall be barred from asserting such Claims in any manner against the City.

**2.    Classes of Claims**

a.    **Class 1** – Claims of Holders of **$12,000,000 City of Central Falls, Rhode Island General Obligation School Bonds, dated July 15, 1999**, outstanding in the amount of approximately $6,670,000 as of the date of the filing of the Plan, bearing the CUSIP numbers attached to the Plan as Exhibit A.  (Registered owner for notice purposes as of the date of the filing of the Plan: The Depository Trust Company ("DTC")).  The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  Subject to an annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursements for 97% of principal and interest on the Bonds.  These Claims will hereinafter be referred to as the "**Class 1 $12,000,000 General Obligation School Bonds Claims.**"

This Class is Unimpaired by the Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not

entitled to vote to accept or reject the Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Plan.

b.      <u>Class 2</u> – Claims of Holders of **$8,700,000 City of Central Falls, Rhode Island General Obligation Municipal Facility Bonds, dated October 1, 2007**, outstanding in the amount of approximately $7,680,000 as of the date of the filing of the Plan, bearing the CUSIP numbers attached to the Plan as Exhibit B.  (Registered owner for notice purposes as the date of the filing of the Plan: DTC.)  The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the Bonds and the interest thereon.  Pursuant  to R.I. Gen. Laws § 45-12-1, the Bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  These Claims will hereinafter be referred to as the "**Class 2 $8,700,000 General Obligation Municipal Facility Bonds Claims**."

This Class is Unimpaired by the Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject the Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Plan.

c.      <u>Class 3</u> – Claims of Holders of **$1,420,000 City of Central Falls, Rhode Island General Obligation School Bonds, dated August 15, 2007**, outstanding in the amount of $1,165,000 as of the date of the filing of the Plan.  (Registered owner for notice purpose as of the date of the filing the Plan: the Rhode Island Health and Educational Building Corporation ("RIHEBC").  (These bonds are part of a pool securing publicly offered bonds issued by RIHEBC—DTC is Registered Owner for notice purposes of bonds issued by RIHEBC).  The

bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.   Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  Subject to annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursement for 97% of principal and interest on the bonds which are intercepted by the General Treasurer and paid directly to the bond trustee to pay the bonds.   These Claims will hereinafter be referred to as the "**Class 3 $1,420,000 General Obligation School Bonds Claims**."

This Class is Unimpaired by the Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject the Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Plan.

**d.**    <u>**Class 4**</u> – Claims of Holders of **$750,000 City of Central Falls, Rhode Island General Obligation Qualified Construction School Bonds, 2010 Series 1, dated June 29, 2010**, outstanding in the amount of approximately $750,000 as of the date of the filing of the Plan.  (Registered owner as of the date of the filing the Plan: RIHEBC.)  The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  Subject to appropriation by the federal government and certain other conditions, the City receives an interest rate subsidy to pay interest on the bonds subject to annual appropriation by the Rhode Island General Assembly; the City receives state aid reimbursements for 97% of the principal on the bonds which is intercepted by the General

Treasurer and paid directly to the paying agent to pay the bonds.  Pursuant to R.I. Gen. Laws § 45-12-32, the City has directed that additional state aid be intercepted to pay the remaining 3% of principal.  These Claims will hereinafter be referred to as the "**Class 4 $750,000 General Obligation School Bonds**."

This Class is Unimpaired by the Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject the Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Plan.

e.      <u>**Class 5**</u> – Claims of Holders of **$4,250,000 Central Falls, Rhode Island General Obligation School Bonds, 2010 Series 2, dated June 30, 2010**, outstanding in the amount of approximately $4,250,000 as of the date of the filing of the Plan..  (Registered owner as of the date of the filing the plan: RIHEBC.)   These "borrower bonds" general qualified school construction bonds issued by RIHEBC which were privately placed in the Washington Trust Company (the "RIHEBC Bonds").   The borrower bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  Subject to an appropriation by the federal government and certain other conditions, RIHEBC receives an interest rate subsidy to pay interest on the RIHEBC bonds which is applied to reduce the payment required from the City on the borrower bonds.  Subject to an annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursements for 97% of principal on the borrower bonds, which is intercepted by the General Treasurer and paid directly to the RIHEBC bond trustee to pay the borrower bonds. Pursuant to R.I. Gen. Laws § 45-12-32,

the City has directed that additional state aid be intercepted to pay the remaining 3% of principal

on the borrower bonds.  These Claims will hereinafter be referred to as the "**Class 5 $4,250,000**

**General Obligation School Bonds**."

This Class is Unimpaired by the Plan.  The legal, equitable and contractual rights of the

Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not

entitled to vote to accept or reject the Plan.  Under Bankruptcy Code § 1126(f), this Class is

conclusively presumed to have accepted the Plan.

**f.**      <u>**Class 6**</u> – Claim of lessor of **Lease dated April 10, 2009 by and between First**

**Municipal Leasing Corporation and the City** (the "Rescue Lease"), outstanding in the amount

of approximately $83,403 as of the date of the filing of the Plan.  The Rescue Lease is secured by

a Horton rescue vehicle Vin No. 1FDFX47R78EE39070.  This Claim will hereinafter be referred

to as the "**Class 6 April 10, 2009 Lease Claim**."  The fiscal year 2012 lease payment is secured

by a R-I-Stationary lien on property taxes and general fund revenues.

This Class is Impaired by the Plan since the treatment of this Class will affect the legal,

equitable and/or contractual rights of the Holder of the Claim. Accordingly, the Holder of the

Claim in this Class is entitled to vote to accept or reject the Plan.

On the Effective Date, the term of the Rescue Lease shall be extended by two (2) years,

the annual principal payments shall be reduced by 50%, and the annual interest rate shall be

reduced by one (1%) percent.  The new payment schedule shall be as set forth in Exhibit K to the

Plan.  All other terms and conditions of the Rescue Lease shall remain unaltered and in full force

and effect.  On or prior to the Effective Date, if either party so elects in writing, the parties shall

enter into a modified lease agreement reflecting these modifications.

g.      <u>Class 7</u> – Claims of the **police, fire and municipal employee retirees for the loss of a portion of their health insurance benefits as a result of the restructuring of the health insurance benefits** to be provided by the City as set forth in Exhibit C attached to the Plan.   The Class 7 Claimants are specifically identified in Exhibit D attached to the Plan.  These Claims will hereinafter be referred to as the "**Class 7 Retiree Health Insurance Claims**."

This Class is Impaired by the Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims. Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Plan.

The Holders of these Claims will have their health care benefits modified in accordance with the restructured health benefits schedule set forth on Exhibit C attached to the Plan, and will be required to pay 20% co-share premium payments.

h.      <u>Class 8</u> – Claims of **the police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1% Pension Plan who have had their accidental disability retirement benefits reduced in accordance with the newly designed Central Falls Pension Plan** as set forth in Exhibit E attached to the Plan. The benefits to these individuals have not been reduced by the application of an Early Retirement Factor.  The Class 8 Claimants are specifically identified in Exhibit F attached to the Plan.  These Claims will hereinafter be referred to as the "**Class 8 Retiree Accidental Disability Claims**."

This Class is Impaired by the Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims. Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Plan.

i.      <u>Class 9</u> - Claims of the **police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1%**

**Pension Plan who receive an annual pension benefit of $10,000 or less**.  The Class 9 Claimants are specifically identified in Exhibit C attached to the Plan.   These Claims will hereinafter be referred to as the "**Class 9 Retiree $10,000 and Under Circuit Breaker Pension Claims**."

This Class is Unimpaired by the Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject the Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Plan.

The Holders of these Claims will not have their benefits reduced under the newly-designed Central Falls Pension Plan as set forth in Exhibit E attached to the Plan.  The City has determined, as a matter of governmental policy, that because the annual pension benefits in this group are relatively low, and the average age of the individuals in this group is older than the other retiree classes, there is a smaller unliquidated benefit and therefore a lesser impact on the City and the Plan. Moreover, the City has further determined, as a matter of governmental policy, that because these individuals have less ability to adjust and absorb a reduction in benefits, the City will not impact its most vulnerable retirees by reducing their benefits.

**j.**      **Class 10** – Claims of the **police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1% Pension Plan, who, after application of the pension formula set forth in the newly-designed Central Falls Pension Plan, Exhibit E attached to the Plan, would receive an annual pension benefit of $10,000**.  The Class 10 Claimants are specifically identified in Exhibit H attached to the Plan.  These Claims will hereinafter be referred to as the "**Class 10 Retiree Reduced to $10,000 Circuit Breaker Pension Claims**."

This Class is Impaired by the Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims. Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Plan.

The Holders of these Claims will have their annual pension benefits reduced to $10,000 under the newly-designed Central Falls Pension Plan as set forth in Exhibit E attached to the Plan. Although the strict application of the new pension plan formula would reduce these individuals' benefits to less than $10,000 annually, the City has determined, as a matter of governmental policy, that it will not reduce benefits below this $10,000 threshold. The City determined that because the annual pension benefits in this group are relatively low, there is a smaller unliquidated benefit and therefore a lesser impact on the City and the Plan. Moreover, the City has further determined, as a matter of governmental policy that it would be unfair to reduce benefits below the $10,000 threshold, and therefore, the City would lessen the impact of the newly-designed plan on this group of retirees.

k.      **Class 11** - Claims of the **police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1% Pension Plan who, after application of the formula set forth in the newly-designed Central Falls Pension Plan, Exhibit E attached to the Plan, limited by the 45% circuit breaker, would receive an annual pension benefit of 45% of their prior pension benefit**. The Class 11 Claimants are specifically identified in Exhibit I attached to the Plan. These Claims will hereinafter be referred to as the "**Class 11 Retiree 45% Circuit Breaker Pension Claims**."

This Class is Impaired by the Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims. Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Plan.

The Holders of these Claims will have their annual pension benefits reduced by 55% under the newly-designed Central Falls Pension Plan as set forth in Exhibit E attached to the Plan.  Although strict application of the new pension plan formula would reduce these individuals' benefits to an amount which would be less than 45% of the amount of their pre-petition pension benefit annually, the City has determined, as a matter of governmental policy, that it will not reduce benefits below this 45% threshold.  The City has further determined, as a matter of governmental policy that it would be unfair to reduce benefits below 45% of pre-petition pension benefits, and therefore, the City would lessen the impact of the newly-designed plan on this group of retirees.

l.      **Class 12** – Claims of **the police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1% Pension Plan who will receive a reduced benefit under the newly designed Central Falls Pension Plan**, Exhibit E attached to the Plan (excluding those Claimants identified as Claimants of **Class 8 Retiree Accidental Disability Claims, Class 9 Retiree $10,000 and Under Circuit Breaker Pension Claims, Class 10 Retiree Reduced to $10,000 Circuit Breaker Pension Claims** and **Class 11 Retiree 45% Circuit Breaker Pension Claims**).  The Class 12 Claimants are specifically identified in Exhibit J attached to the Plan.  These Claims will hereinafter be referred to as the "**Class 12 Retiree Pension Claims**."

This Class is Impaired by the Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Plan.

The Holders of these Claims will have their benefits reduced in accordance with the formula set forth under the newly-designed Central Falls Pension Plan.  These reductions will be in amount less than 55% of the prior annual pension benefit.  See Exhibit E attached to the Plan.

**m.**     **Class 13** – Claims of G**eneral Unsecured Creditors (excluding Claims of Claimants of Class 14 General Unsecured Convenience Claims)**.   These Claims will hereinafter be referred to as the "**Class 13 General Unsecured Claims**."

This Class is Impaired by the Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holder of the Claim.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Plan.

The Holders of these Allowed Claims shall share *pro rata* on or prior to June 30, 2013 from the balance of the General Unsecured Claims Pool after distributions are made to or reserves are created for the Holders of the **Class 14 Convenience General Unsecured Claims** and then the Holders of these Allowed Claims shall share *pro rata* on or prior to June 30, 2014, June 30, 2015, and June 30, 2016 from the General Unsecured Claims Pool.

**n.**     **Class 14** – Claims of General Unsecured Claims either (i) Allowed in an amount of less than Two Thousand Five Hundred Dollars ($2,500.00) or (ii) Allowed in an amount greater than $2,500, but which the Holder elects to reduce to Two Thousand Five Hundred Dollars ($2,500.00) when said Holder submits its Ballot to the City.  (Said Ballots shall have a section providing for such an election.)   This class is being established for convenience purposes.  These Claims will hereinafter be referred to as the "**Class 14 General Unsecured Convenience Claims**."

This Class is Impaired by the Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holder of the Claim.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Plan.

The Holders of these Allowed Claims shall receive a distribution of 50% of the amount of their Allowed Claim from the General Unsecured Claims Pool on or prior to June 30, 2013.

**B.   Treatment of Executory Contracts and Unexpired Leases.**

**1.    Generally.**

The Bankruptcy Code empowers debtors, subject to the terms of the Bankruptcy Code and the approval of the Bankruptcy Court, to assume or reject their executory contracts and unexpired leases.  An "executory contract" generally means a contract under which material performance remains due by both parties.

A debtor's assumption of an executory contract or unexpired lease means that it will and must continue to honor its obligations under such agreement.  In other words, as to such agreement, it is business as usual.  Rejection of an executory contract or unexpired lease constitutes a prepetition breach of such agreement, excusing the debtor's future performance, but creating a Claim for the breach.

**2.    Assumption.**

The City is a party to various executory contracts and unexpired leases.  These include bond obligations described herein and in Exhibit I annexed hereto.  The City has elected to assume such agreements as well as many of its other executory contracts and unexpired leases, and will do so pursuant to the Assumption/Assignment Motion to be filed with this Court.  The City will not seek to assign any of the agreements that it assumes. The City believes that it is current in its payments and other obligations under the executory contracts and unexpired leases that it will assume pursuant to the Assumption/Assignment Motion.  However, after the provision of notice and the opportunity for a hearing on the Assumption/Assignment Motion, the Bankruptcy Court will resolve any disputes regarding: (a) the amount of any cure payment to be made in connection with the assumption of any contract or lease; and (b) any other matter pertaining to such assumption and assignment.

**3.    Rejection.**

The City will file Rejection Motions, pursuant to section 365(a) of the Bankruptcy Code, to seek approval and authorization for the rejection of such executory contracts and unexpired leases that it does not elect to assume.  Such agreements are those that the City, in the exercise of its business judgment, deems burdensome.  Significant agreements that the City has rejected and has filed motions for approval thereof include the collective bargaining

agreements with (i) Central Falls Police Department, Fraternal Order of Police, Central Falls

Lodge No. 2; (ii) International Association of Fire Fighters, Local 1485, AFL-CIO; and (iii)

Rhode Island Council 94, American Federation of State, County and Municipal Employees,

AFL-CIO, Local 1627 and (iv) the Employment Contract between the City and Joseph P.

Moran, III, executed March 24, 2010.

### Deadline for the Assertion of Rejection Damage Claims; Treatment of Rejection Damage Claims.

All proofs of claim on account of Claims arising from the rejection of executory

contracts or unexpired leases must be filed with the Bankruptcy Court and served on the City

no later than 30 days after the date on which notice of entry of the order approving the

rejection is mailed.  Any Claim for which a proof of Claim is not filed and served within such

time will be forever barred and shall not be enforceable against the City or its assets,

properties, or interests in property.  Unless otherwise ordered by the Bankruptcy Court, all

such Claims that are timely filed as provided herein shall be classified into Class 13 General

Unsecured Claims or Class 14 General Unsecured Convenience Claims, as the case may be,

and treated accordingly.

### C.   Means for Execution and Implementation of the Plan.

The City will continue to operate under its Charter, governed by the City Council,

following the Effective Date.  It will continue to collect real property tax revenues, sales tax

revenues, the user utility tax and other taxes following the Effective Date, spending such

revenues on municipal services such as providing fire and police protection, paving roads, and

facilitating the provision of funding for transportation services.  The Five-Year Financial Plan

provides the framework for sustainable operation of the City through June 30, 2016 by

allocating available unrestricted revenues among the City's obligations.   The Five-Year

Financial Plan balances the need to satisfy prebankruptcy debt with the City's obligation to

provide services to its residents and businesses.  The Plan implements the Five-Year Financial

Plan by creating the General Unsecured Claims Pool, which will contain $613,147 in fiscal

years 2013-2016 to be paid to Holders of General Unsecured Claims *pro rata* after

distributions are made or reserves are created on or prior to June 30, 2013 for the Holders of General Unsecured Convenience Claims in the amount of fifty percent (50%) according to the amounts of the Claims of the Holders of General Unsecured Convenience Claims.

### 1.   Rights of Action.

The Plan provides that the City retains all of its Claims, causes of action, rights of recovery, rights of offset, recoupment rights to refunds and similar rights after the Effective Date.  Unless a Right of Action is expressly waived, relinquished, released, compromised or settled in the Plan, the City expressly reserves all Rights of Action for later adjudication and, as a result, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Rights of Action upon or after the confirmation or consummation of the Plan or the Effective Date.  In addition, the City expressly reserves the right to pursue or adopt against any other entity any claims alleged in any lawsuit in which the City is a defendant or an interested party.  A Schedule of Pending Litigation against the City is annexed hereto as Exhibit J.

### D.   Distributions.

All distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the books and records of the City or its agents, unless the City has been notified by such Holder in a writing that contains an address for such Holder different from the address reflected in its books and records.  All such notifications of address changes and all address continuations should be mailed to: City of Central Falls, Attn: City Clerk, Central Falls, Rhode Island 94590.

### 1.   Undeliverable Distributions.

***Holding Of Undeliverable Distributions.***  If any distribution to any Holders is returned to the City or its agent as undeliverable, no further distributions shall be made to such Holder unless and until the City is notified in writing of such Holder's then-current address.  Unless and until the City is so notified, such distribution shall be deemed to be

"Unclaimed Property."

*Unclaimed Property.*  If any entity entitled to receive distributions pursuant to the Plan does not present itself on the Effective Date or on such other date on which such entity becomes eligible for distribution, such distributions shall be deemed to be "Unclaimed Property." Unclaimed Property shall be set aside and held in a segregated account to be maintained by the City pursuant to the terms of the Plan.

No later than 60 days after August 31, 2012 the City shall file with the Bankruptcy Court a list of Unclaimed Property, together with a schedule that identifies the name and last-known address of Holders of the Unclaimed Property; the City otherwise shall not be required to attempt to locate any such entity. On August 31, 2013, all remaining Unclaimed Property and accrued interest or dividends earned thereon shall be remitted to and vest in the City, except as may be provided under the laws of the State of Rhode Island.

## 2.    Timeliness of Payments.

Any payments or distributions to be made pursuant to the Plan shall be deemed to be timely made if made within 14 days after the dates specified in the Plan.  Whenever any distribution to be made under the Plan shall be due on a day that is a Saturday, Sunday, or legal holiday, such distribution instead shall be made, without interest, on the immediately succeeding day that is not a Saturday, Sunday, or legal holiday, but shall be deemed to have been made on the date due.

## 3.    Compliance With Tax Requirements.

The City will comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan will be subject to such withholding and reporting requirements.  In connection with each distribution with respect to which the filing of an information return (such as Internal Revenue Service Forms W-2, 1099 or 1042) or withholding is required, the City will file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law.  With respect to any entity from whom a tax

identification number, certified tax identification number, or other tax information required by law to avoid withholding has not been received by the City, the City at its sole option, may withhold the amount required and distribute the balance to such entity or decline to make such distribution until the information is received.

### 4.     Time Bar to Cash Payments.

Checks issued by the City on account of Allowed Claims will be null and void if not negotiated within 90 days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the City by the Holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check must be made on or before the second anniversary of the Effective Date.  After such date, all claims in respect of voided checks will be discharged and forever barred and the City will retain all moneys related thereto.

### 5.     No Distributions on Account of Disputed Claims.

No distributions shall be made on account of any part of any Disputed Claim until such Claim becomes Allowed (and then only to the extent so Allowed).  Distributions made after the Effective Date in respect of Claims that were not Allowed as of the Effective Date (but which later became Allowed) shall be deemed to have been made as of the Effective Date.

### 6.     No Postpetition Accrual.

Unless otherwise specifically provided in the Plan or Allowed by order of the Bankruptcy Court, the City will not be required to pay to any Holder of a Claim any interest, penalty or late charge accruing with respect to such Claim on or after the Petition Date.

### E.     Disputed Claims.

### 1.     Claims Objection Deadline; Prosecution of Objections.

The City shall have the right to object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability or allowance is disputed in whole or in part.  Unless otherwise ordered by the Bankruptcy Court, the City shall file and serve any such objections to Claims by the earlier of (i) the date such distribution would otherwise be due or

(ii) not later than 180 days after the Effective Date (or, in the case of Claims lawfully filed after the Effective Date, by not later than 180 days after the date of filing of such Claims).

## 2. Reserves, Payments, and Distributions With Respect to Disputed Claims.

A.       Prior to making *a pro rata* distribution to Holders of Class 13 General Unsecured Claims or Class 14 General Unsecured Convenience Claim, the City shall reserve from the amount of the distribution a reserve for such Class 13 General Unsecured Claims or Class 14 General Unsecured Convenience Claim to the extent that such Claims are Disputed Claims. The amount reserved for each such Claim shall be on the same *pro rata* basis as the distribution to Allowed Class 13 General Unsecured Claims and Allowed Class 14 General Unsecured Convenience Claim, as the case may be, based upon the lesser of (a) the amount asserted by the Holder of the Claim to be owing, and (b) such amount as the Bankruptcy Court may estimate for all distribution purposes upon motion of the City, which motion may be made initially or from time to time.

At such time as a Disputed Claim becomes an Allowed Claim, in whole or in part, the City or its agent shall distribute to the Holder thereof the distributions, if any, to which such Holder is then entitled under the Plan. Such distributions, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order (or such other date as the Claim becomes an Allowed Claim), but in no event more than 60 days thereafter. Unless otherwise specifically provided in the Plan or Allowed by order of the Bankruptcy Court, no interest shall be paid on Disputed Claims that later become Allowed Claims.

To the extend a Disputed Claim is disallowed, the amounts held in escrow for that Disputed Claim shall be removed from escrow and re-allocated to the remaining Allowed Claims and Disputed Claims for pro rata distribution or escrow on the next scheduled payment date.

## F.       Continuing Jurisdiction of the Bankruptcy Court.

The Plan provides for the Bankruptcy Court to retain jurisdiction over a broad range of matters relating to the Chapter 9 Case, the Plan, and other related items.   Readers are encouraged to review the Plan carefully to ascertain the nature of the Bankruptcy Court's continuing post-Effective Date jurisdiction.

## V.     CONFIRMATION AND EFFECTIVENESS OF THE PLAN

**Because the law with respect to confirmation of a plan of adjustment is complex, creditors concerned with issues regarding confirmation of the Plan should consult with their own attorneys and financial advisors.**  The following discussion is intended solely for the purpose of providing basic information concerning certain confirmation issues.  The City cannot and does not represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Bankruptcy Court may confirm the Plan. Some of the requirements discussed in this Disclosure Statement include acceptance of the Plan by the requisite number of creditors, and whether the Plan is in the "best interests" of creditors.  These requirements, however, are not the only requirements for confirmation, and the Bankruptcy Court will not confirm the Plan unless and until it determines that the Plan satisfies all applicable requirements, including requirements not referenced in this Disclosure Statement.

### A.     Voting and Right to Be Heard at Confirmation.

#### 1.     Who May Support or Object to Confirmation of the Plan?

Any party in interest may support or object to the confirmation of the Plan.  Even entities who may not have a right to vote (e.g., entities whose Claims are classified into an unimpaired Class) may still have a right to support or object to confirmation of the Plan.  *(See* Section I(C)(2) for information regarding the applicable deadlines for objecting to confirmation of the Plan).

#### 2.     Who May Vote to Accept or Reject the Plan?

A creditor generally has a right to vote for or against the Plan if its Claim is both Allowed for purposes of voting and is classified into an impaired Class.  Generally, a Claim is deemed Allowed if a proof of claim was timely filed, provided, however, that if an objection to a Claim has been filed, the claimant cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the Claim for voting purposes.  Thus, **the definition of "Allowed Claim" used in the Plan for purpose of determining whether creditors are entitled to receive distributions is different from that used by the**

Bankruptcy Court to determine whether a particular Claim is an "Allowed Claim" for purposes of voting.  Holders of Claims are advised to review the definitions of "Allowed Claim," "Claim," and "Disputed Claim" set forth in A of the Plan to determine whether they may be entitled to vote on, and/or receive distributions under, the Plan.

### 3.   Who Is Not Entitled to Vote?

The Holders of the following types of Claims are not entitled to vote on the Plan: (a) Claims that have been disallowed; (b) Claims that are subject to a pending objection and which have not been Allowed for voting purposes; (c) Claims that are not impaired; and (d) Administrative Expense Claims, since such Claims are not placed in Classes and are required to receive certain treatment specified by the Bankruptcy Code.

### 4.   Vote Necessary to Confirm the Plan.

The Bankruptcy Court cannot confirm the Plan unless, among other things, (a) at least one impaired Class has accepted the Plan without counting the votes of any insiders within that Class; and (b) either all impaired Classes have voted to accept the Plan, or the Plan is eligible to be confirmed by "cram down" with respect to any dissenting impaired Class.

A Class of Claims is considered to have accepted the Plan when more than one-half in number and at least two-thirds in dollar amount of the Claims that actually voted in that Class have voted in favor of the Plan.

### B.   The "Best Interests" Test.

The Bankruptcy Court also must determine that the Plan is in the "best interests of creditors" pursuant to section 943(b)(7) of the Bankruptcy Code, which in the Chapter 9 context means that treatment under the Plan must be better than the only alternative available, which is dismissal of the case.  Dismissal permits every creditor to fend for itself in the race to the courthouse, since a municipality such as the City is not eligible under the Bankruptcy Code for a court-supervised liquidation under chapter 7.

The City submits that the Plan is in the best interests of all creditors because significant payments will be made to all impaired Classes.  While the Plan permits the City to continue to maintain minimally acceptable levels of vital municipal services for its residents and businesses, and while it devotes substantial resources to the repayment of the

City's creditors, it nevertheless further defers infrastructure maintenance as well as the optimal staffing of City service units such as police and fire.

In contrast, in the absence of the financial adjustments made in Plan, the City's creditors would be left to "fend for themselves." Individual creditor collection actions likely would aggregate, through lawsuits, attempts at attachments and writs of mandamus, to make continued operation of the City untenable. Massive litigation costs would burden the City, its creditors and all parties in interest, although creditors financially equipped to pursue litigation most quickly (and thus win "the race to the courthouse") would benefit disproportionately. In short, the City cannot afford to pay its creditors absent the debt relief afforded by the Plan, and dismissal of the Chapter 9 Case could well result in chaos, with few if any creditors emerging safely from the blizzard of inevitable litigation.

### C.     Feasibility.

To satisfy the requirement set forth in Bankruptcy Code section 943(b)(7) that the Plan be feasible, the City must demonstrate the ability to make the payments required under the Plan and still maintain its operations at the level that it deems necessary to the continued viability of the City. The City submits that the Plan is feasible. The financial underpinning of the Plan, the Five-Year Financial Plan, attached as Exhibit C, constitutes a sustainable matching of revenues and expenses, including the expenses created by or modified in the Plan. The Executive Summary of the Five Year Financial Projection, attached as Exhibit B, further supports the feasibility of the Plan interns of revenue projection, necessary expenditures, and the continuation of municipal services to the residents of the City.

### D.  Cram Down.

The Bankruptcy Code provides that the Bankruptcy Court may confirm a plan of adjustment that is not accepted by all impaired classes if at least one impaired Class of Claims accepts the Plan and the so-called "cram down" provisions set forth in sections 1129(b)(1), (b)(2)(A) and (b)(2)(B) of the Bankruptcy Code are satisfied. The Plan may be confirmed under the cram down provisions if, in addition to satisfying the other requirements of section 943(b) of the Bankruptcy Code, it (a) is "fair and equitable", and (b) does not discriminate unfairly with respect to each Class of Claims that is impaired under and has not

accepted                                the                                Plan.

The "fair and equitable" standard, also known as the "absolute priority rule," requires, among other things, that unless a dissenting unsecured Class of Claims receives payment in full for its Allowed Claims, no Holder of Allowed Claims in any Class junior to that Class may receive or retain any property on account of such Claims.  The "fair and equitable" standard also has been interpreted to prohibit any class senior to a dissenting Class from receiving more than 100% of its Allowed Claims under a plan.  The City believes that the Plan satisfies the "fair and equitable" standard because, among other things, no classes junior to the classes of unsecured Claims are receiving or retaining any property under the Plan.

The requirement that the plan not "discriminate unfairly" means, among other things, that a dissenting Class must be treated substantially equally with respect to other Classes of equal rank.  The City does not believe that the Plan unfairly discriminates against any Class that may not accept or otherwise consent to the Plan.

**As noted above, the City has reserved the right to request the Bankruptcy Court to confirm the Plan by "cram down" in accordance with sections 1129(b)(1), (b)(2)(a) and (b)(2)(b).  The City also has reserved the right to modify the Plan to the extent, if any, that confirmation of the Plan under sections 943 and 1129(b) of the Bankruptcy Code requires such modifications.**

### E.    Conditions to the Occurrence of the Effective Date.

The entry of the Confirmation Order in form and substance satisfactory to the City is a condition precedent to confirmation of the Plan and the establishment of an Effective Date.  The "effective date of the plan," as used in § 1129 of the Bankruptcy Code, shall not occur, and the Plan shall be of no force and effect, until the said condition precedent is satisfied.

The Effective Date will occur on the thirtieth (30th) day after the Court enters a Final Order confirming the Plan.

### F.    Effect of Confirmation.

Article X of the Plan provides that confirmation of the Plan and the occurrence of the Effective Date will have a number of important and binding effects, some of which are

summarized below.  Readers are encouraged to review Article X of the Plan carefully and in its entirety to assess the various consequences of confirmation of the Plan.

### 1.   <u>Discharge of the City.</u>

Pursuant to section 944 of the Bankruptcy Code, on the Effective Date, the City will be discharged from all debts (as defined in the Bankruptcy Code) of the City and Claims against the City other than (a) any debt specifically and expressly excepted from discharge by the Plan or the Confirmation Order, or (b) any debt owed to an entity that, before the confirmation of the Plan, had neither notice nor actual knowledge of the Chapter 9 Case.

The rights afforded in the Plan and the treatment of Claims will be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever arising on or before the Effective Date, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, whether against the City or any of its properties, assets, or interests in property.  Except as otherwise provided in the Plan, on the Effective Date, all Claims against the City will be deemed to be satisfied, discharged and released in full.

### 2.   <u>Injunction.</u>

The Plan provides that all entities who have held, hold or may hold pre-Effective Date Claims will be permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such pre-Effective Date Claim against the City; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the City with respect to such pre-Effective Date Claims; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against the City or its property or interests in property; and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the City with respect to any such pre-Effective Date Claim, except as otherwise permitted by section 553 of the Bankruptcy Code.

3.  **Term of Existing Injunctions and Stays.**

  The Plan provides that all injunctions or stays provided for in the Chapter 9 Case pursuant to sections 105, 362, or 922 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.

## VI. **CERTAIN RISK FACTORS TO BE CONSIDERED**

  Confirmation of the Plan and the occurrence of the Effective Date are not without risk to the City and its creditors in that the sources of revenue projected in the Five Year Financial Plan could contract.  Thus, while the City devoted considerable time and effort in formulating the Five Year Financial Plan, there can be no guaranty that it will be 100% accurate.

  For example, few Rhode Island cities, if any, predicted the length and depth of the economic downturn that saw real property values (and thus real property tax revenues) plummet.  Nor did city financial planners predict the high unemployment and underemployment that accompanied the burst of the housing bubble and reduced the amount of sales tax revenues to state and local governments.  Conversely, while the General Fund expenditures projected in the Five Year Financial Plan are the City's best and most reasoned estimate of costs, the occurrence of a natural or human-caused disaster could and likely would cause costs to rise, if not to spike.  These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation.

  **The City submits, though, that the risk to creditors and parties in interest is greater if the Plan is not confirmed and consummated than if it is.**

## VII. **CERTAIN FEDERAL INCOME TAX CONSEQUENCES**

  The implementation of the Plan may have federal, state, local and foreign tax consequences to the City and its creditors.  No tax opinion has been sought or will be obtained with respect to any tax consequences of the Plan.  However, because the City is a municipal corporation duly organized and existing under its Charter and the Constitution of the State of Rhode Island, and is treated as a political subdivision of the State of Rhode Island for federal income tax purposes, the City believes that it will not be subject to any federal income tax

liability from implementation of the Plan.  The City anticipates that, in conformity with past practice, it will not file any federal corporate income tax returns with respect to the periods in which the Plan is implemented nor report any income for federal income tax purposes as a result of implementing the Plan.

Because individual circumstances may differ, and the income tax consequences of a Chapter 9 case are complex and uncertain, this summary does not address the federal income tax consequences that may be relevant to the creditors of the City as a result of the Plan. Accordingly, the creditors should consult with their own tax advisors regarding the income tax consequences of the Plan to them, including the effect, if any, the Plan may have on prior outstanding obligations the interest components of which the creditors were treating as excludable from gross income for federal income tax purposes.

**To ensure compliance with requirements imposed by the Internal Revenue Service, you are hereby notified that any tax advice contained in this summary is not intended or written to be used by any taxpayer, and cannot be used by any taxpayer, for the purpose of avoiding tax-related penalties that otherwise may be imposed under the Internal Revenue Code on the taxpayer.  Such advice was written in connection with the solicitation of votes in favor of the Plan.  The City and its creditors should seek tax advice regarding the tax consequences to them of the Plan based on their particular circumstances from an independent tax advisor.**

**VIII.**     <u>**RECOMMENDATION AND CONCLUSION**</u>

The City believes that confirmation and implementation of the Plan is preferable to all other available and feasible alternatives.  Accordingly, <u>**the City urges Holders of Impaired Claims to vote to accept the Plan by so indicating on their ballots and returning them as specified in this Disclosure Statement and on their ballots.**</u>

DATED: September 22, 2011

CITY OF CENTRAL FALLS

By: /s/ Robert G. Flanders, Jr., as and only
as Receiver of the City of Central Falls, and
not individually

Submitted by:

CITY OF CENTRAL FALLS

/s/ Theodore Orson
Theodore Orson, Esq. (No. 3871)
Christine Curley, Esq. (No. 4529)
Orson and Brusini Ltd.
325 Angell Street
Providence, RI 02906
(401) 861-0344
torson@orsonandbrusini.com[3]

---

[3] Note that Orson and Brusini Ltd. is intending on moving to 141 Wayland Avenue, Providence, RI 02906 during or about October 2011.  When such move occurs, Orson and Brusini Ltd. shall file a notice of changed address with the Bankruptcy Court.

**EXHIBITS TO DISCLOSURE STATEMENT WITH RESPECT TO THE
PLAN FOR THE ADJUSTMENT OF DEBTS OF CITY OF CENTRAL FALLS,
RHODE ISLAND, DATED SEPTEMBER 22 2011**

| | |
|---|---|
| Exhibit A | Plan of Debt Adjustment with Exhibits |
| Exhibit B | Executive Summary of Five Year Financial Projection with Appendices |
| Exhibit C | Five Year Financial Plan |
| Exhibit D | Buck Actuarial Analysis and Viability Analysis |
| Exhibit E | Central Falls Non MERS Retiree Data |
| Exhibit F | Explanation of Active Health Care Changes |
| Exhibit G | Explanation of Retiree Health Care Changes |
| Exhibit H | Staffing and Public Safety Operations Central Falls Rhode Island, Police and Fire Recommendations provided by Public Safety Strategies Group |
| Exhibit I | Outstanding Debt Service Schedules |
| Exhibit J | Schedule of Pending Litigation |