**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF RHODE ISLAND**

**In re:**

**CITY OF CENTRAL FALLS,
RHODE ISLAND**

**Debtor**

**Case No. 11-13105**

**Chapter 9**

**AMENDED PLAN FOR THE
ADJUSTMENT OF DEBTS OF
CITY OF CENTRAL FALLS,
RHODE ISLAND**

**Dated:  June 15, 2012**

**NOTE THAT THE EXHIBITS TO THE AMENDED PLAN OF DEBT ADJUSTMENT
ARE POSTED ON THE CITY'S WEBSITE AT: www.centralfallsri.com.**

**TABLE OF CONTENTS**                                                    **Page**

I.      **DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION** …1

    A.      Definitions ...............................................…………………………1

    B.      Rules of Construction ...................................................................7

II.     **TREATMENT AND DEADLINE FOR THE ASSERTION OF ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS** ......................7

    A.      Treatment of Administrative Claims ..............................................7

    B.      Treatment of Professional Claims..................................................8

    C.      Priority Claims In Chapter 9 ........................................................8

    D.      Deadline for the Filing and Assertion of Administrative Claims (Other Than Ordinary Course Administrative Claims) and Professional Claims ......8

III.    **DESIGNATION OF CLASSES OF CLAIMS** ........................................9

IV.     **TREATMENT OF CLAIMS** ........................................................17

V.      **ACCEPTANCE OR REJECTION; CRAM DOWN**........................29

    A.      Voting of Claims........................................................................29

VI.     **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ........................................................................................30

    A.      Assumption of Executory Contracts and Unexpired Leases..........................30

    B.      Cure Payments ..........................................................................30

    C.      Claims Arising From Rejection ...................................................30

VII.    **IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS AMENDED PLAN** ........................................................................31

    A.      Claims and Causes of Action .....................................................31

    B.      Compliance with Amended Plan Terms by Elected Officials or Fiduciary with the Power of Elected Officials .............................................32

    C.      Termination of Receiver……………………………………………..34

VIII.   **DISTRIBUTIONS**........................................................................34

    A.      Delivery of Distributions ...........................................................34

    B.      Undeliverable Distributions .......................................................35

    C.      Distributions of Cash ................................................................35

    D.      Timeliness of Payments .............................................................35

    E.      Compliance With Tax Requirements............................................36

    F.      Time Bar to Cash Payments .......................................................36

    G.      No Distributions on Account of Disputed Claims ...........................36

    H.      No Postpetition Accrual.............................................................37

IX.   **DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; PROSECUTION OF OBJECTIONS TO DISPUTED CLAIMS** ................................................................ 37

    A.   Claims Objection Deadline; Prosecution of Objections ................................ 37

    B.   Reserves, Payments, and Distributions With Respect to Disputed Claims .... 37

X.    **EFFECT OF CONFIRMATION** ............................................................................. 38

    A.   Discharge of the City ...................................................................................... 38

    B.   Injunction ........................................................................................................ 39

    C.   Term of Existing Injunctions or Stays ........................................................... 39

XI.   **RETENTION OF AND CONSENT TO JURISDICTION** ................................... 39

XII.  **CONDITIONS PRECEDENT** ................................................................................ 41

XIII. **MISCELLANEOUS PROVISIONS** ....................................................................... 41

    A.   Severability ..................................................................................................... 41

    B.   Governing Law ................................................................................................ 42

    C.   Effectuating Documents and Further Transactions......................................... 42

    D.   Notice of Effective Date ................................................................................. 42

## **Exhibit List to Amended Plan of Debt Adjustment**

A.   Holders of $12,000,000 City of Central Falls, Rhode Island General Obligation School Bonds, dated July 15, 1999

B.   Holders of $8,700,000 City of Central Falls, Rhode Island General Obligation Municipal Facility Bonds, dated October 1, 2007

C.   Comparison Table of Restructured Health Care Benefits

D.   List of Class 7 Retiree Health Insurance Claims

E.   Comparison Table of Restructured Pension Benefits

F.   List of Class 8 Retiree $10,000 and Under Pension Claims

G.   List of Class 9 Retiree Reduced to $10,000 Pension Claims

H.   List of Class 10 Retiree 45% Pension Claims

I.   List of Class 11 Retiree Pension Claims

J.   List of Class 12 Retiree Accidental Disability Pension Claims

K.   List of Class 13 Employees Covered by the Collective Bargaining Agreement and R.I. Council 94, AFSCME, AFL-CIO, Local 1627

L.   List of Class 14 Employees Covered by the Collective Bargaining Agreement between the City and the Fraternal Order of Police, Lodge 2

M.   List of Class 15 Employees Covered by the Collective Bargaining Agreement between the City and Local 1485, International Association of Fire Fighters, AFL-CIO

N.   List of Class 16 General Unsecured Claims

O.   List of Class 17 General Unsecured Convenience Claims

P.   List of Class 18 Property Tax Overpayment Claims

Q.   Revised Payment Schedule for Rescue Lease

R.   Retiree Appendices of Benefits

S.   Attestation Forms

NOTE THAT THE EXHIBITS TO THE AMENDED PLAN OF DEBT ADJUSTMENT ARE NOT ANNEXED HERETO BUT ARE POSTED ON THE CITY'S WEBSITE AT: www.centralfallsri.com.

NOTE: THE BANKRUPTCY COURT HAS NOT YET APPROVED A DISCLOSURE STATEMENT WITH RESPECT TO THE PROPOSED AMENDED PLAN OF ADJUSTMENT OF DEBTS. THE FILING OF THIS PROPOSED AMENDED PLAN IS NOT INTENDED TO AND SHOULD NOT BE CONSTRUED TO BE A SOLICITATION OF ACCEPTANCES OF THE AMENDED PLAN.

The City of Central Falls, Rhode Island (the "City"), a debtor under Chapter 9 of the United States Bankruptcy Code (the "Bankruptcy Code"), hereby proposes the following Amended Plan of Adjustment of Debts (the "Amended Plan") pursuant to § 941 of the Bankruptcy Code and § 1129 as incorporated into Chapter 9 by § 901 of the Bankruptcy Code.

## I.   DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION.

### A.   Definitions.

1.   **Administrative Claim** means any Claim for an administrative expense of the kind described in §§ 503(b) or 507(a)(2) of the Bankruptcy Code.

2.   **Allowed Claim** means a Claim that:

a.   is asserted in a proof of claim filed in compliance with § 501 of the Bankruptcy Code and any applicable orders of the Bankruptcy Court and as to which: (i) no objection has been filed within the deadline established pursuant to Article IX, § A of the Amended Plan; (ii) the Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim (but only in the amount so allowed); or (iii) the Bankruptcy Court has entered a Final Order under § 502(c) of the Bankruptcy Code estimating the amount of the Claim for purposes of allowance;

b.   is subject to a stipulation between the City and the Holder of such Claim providing for the allowance of such Claim;

c.   is deemed "allowed" pursuant to this Amended Plan;

d.   is designated as "allowed" in a pleading entitled "Designation of Allowed Claims" (or a similar title of the same import) filed with the Bankruptcy Court by the City on or after the Effective Date; or

e.   is an Administrative Claim as to which the Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim (but only in the amount so allowed).

3.      **Amended Disclosure Statement** means the Amended Disclosure Statement, and all exhibits and schedules incorporated therein, that relates to this Amended Plan and that is approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code as incorporated into Chapter 9 by § 901 of the Bankruptcy Code, as the same may be amended, modified or supplemented in accordance with the Bankruptcy Code.

4.      **Amended Plan** means this Amended Plan for the Adjustment of Debts of City of Central Falls, Rhode Island dated June 15, 2012, together with any Exhibits, each in their present form or as they may be altered, amended or modified from time to time in accordance with the provisions of this Amended Plan, the Confirmation Order, the Bankruptcy Code, the Bankruptcy Rules, and Orders of the Bankruptcy Court.

5.      **Ballot** means the ballot(s), in the form(s) approved by the Bankruptcy Court in the Plan Solicitation Order, accompanying the Amended Disclosure Statement and provided to each Holder of a Claim entitled to vote to accept or reject this Amended Plan.  Each such ballot shall also provide creditors who hold Allowed Class 16 General Unsecured Claims that exceed $5,000 with the option of reducing their claims to $5,000 in order to become classified as part of the **Class 17 General Unsecured Convenience Claims.**

6.      **Bankruptcy Code** means Title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 9 Case.

7.      **Bankruptcy Court** means the United States Bankruptcy Court for the District of Rhode Island, or such other court that lawfully exercises jurisdiction over the Chapter 9 Case.

8.      **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 9 Case, together with the local rules of the Bankruptcy Court applicable to the Chapter 9 Case. Unless otherwise indicated, references in this Amended Plan to "Bankruptcy Rule _____" are to the specifically identified rule of the Federal Rules of Bankruptcy Procedure.

9.      **Bar Date** means the applicable date by which particular proofs of claim must be filed, as established by the Bankruptcy Court or under the terms of this Amended Plan.

10.     **Capital Fund** means a fund established by the City for the payment of capital expenditures that may be needed during the terms of the Amended Plan.

11.     **Cash** means cash and cash equivalents, including withdrawable bank deposits, wire transfers, checks, and other similar items.

12.     **Chapter 9 Case** means the case under Chapter 9 of the Bankruptcy Code commenced by the City, styled as *In re City of Central Falls, Rhode Island,* Case No. 11-13105, currently pending in the Bankruptcy Court.

13.     **City** means the City of Central Falls, Rhode Island, the debtor in the Chapter 9 Case.

14.     **Claim** means a Claim against the City or the property of the City within the meaning of § 101(5) of the Bankruptcy Code.

15.     **Class** means one of the classes of Claims established under § 1122 of the Bankruptcy Code.

16.     **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

17.     **Confirmation Order** means the order of the Bankruptcy Court confirming this Amended Plan pursuant to § 943 of the Bankruptcy Code.

18.     **Disallowed Claim** means a Claim or portion thereof that has been disallowed by an Order.

19.     **Disclosure Statement** means the Amended Disclosure Statement, and all exhibits and schedules incorporated therein, that relates to this Amended Plan and that is approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented in accordance with the Bankruptcy Code.

20.     **Disputed Claim** means any Claim or portion thereof that has not been allowed or disallowed and is disputed by the City. In the event that any part of a Claim is Disputed, except as otherwise provided in this Amended Plan, such Claim shall be deemed Disputed in its entirety for purposes of distribution under this Amended Plan, unless the City otherwise agrees in writing in its sole discretion. Without limiting the foregoing, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, reduce, subordinate, or estimate such Claim shall be deemed to be Disputed.

21.     **Effective Date** means the thirtieth (30th) day after the Court enters a Final Order confirming this Amended Plan.

22.     **Final Order** means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (a) the time to appeal or petition for review, rehearing or certiorari has expired and no appeal or petition for review, rehearing or certiorari is then pending; or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

23.     **General Fund** means the City's chief operating fund, which is used to account for all financial resources except those required to be accounted for in another fund (such as the Restricted Funds).

24.     **General Unsecured Claim** means any unsecured claim that is not an Administrative Claim.

25.     **General Unsecured Convenience Claims** means any General Unsecured Claim, in the amount of $5,000 or less, and any Class 16 General Unsecured Claims Allowed in an amount exceeding $5,000 in which the Holder has exercised his or her option to reduce the amount of his or her Claims to $5,000.

26.  **General Unsecured Claims Pool** means the aggregate of $600,000 for *pro rata* distribution to Holders of **Allowed General Unsecured Claims**.  Class 17 General Unsecured Convenience Claims shall be paid their allotted percentage distribution on or before June 30, 2013.

27.  **General Unsecured Claims Payment Dates** means June 30, 2013, June 30, 2014, June 30, 2015, June 30, 2016 and June 30, 2017 or such earlier date(s) on which the City determines to make its annual distribution to Holders of Allowed **Class 16 General Unsecured Claims**.

28.  **Holder** means a creditor that holds a Claim.

29.  **Impaired** means a Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code as incorporated into Chapter 9 by § 901 of the Bankruptcy Code.

30.  **Notice of Effective Date** shall have the meaning ascribed to such phrase in Article II, Section D of the Amended Plan.

31.  **Ordinary Course Administrative Claim** means an Administrative Claim, other than a Professional Claim, that represents an obligation incurred post-petition in the ordinary course of business of the City (as determined by the City in its sole discretion).

32.  **Participating Retirees' Restricted 5-Year Account** shall mean a restricted account established by the City for funds received by the State of Rhode Island pursuant to the Appropriation Legislation as described in the Settlement and Release Agreement approved by the Bankruptcy Court on January 9, 2012 and approved by the Rhode Island General Assembly on June 12, 2012.  Funds from said account may only be used to pay participating retirees in accordance with Retiree Appendices of Benefits, **Exhibit R** filed herewith.

33.  **Petition Date** means August 1, 2011.

34.  **Plan Solicitation Order** means an Order issued by the Bankruptcy Court

approving the Amended Disclosure Statement, providing information for the purpose of dissemination and solicitation of votes on and confirmation of this Amended Plan, and establishing certain rules, deadlines, and procedures for the solicitation of votes with respect to and the balloting on this Amended Plan.

35.    **Pre-Effective Date Claims** shall have the meaning ascribed to such phrase in Article X, Section 1.

36.    **Professional Claim** means a Claim required to be filed pursuant to Article II, Section D of the Amended Plan for approval of amounts, if any, to be paid on or after the Effective Date for services or expenses in the Chapter 9 Case or incident to this Amended Plan rendered by professionals employed by the City or rendering services on behalf of the City.

37.    **Rejection Motion** means a motion which may be filed by the City pursuant to § 365(a) of the Bankruptcy Code, as incorporated into Chapter 9 by § 901 of the Bankruptcy Code pursuant to which the City shall seek approval and authorization for the rejection of an executory contract and unexpired lease, as shall be identified in said Rejection Motion.

38.    **Restricted Funds** means special purpose and enterprise funds administered by the City and/or trust funds, the use of which is restricted by, among other things, grants, federal law, the Rhode Island Constitution, another Rhode Island law, or City ordinance such that the assets of the Restricted Funds may not lawfully be used to pay obligations of the General Fund.

39.    **Rights of Action** means any rights, claims, or causes of action owned by, accruing to, or assigned to the City pursuant to the Bankruptcy Code or pursuant to any contract, statute, or legal theory, including without limitation any rights to, claims, or causes of action for recovery under any policies of insurance issued to or on behalf of the City.

40.    **Secured Claim** means a Claim that is subject to a valid, perfected and enforceable lien, statutory lien or security interest, in whole or in part, to the extent of the value

of such creditor's interest in the City's property, determined in accordance with § 506(a) of the Bankruptcy Code, as incorporated into Chapter 9 under § 901 of the Bankruptcy Code.

39.   **Unclaimed Property** shall have the meaning ascribed to such phrase in Article XIII, Section B(1) of the Amended Plan.

40.   **Unimpaired** means a Claim that is not Impaired within the meaning of § 1124 of the Bankruptcy Code, as incorporated into Chapter 9 under § 901 of the Bankruptcy Code.

## B.   Rules of Construction.

The following rules of construction apply to this Amended Plan: (a) unless otherwise specified, all references in this Amended Plan to "Sections" (or "§" or "§§") and "Exhibits" are to the respective Section in or Exhibit to this Amended Plan, as the same may be amended or modified from time to time; (b) the headings in this Amended Plan are for convenience of reference only and do not limit or otherwise affect the provisions of this Amended Plan; (c) words denoting the singular number include the plural number and vice versa; (d) the rules of construction set forth in § 102 of the Bankruptcy Code, as incorporated into Chapter 9 under § 901 of the Bankruptcy Code apply; (e) in computing any period of time prescribed or allowed by this Amended Plan, the provisions of Bankruptcy Rule 9006(a) apply; and (f) the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Amended Plan as a whole and not to any particular section, subsection, or clause contained in this Amended Plan.

## II.   TREATMENT AND DEADLINE FOR THE ASSERTION OF ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS.

### A.   Treatment of Administrative Claims.

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment or to which a different treatment is provided for in the Amended Plan, the City shall pay to each Holder of an Allowed Administrative Claim, in full satisfaction, release and discharge of such Claim, Cash in an amount equal to such Allowed Administrative Claim on the later of (i) the Effective Date, or (ii) the date on which such Claim becomes an Allowed

Administrative Claim.

### B.        Treatment of Professional Claims.

Pursuant to § 943(a)(3) of the Bankruptcy Code, all amounts paid following the Effective Date or to be paid following the Effective Date for services or expenses in the Chapter 9 Case or incident to this Amended Plan must be disclosed to the Bankruptcy Court and must be reasonable. There shall be paid to each Holder of a Professional Claim, in full satisfaction, release and discharge of such Claim, Cash in an amount equal to that portion of such Claim that the Bankruptcy Court approves as reasonable, on or as soon as reasonably practicable following the date on which the Bankruptcy Court enters an Order determining such reasonableness. The City, in the ordinary course of its business, and without the requirement for Bankruptcy Court approval, may pay for those attorney services rendered and those costs incurred following the Effective Date.

### C.        Priority Claims in Chapter 9.

The only type of priority Claims expressly incorporated into Chapter 9 through § 901 of the Bankruptcy Code are Administrative Claims allowed under § 507(a)(2) of the Bankruptcy Code. The treatment of all such Administrative Claims is set forth above in Article II, Section A. No other types of priority Claims set forth in § 507 of the Bankruptcy Code are recognized in Chapter 9 cases, and Claims that would constitute priority Claims in a case under another chapter of the Bankruptcy Code are treated in Chapter 9 and in this Amended Plan as General Unsecured Claims.

### D.        Deadline for the Filing and Assertion of Administrative Claims (other than Ordinary Course Administrative Claims) and Professional Claims.

**All requests for payment or any other means of preserving and obtaining payment of Administrative Claims (other than Ordinary Course Administrative Claims) that have not been paid, released, or otherwise settled, and all requests for approval of Professional Claims, must be filed with the Bankruptcy Court and served upon the City no later than thirty (30) days after the date on which the Notice of Effective Date is mailed.** Any request for payment of an Administrative Claim or a Professional Claim that is not timely

filed by such date will be forever barred, and Holders of such Claims shall be barred from asserting such Claims in any manner against the City.

## III.   DESIGNATION OF CLASSES OF CLAIMS.

A.   **Class 1** – Claims of Holders of $12,000,000 City of Central Falls, Rhode Island General Obligation School Bonds, dated July 15, 1999, outstanding in the amount of approximately $6,060,000 as of the date of the filing of this Amended Plan, bearing the CUSIP numbers filed herewith as **Exhibit A**.  (Registered owner for notice purposes as of the date of the filing of this Amended Plan: The Depository Trust Company ("DTC")).  The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to Rhode Island General Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  Subject to an annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursements for 97% of principal and interest on the Bonds.  These Claims will hereinafter be referred to as the "Class 1 $12,000,000 General Obligation School Bonds Claims."  The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.   Note that any reasonable attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses,, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

B.   **Class 2** – Claims of Holders of $8,700,000 City of Central Falls, Rhode Island General Obligation Municipal Facility Bonds, dated October 1, 2007, outstanding in the amount

of approximately $7,680,000 as of the date of the filing of this Amended Plan, bearing the

CUSIP numbers filed herewith as **Exhibit B**.  (Registered owner for notice purposes as the date

of the filing of this Amended Plan: DTC.)  The bonds are general obligations of the City, and all

taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or

amount to pay the Bonds and the interest thereon.  Pursuant to Rhode Island General Laws § 45-

12-1, the Bonds are secured by a Rhode Island statutory lien on property taxes and general fund

revenues.  These Claims will hereinafter be referred to as the "Class 2 $8,700,000 General

Obligation Municipal Facility Bonds Claims."  The City shall honor its legal, equitable and

contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual

rights of the Holders of Claims in this Class shall remain unaltered.  Note that any reasonable

attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable

attorney fees and expenses,, if legally entitled to payment of its reasonable attorney fees and

expenses, and allowed by the Bankruptcy Court shall be treated as a Class 16 General Unsecured

Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

      C.     **Class 3** – Claims of Holders of $1,300,000 City of Central Falls, Rhode Island

General Obligation School Bonds, dated August 15, 2007**,** outstanding in the amount of

approximately $1,115,000 as of the date of the filing of this Amended Plan. (Registered owner

for notice purpose as of the date of the filing this Amended Plan: the Rhode Island Health and

Educational Building Corporation ("RIHEBC").  (These "borrower" bonds are part of a pool

securing publicly offered bonds issued by RIHEBC—DTC is Registered Owner for notice

purposes of bonds issued by RIHEBC).  The borrower bonds are general obligations of the City,

and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate

or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, the

borrower bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  Subject to annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursement for 97% of principal and interest on the borrower bonds which are intercepted by the General Treasurer and paid directly to the RIHEBC bond trustee to pay the borrower bonds.   These Claims will hereinafter be referred to as the "Class 3 $1,300,000 General Obligation School Bonds Claims." The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Note that any reasonable attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

D.    **Class 4** – Claims of Holders of $750,000 City of Central Falls, Rhode Island General Obligation Qualified School Construction Bonds, 2010 Series 1, dated June 29, 2010, outstanding in the amount of approximately $665,000 as of the date of the filing of this Amended Plan.  (Registered owner for notice purpose as of the date of the filing this Amended Plan: RIHEBC.)  The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  Subject to appropriation by the federal government and certain other conditions, the City receives an interest rate subsidy to pay interest on the bonds.  Subject to annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursements for 97% of the principal on the bonds which is

intercepted by the General Treasurer and paid directly to the paying agent to pay the bonds. Pursuant to R.I. Gen. Laws § 45-12-32, the City has directed that additional state aid be intercepted to pay the remaining 3% of principal.  These Claims will hereinafter be referred to as the "Class 4 $750,000 General Obligation School Bonds."   The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Note that any reasonable attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

E.    **Class 5** – Claims of Holders of $4,250,000 Central Falls, Rhode Island General Obligation School Bonds, 2010 Series 2, dated June 30, 2010**,** outstanding in the amount of approximately $3,775,000 as of the date of the filing of this Amended Plan (Registered owner for notice purpose as of the date of the filing this Amended Plan: RIHEBC.)  These "borrower bonds" secure qualified school construction bonds issued by RIHEBC which were privately placed with The Washington Trust Company (the "RIHEBC Bonds").  The borrower bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon. Pursuant to R.I. Gen. Laws § 45-12-1, the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  Subject to an appropriation by the federal government and certain other conditions, RIHEBC receives an interest rate subsidy to pay interest on the RIHEBC bonds which is applied to reduce the payment required from the City on the borrower bonds.  Subject to an annual appropriation by the Rhode Island General Assembly, the City

receives state aid reimbursements for 97% of principal on the borrower bonds, which is intercepted by the General Treasurer and paid directly to the RIHEBC bond trustee to pay the borrower bonds.   Pursuant to R.I. Gen. Laws § 45-12-32, the City has directed that additional state aid be intercepted to pay the remaining 3% of principal on the borrower bonds.   These Claims will hereinafter be referred to as the "Class 5 $4,250,000 General Obligation School Bonds."   The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.   The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.   Note that any reasonable attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

F.   **Class 6** – Claim of lessor of Lease dated April 10, 2009 by and between First Municipal Leasing Corporation and the City (the "Rescue Lease")**,** outstanding in the amount of approximately $83,403 as of the date of the filing of this Amended Plan.   The Rescue Lease is secured by a Horton rescue vehicle Vin No. 1FDFX47R78EE39070.   This Claim will hereinafter be referred to as the "Class 6 April 10, 2009 Lease Claim."   The fiscal year 2012 lease payment is secured by a Rhode Island stationery lien on property taxes and general fund revenues.   The restructured payment schedule under the Rescue Lease is filed herewith as **Exhibit Q**.

G.   **Class 7** – Claims of the police, fire and municipal employee retirees for the loss of a portion of their health insurance benefits as a result of the restructuring of the health insurance benefits to be provided by the City as set forth in **Exhibit C** filed herewith.   The Class 7 Claimants are specifically identified in **Exhibit D** filed herewith.   These Claims will hereinafter be referred to as the "Class 7 Retiree Health Insurance Claims."

H.     **Class 8** - Claims of the police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1% Pension Plan who receive an annual pension benefit of $10,000 or less.  The Class 8 Claimants are specifically identified in **Exhibit F** filed herewith.   These Claims will hereinafter be referred to as the "Class 8 Retiree $10,000 and Under Pension Claims."

I.     **Class 9** – Claims of the police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1% Pension Plan, who, after application of the pension formula set forth in the Central Falls Pension Plan, **Exhibit E**, would receive an annual pension benefit of $10,000.  The Class 9 Claimants are specifically identified in **Exhibit G** filed herewith.  These Claims will hereinafter be referred to as the "Class 9 Retiree Reduced to $10,000 Pension Claims."

J.     **Class 10** - Claims of the police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1% Pension Plan who, after application of the formula set forth in the Central Falls Pension Plan, **Exhibit E**, limited by the 45% circuit breaker, would receive an annual pension benefit of 45% of their prior pension benefit.  The Class 10 Claimants are specifically identified in **Exhibit H** filed herewith. These Claims will hereinafter be referred to as the "Class 10 Retiree 45% Pension Claims."

K.     **Class 11** – Claims of the police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1% Pension Plan, who will receive a reduced benefit under the Central Falls Pension Plan, **Exhibit E** (excluding those Claimants identified as Claimants Class 8 Retiree $10,000 and Under Pension Claims, Class 9 Retiree Reduced to $10,000 Pension Claims and Class 10 Retiree 45% Pension Claims and Class 12 Retiree Accidental Disability Pension Claims).  The Class 11 Claimants are

specifically identified in **Exhibit I** filed herewith.  These Claims will hereinafter be referred to as the "Class 11 Retiree Pension Claims."

L. **Class 12** – Claims of the police, fire and municipal employee retirees, including any spouses or beneficiaries, in the John Hancock Pension Plan and the Central Falls 1% Pension Plan, who retired with accidental disability pensions, who will receive a reduced benefit under the Central Falls Pension Plan, **Exhibit E**.  The Class 12 Claimants are specifically identified in **Exhibit J** filed herewith.  These Claims will hereafter be referred to as the "Class 12 Retiree Accidental Disability Pension Claims."

M. **Class 13** – Claims of municipal employees covered by the Collective Bargaining Agreement between the City and R.I. Council 94, AFSCME, AFL-CIO, Local 1627 ("the Local") for November 23, 2011 to June 30, 2016 who have had their compensation, health benefits, and other benefits reduced under the Amended Plan.  These Claimants are specifically identified in **Exhibit K** filed herewith.  These Claims will hereafter be referred to as the "Class 13 Council 94 Claims."

N. **Class 14** – Claims of municipal employees covered by the Collective Bargaining Agreement between the City and the Fraternal Order of Police, Lodge 2 ("FOP Lodge 2") for November 23, 2011 to June 30, 2016, who have had their compensation, health benefits, retirement benefits and other benefits reduced under the Amended Plan.  These Claimants are specifically identified in **Exhibit L** filed herewith.  These Claims will hereinafter be referred to as the "Class 14 FOP Claims."

O. **Class 15** – Claims of municipal employees covered by the Collective Bargaining Agreement between the City and Local 1485, International Association of Fire Fighters, AFL-CIO ("Local 1485") for November 23, 2011 to June 30, 2016, who have had their compensation,

health benefits, retirement benefits and other benefits reduced under the Amended Plan.  These Claimants are specifically identified in **Exhibit M** filed herewith.  These Claims will hereinafter be referred to as the "Class 15 Local 1485 Claims."

P.      **Class 16** – Claims of the General Unsecured Creditors (excluding Claims of Claimants of Class 17 General Unsecured Convenience Claims).  These Claims will hereinafter be referred to as the "Class 16 General Unsecured Claims."  These Claimants are specifically identified in **Exhibit N** filed herewith.

Q.      **Class 17** – General Unsecured Claims either (i) Allowed in an amount of less than Five Thousand Dollars ($5,000) or (ii) Allowed in an amount greater than $5,000, but which the Holder elects to reduce to Five Thousand Dollars ($5,000) when said Holder submits his/her/its Ballot to the City.  (Said Ballots shall have a section providing for such an election.)  This class is being established for convenience purposes.  These Claims will hereinafter be referred to as the "Class 17 General Unsecured Convenience Claims." These Claimants are specifically identified in **Exhibit O** filed herewith.

R.      **Class 18** – Claims of Property Owners that overpaid their property taxes to the City prior to the Petition Date.  These Claims will hereinafter be referred to as the "Class 18 Property Tax Overpayment Claims."  These Claimants are specifically identified in **Exhibit P** filed herewith.

S.      **Class 19** – Claim of the State of Rhode Island for fees and costs incurred for the proper administration of the Receiver and his staff.  This Claim will hereinafter be referred to as the "Class 19 State of Rhode Island Claim."

## IV.  TREATMENT OF CLAIMS

### A.     Class 1 $12,000,000 General Obligation School Bonds Claims.

#### 1.      Impairment and Voting.

This Class is Unimpaired by the Amended Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject this Amended Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Amended Plan.

#### 2.      Treatment.

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Note that any reasonable attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

### B.     Class 2 $8,700,000 General Obligation Municipal Facility Bonds Claims.

#### 1.      Impairment and Voting.

This Class is Unimpaired by the Amended Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject this Amended Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Amended Plan.

#### 2.      Treatment.

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  The City shall honor its legal, equitable and contractual obligations to

Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Note that any reasonable attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

C.      **Class 3 $1,300,000 General Obligation School Bonds Claims.**

1.      **Impairment and Voting.**

This Class is Unimpaired by the Amended Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject this Amended Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Amended Plan.

2.      **Treatment.**

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Note that any reasonable attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

D.      **Class 4 $750,000 General Obligation School Bonds.**

1.      **Impairment and Voting.**

This Class is Unimpaired by the Amended Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this

Class are not entitled to vote to accept or reject this Amended Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Amended Plan.

### 2. **Treatment.**

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Note that any reasonable attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

### E. **Class 5 $4,250,000 General Obligation School Bonds.**

### 1. **Impairment and Voting.**

This Class is Unimpaired by the Amended Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject this Amended Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Amended Plan.

### 2. **Treatment.**

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Note that any reasonable attorney fees and costs

incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

**F.      Class 6 April 10, 2009 Lease Claim.**

**1.      Impairment and Voting**

This Class is Impaired by this Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holder of the Claim.  Accordingly, the Holder of the Claim in this Class is entitled to vote to accept or reject this Amended Plan

**2.      Treatment.**

On the Effective Date, the term of the Rescue Lease shall be extended by two (2) years, the annual principal payments shall be reduced by fifty percent (50%), and the annual interest rate shall be reduced by one percent (1%).  The new payment schedule shall be as set forth in **Exhibit Q** filed herewith.  All other terms and conditions of the Rescue Lease shall remain unaltered and in full force and effect.  On or prior to the Effective Date, at either party's written election, the parties shall enter into a modified lease agreement reflecting these modifications.

**G.      Class 7 Retiree Health Insurance Claims.**

**1.      Impairment and Voting**

This Class is Impaired by this Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject this Amended Plan.

The majority of the Claimants in this Class are Participating Retirees under the Settlement and Release Agreement with the City, approved by Order of the Court on January 9, 2012.  Pursuant to the Terms of the Settlement and Release Agreement, the Participating Retirees

have agreed to vote to accept the Amended Plan, provided its terms comport with the terms of the Settlement and Release Agreement.

### 2.      **Treatment.**

The Holders of these Claims will have their health care benefits modified in accordance with the restructured health benefits schedule set forth on **Exhibit C**, annexed hereto, and will be required to pay 20% co-share premium payments.

### H.      **Class 8 Retiree $10,000 and Under Pension Claims.**

#### 1.      **Impairment and Voting**

This Class is Unimpaired by the Amended Plan.   The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.   Holders of Claims in this Class are not entitled to vote to accept or reject this Amended Plan.   Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Amended Plan.

### 2.      **Treatment.**

The Holders of these Claims will not have their benefits reduced under the Central Falls Pension Plan as set forth in **Exhibit E**, annexed hereto.  The City has determined, as a matter of governmental policy, that because the annual pension benefits in this group are relatively low, and the average age of the individuals in this group is older than the average age of the individuals in the other retiree classes, there is a smaller unliquidated benefit and therefore a lesser impact on the City and the Amended Plan. Moreover, the City has further determined, as a matter of governmental policy, that because these individuals have less ability to adjust and absorb a reduction in benefits, the City will not impact its most vulnerable retirees by reducing their benefits.

I.     **Class 9 Retiree Reduced to $10,000 Pension Claims.**

1.     **Impairment and Voting**

This Class is Impaired by this Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject this Amended Plan.

The majority of the Claimants in this Class are Participating Retirees under the Settlement and Release Agreement with the City, approved by Order of the Court on January 9, 2012.  Pursuant to the Terms of the Settlement and Release Agreement, the Participating Retirees have agreed to vote to accept the Amended Plan, provided its terms comport with the terms of the Settlement and Release Agreement.

2.     **Treatment.**

The Holders of these Claims will have their annual pension benefits reduced to $10,000 under the Central Falls Pension Plan as set forth in **Exhibit E**.  Although the strict application of the new pension plan formula would reduce these individuals' benefits to less than $10,000 annually, the City has determined, as a matter of governmental policy, that it will not reduce benefits below this $10,000 threshold.  The City determined that because the annual pension benefits in this group are relatively low, there is a smaller unliquidated benefit and therefore a lesser impact on the City and the Amended Plan.  Moreover, the City has further determined, as a matter of governmental policy, that it would be unfair to reduce benefits below the $10,000 threshold.

J.     **Class 10 Retiree 45% Pension Claims.**

1.     **Impairment and Voting**

This Class is Impaired by this Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject this Amended Plan.

The majority of the Claimants in this Class are Participating Retirees under the Settlement and Release Agreement with the City, approved by Order of the Court on January 9, 2012.  Pursuant to the Terms of the Settlement and Release Agreement, the Participating Retirees have agreed to vote to accept the Amended Plan, provided its terms comport with the terms of the Settlement and Release Agreement.

**2.**     **Treatment.**

The Holders of these Claims will have their annual pension benefits reduced by fifty-five percent (55%) under the Central Falls Pension Plan as set forth in **Exhibit E**.  Although strict application of the new pension plan formula would reduce these individuals' benefits to an amount which would be less than forty-five percent (45%) of the amount of their pre-petition pension benefit annually, the City has determined, as a matter of governmental policy, that it will not reduce benefits below this 45% threshold.  The City has further determined, as a matter of governmental policy that it would be unfair to reduce benefits below 45% of pre-petition pension benefits, and therefore, the City would lessen the impact of the plan on this group of retirees.

**K.**     **Class 11 Retiree Pension Claims.**

**1.**     **Impairment and Voting**

This Class is Impaired by this Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject this Amended Plan.

The majority of the Claimants in this Class are Participating Retirees under the Settlement and Release Agreement with the City, approved by Order of the Court on January 9,

2012.  Pursuant to the Terms of the Settlement and Release Agreement, the Participating Retirees have agreed to vote to accept the Amended Plan, provided its terms comport with the terms of the Settlement and Release Agreement.

### 2. Treatment.

The Holders of these Claims will have their benefits reduced in accordance with the formula set forth under the Central Falls Pension Plan.  All reductions in this Class shall be less than a 55% reduction of the Holder's prior annual pension benefits.  See **Exhibit E**.

### L. Class 12 Retiree Accidental Disability Pension Claims

#### 1. Impairment and Voting

This Class is Impaired by this Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holder of these Claims.  Accordingly, the Holders of these Claims are entitled to vote to accept or reject the Amended Plan.

The majority of the Claimants in this Class are Participating Retirees under the Settlement and Release Agreement with the City, approved by Order of the Court on January 9, 2012.  Pursuant to the Terms of the Settlement and Release Agreement, the Participating Retirees have agreed to vote to accept the Amended Plan, provided its terms comport with the terms of the Settlement and Release Agreement.

#### 2. Treatment

The Holders of these Claims will have their accidental disability retirement benefits modified in accordance with the restructured benefits schedule set forth on **Exhibit E** filed herewith.  Specifically, these Claimants will be paid forty-five percent (45%) of their salary at the time of retirement, but will not have their benefits reduced by an Early Retirement Factor.  In

addition, these Claimants will receive up to two percent (2%) cost of living adjustment (COLA) to be applied prospectively which will not be compounded.

**M.      Class 13 Council 94 Claims**

      1.      **Impairment and Voting**

This Class is Impaired by the Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject this Amended Plan.

The Holders of these Claims had certain compensation and benefits reduced in accordance with the Pendency Plan instituted by the Receiver by Memorandum to "All Employees of the City of Central Falls" dated August 19, 2011, effective August 1, 2011.  These Claims were settled by Memorandum of Agreement entered into between the City and the Local dated November 23, 2011 and approved by Order of this Court entered January 9, 2012.

      2.      **Treatment**

The Holders of these Claims will have their compensation, health benefits and other benefits reduced under the Amended Plan.

**N.      Class 14 FOP Claims**

      1.      **Impairment and Voting**

This Class is Impaired by the Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims are entitled to vote to accept or reject the Amended Plan.

The Holders of these Claims had certain compensation and benefits reduced in accordance with the Pendency Plan instituted by the Receiver by Memorandum to "All Employees of the City of Central Falls" dated August 19, 2011, effective August 1, 2011.  These

claims were settled by Memorandum of Agreement entered into between the City and FOP Lodge 2 dated November 23, 2011 and approved by Order of this Court entered January 9, 2012.

2. **Treatment**

The Holders of these Claims will have their compensation, health benefits, retirement benefits and other benefits reduced under the Amended Plan.

**O.     Class 15 Local 1485 Claims**

1. **Impairment and Voting**

This Claim is Impaired by the Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims are entitled to vote to accept or reject the Amended Plan.

The Holders of these Claims had certain compensation and benefits reduced in accordance with the Pendency Plan instituted by the Receiver by Memorandum to "All Employees of the City of Central Falls" dated August 19, 2011, effective August 1, 2011.  These Claims were settled by Memorandum of Agreement entered into between the City and Local 1485 dated December 8, 2011 and approved by Order of this Court entered January 9, 2012.

2. **Treatment**

The Holders of these Claims will have their compensation, health benefits, retirement benefits and other benefits reduced under the Amended Plan.

**P.     Class 16 General Unsecured Claims.**

1. **Impairment and Voting**

This Class is Impaired by this Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject this Amended Plan

### 2.      Treatment

The Holders of these Claims shall share *pro rata* in the balance of the $600,000 budget for Allowed General Unsecured after full payment of the distribution to Class 17 Convenience General Unsecured Claims.  The first distribution to the Holders of these Claims shall be made on or prior to June 30, 2013 from the balance of the General Unsecured Claims Pool after distributions are made to or reserves are created for the Holders of the Class 17 Convenience General Unsecured Claims and then the Holders of these Allowed Claims shall share *pro rata* on or prior to June 30, 2014, June 30, 2015, June 30, 2016 and June 30, 2017 from the General Unsecured Claims Pool.  Notwithstanding anything set forth herein to the contrary, the total distribution to the Holders of these Claims will not exceed forty-five percent (45%) of the amount of their Allowed Claim.  Any monies remaining in the General Unsecured Claims Pool after all distributions have been made shall be deposited in the City's Capital Fund.

### Q.      Class 17 Convenience General Unsecured Claims.

### 1.      Impairment and Voting

This Class is impaired by this Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holder of the Claim.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject this Amended Plan

### 2.      Treatment

The Holders of these Allowed Claims shall receive a distribution of thirty-five percent (35%) of the amount of their Allowed Claim from the General Unsecured Claims Pool on or prior to June 30, 2013.

### R.      Class 18 Property Tax Overpayment Claims

### 1.      Impairment and Voting

This Class is Unimpaired by the Amended Plan.  The legal, equitable and/or contractual rights of the Holder of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject this Amended Plan.  Under Bankruptcy Code §1126(f), this Class is conclusively presumed to have accepted the Amended Plan.

### 2.   Treatment

The City shall honor its legal, equitable and/or contractual obligations to Holders of Claims in this Class.  The City has determined, as a matter of governmental policy, that because these Claimants overpaid property taxes to the City in error, they are entitled to be fully refunded.  The City has determined that for administrative conveniences the overpayments will be credited to each Claimant's fiscal year 2013 property tax bill.

### S.   Class 19 State of Rhode Island Claim.

### 1.   Impairment and Voting

This Class is Impaired by this Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holder of the Claim.  Accordingly, the Holder of the Claim in this Class is entitled to vote to accept or reject this Amended Plan.

### 2.   Treatment

Under Rhode Island Gen. Laws  § 45-9-3(f), the City is required to pay the amounts sufficient for the proper administration of the Receiver and his staff or the State may deduct those funds from the City's distribution of state aid.  Thus, the State could insist on full payment of the Class 19 State of Rhode Island Claim in the current fiscal year.  However, in order that the City be able to achieve balanced budgets during the term of the Amended Plan, the State has agreed to limit its distribution during the Amended Plan term to (i) the appropriations provided in the Six-Year Financial Projection, plus (ii) all amounts recovered by the Claim Recovery Trustee pursuant to the terms set forth in the following paragraph, net of the Claim

Recovery Trustee's fees and costs.  The balance of Class 19 State of Rhode Island Claim shall be paid after the Amended Plan term as set forth in the Six-Year Financial Projection.

After a Final Order enters in *Flanders vs. Moreau* et al., P.B. No 10-5615, against elected officials of the City, Allan M. Shine shall be deemed appointed as "Claims Recovery Trustee" with the duty to make good effort to attempt to recover the maximum amount reasonably attainable recovery from the judgment debtors.  The Claims Recovery Trustee will be compensated at the rate of twenty percent (20%) of any such recovery, plus his reasonable out of pocket expenses, and may immediately pay himself said amount from any recovery, subject to final review and approval by the Rhode Island Superior Court.  The Claims Recovery Trustee may seek instructions from the Rhode Island Superior Court regarding any issue relative to his trusteeship.  In the event that the Claims Recovery Trustee resigns or is no longer able to serve, the Rhode Island Superior Court may appoint a successor Claims Recovery Trustee.  Within fourteen (14) days of any recovery obtained by the Claims Recovery Trustee, he shall pay said amount to the State, net of his fees and expenses as aforesaid, and said payment shall act as a credit against the balance owing on the Class 19 State of Rhode Island Claims.  When the Claims Recovery Trustee determines that no further amounts can be reasonably attained from the judgment debtors, he shall file a final report with the Rhode Island Superior Court and the Bankruptcy Court.

## V.   ACCEPTANCE OR REJECTION; CRAM DOWN.

### A.   Voting of Claims.

Each Holder of an Allowed Claim classified into Classes 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 19 shall be entitled to vote each such Claim to accept or reject this Amended Plan.

With respect to any Impaired Class of Claims that fails to accept this Amended Plan, if any, the City, as proponent of this Amended Plan, requests that the Bankruptcy Court nonetheless confirm this Amended Plan pursuant to the so-called "cram down" powers set forth in Bankruptcy Code § 1129(b).

## VI.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### A.    Assumption of Executory Contracts and Unexpired Leases.

As to any executory contract or unexpired lease that the City elects to assume or reject, the City shall file an "Assumption/Rejection Motion" within 60 days from the Effective Date, which, if granted, shall cause the City to assume such contracts and leases pursuant to order of the Bankruptcy Court.

### B.    Cure Payments.

After the provision of notice and the opportunity for a hearing on the Assumption/Rejection Motion, in accord with the Bankruptcy Rules, the Bankruptcy Court shall resolve all disputes regarding: (a) the amount of any cure payment to be made in connection with the assumption of any contract or lease; (b) the ability of the City to provide "adequate assurance of future performance" within the meaning of § 365 of the Bankruptcy Code under the contract or lease to be assumed; and (c) any other matter pertaining to such assumption and assignment. Any party to an executory contract or unexpired lease that is included in the Assumption/Rejection Motion that asserts that any payment or other performance is due as a condition to the proposed assumption shall file with the Bankruptcy Court and serve upon the City a written statement and accompanying declaration in support thereof, specifying the basis for its Claim within such deadline and in the manner established for filing objections as shall be set forth in the Assumption/Rejection Motion. The failure to timely file and serve such a statement in accordance with the instructions set forth in the Assumption/Rejection Motion shall be deemed to be a waiver of any and all objections to the proposed assumption and any Claim for cure amounts of the agreement at issue.  Any executory contract or unexpired Lease to which the City does not seek to assume or reject in its Assumption/Rejection Motion shall be deemed rejected.

### C.    Claims Arising From Rejection.

Proofs of Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court and served on the City no later than thirty (30) days after the date on which notice of entry of the order approving the rejection is mailed. Any Claim for which a proof of claim is not filed and served within such time will be forever barred

and shall not be enforceable against the City or its assets, properties, or interests in property. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be classified as Class 16 General Unsecured Claims or Class 17 General Unsecured Convenience Claims, as the case may be, and treated accordingly.

## VII. IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS AMENDED PLAN.

Following the Effective Date, the City will continue to operate pursuant to the Central Falls Charter, the Constitution of the State of Rhode Island and other applicable laws. While the City has submitted a Six-Year Financial Projection with its Amended Disclosure Statement to allocate the City's unrestricted resources, annexed as **Exhibit C** to Amended Disclosure Statement (the "Six-Year Financial Projection") the City acknowledges and understands that financial plans and budgets are not fixed in stone, and that on-going adjustments will have to be made during the course of the six-year plan duration in order to enable the City to adjust to changing economic, operational needs and other conditions and contingencies. However, this Amended Plan and the City's Six-Year Financial Projection represent the City's commitment to the binding treatment of the Holders of Claims in the various Classes as enumerated in this Amended Plan.

In the event that the City experiences an operating surplus at the end of a fiscal year, any surplus in excess of fifty thousand ($50,000) dollars will be deposited into the City's Capital Fund.

### A. Claims and Causes of Action.

All of the City's claims, causes of action, rights of recovery, rights of offset, recoupment rights to refunds and similar rights shall be retained by the City. The failure to list in the Amended Disclosure Statement any potential or existing Right of Action retained by the City is not intended to and shall not limit the rights of the City to pursue any such action. Unless a Right of Action is expressly waived, relinquished, released, compromised or settled in this Amended Plan, the City expressly reserves all Rights of Action for later adjudication and, as a result, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to

such Rights of Action upon or after the confirmation or consummation of this Amended Plan or the Effective Date. In addition, the City expressly reserves the right to pursue or adopt against any other entity any claims alleged in any lawsuit in which the City is a defendant or an interested party.

**B.**     **Compliance with Amended Plan Terms by Elected Officials or Fiduciary with the Power of Elected Officials.**

**1.**     **City's Budget Must Remain in Balance during the Plan Term.**

This Amended Plan is a contract between the City, on the one hand, and its creditors, including the State of Rhode Island, and its other major stakeholders, including its labor unions and its retirees, on the other hand.  Although the City's elected officials, or a fiduciary acting with the powers of elected officials under Act Relating to Cities and Towns – Providing Financial Stability, Rhode Island General Laws § 45-9-1 *et seq.*, (collectively, the "Elected Officials") shall continue to make policy decisions during the Amended Plan term, they may only do so to the extent that such policy decisions do not make the City's fiscal budgets unbalanced.  So, for example, if in a given year, the City is required to pay more than it has been budgeted for snow removal, or if the City replaces an employee creating an obligation to pay unemployment benefits, the City must find and demonstrate either additional revenues or reductions in expenditures to keep the City's budget in balance.  It is the City's intention herein, to establish reporting requirements for the City so that during the Amended Plan term, creditors, including the State of Rhode Island, and the City's other major stakeholders, including its labor unions and its retirees, will have adequate and timely financial information necessary to monitor whether the City remains in balance and whether the City is complying herewith terms.  It is also the City's intention herein to grant to creditors, including the State of Rhode Island, and the City's other major stakeholders, including its labor unions and its retirees, standing to seek specific enforcement from the Bankruptcy Court to comply herewith terms if the City takes any action(s) which makes the Amended Plan not in Material Conformity herewith terms.

**2.**     **Reporting Requirements.**

Within thirty (30) days after the City enacts a budget or an amended budget, each person acting with the powers of an elected official (i.e. the Mayor and each City Council member or a state-appointed fiduciary, as the case may be) shall be required to sign an "Annual Attestation Form," in the form set forth as **Exhibit S** annexed hereto, attesting, under

oath, that to the best of his or her knowledge and belief, the budget is in "Material Conformity" with the terms of the Six-Year Financial Projection or to the extent that the budget is not in Material Conformity with the Six-Year Financial Projection, to identify the specific line items in the budget that are not in Material Conformity with the Six-Year Financial Projection. "Material Conformity" shall mean that the budget is consistent with the Six-Year Financial Projection and/or that any increase in expenditures in any line item is offset by increases in revenues based upon additional revenues and/or decreases in expenditures. Any assumptions regarding any such additional revenues and/or decreases in expenditures must be reasonable. Each Annual Attestation Form shall be electronically filed with the Bankruptcy Court and a copy shall be sent by first class mail to the Rhode Island Director of Revenue at Rosemary Booth Gallogly, Director of Revenue, State of Rhode Island, Department of Revenue, One Capitol Hill, Providence, Rhode Island 02908.

Within fourteen (14) days after the Elected Officials file each Annual Attestation Form, the Administrative and Finance Officer appointed under R.I. Gen. Laws § 45-9-10 shall file an "Annual Administrative and Finance Officer Statement" in the form set forth as **Exhibit S** annexed hereto stating that he or she agrees or disagrees with the attestations of the Elected Officials. If the Administrative and Finance Officer disagrees with the attestations of the Elected Official, he or she shall explain why. Each Annual Administrative and Finance Officer Statement shall be filed with the Bankruptcy Court and a copy shall be sent by first class mail to the Rhode Island Director of Revenue at Rosemary Booth Gallogly, Director of Revenue, State of Rhode Island, Department of Revenue, One Capitol Hill, Providence, Rhode Island 02908.

Within thirty (30) days after the end of each fiscal quarter, the Elected Officials shall be required to sign a "Quarterly Attestation Form" in the form set forth as **Exhibit S** annexed hereto, stating under oath whether or not actual performance by the City during the prior quarter and year-to-date remains in Material Conformity with the terms of the Six-Year Financial Projection. To the extent that an Elected Officials states that actual performance by the City during the prior quarter and year-to-date does not remain in Material Conformity with the terms of the Six-Year Financial Projection, the Elected Official shall identify the specific line items that do not remain in Material Conformity with the Six-Year Financial Projection. Each Quarterly Attestation Form shall be electronically filed with the Bankruptcy Court and a copy shall be sent by first class mail to the Rhode Island Director of Revenue at Rosemary Booth

Gallogly, Director of Revenue, State of Rhode Island, Department of Revenue, One Capitol Hill, Providence, Rhode Island 02908.

Within fourteen (14) days after the Elected Officials file each Quarterly Attestation Form, the Administrative and Finance Officer shall file a "Quarterly Administrative and Finance Officer Statement" in the form set forth as **Exhibit S** annexed hereto stating that he or she agrees or disagrees with the attestations of the Elected Officials.  If the Administrative and Finance Officer disagrees with the attestations of the Elected Official, he or she shall explain why.  Each Quarterly Administrative and Finance Officer Statement shall be filed with the Bankruptcy Court and a copy shall be sent by first class mail to the Rhode Island Director of Revenue at Rosemary Booth Gallogly, Director of Revenue, State of Rhode Island, Department of Revenue, One Capitol Hill, Providence, Rhode Island 02908.

      3.      **Enforcement.**

Any creditors or stakeholders of the City under the Amended Plan, including the State of Rhode Island, the City's labor unions and the retirees, shall have power to seek specific enforcement from the Bankruptcy Court to require the City to comply herewith terms and/or to require the City to make changes necessary for the City to be in Material Conformity with the Six-Year Financial Projection.

      C.      **Termination of Receiver**.

In the event the Rhode Island Director of Revenue terminates the Receiver in conformity with the terms of <u>Act Relating to Cities and Towns – Providing Financial Stability</u>, Rhode Island General Laws § 45-9-1 *et seq*., the rights and obligations of the Receiver under the Amended Plan and the Confirmation Order shall transfer to the appropriate Central Falls officials as authorized under Rhode Island General Laws, the Central Falls Charter and Central Falls ordinances.

## VIII.   DISTRIBUTIONS

      A.      **Delivery of Distributions.**

All distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the Schedule of Claims filed with Bankruptcy Court, as amended, unless the City has been notified by such Holder in a writing that contains an address for such

Holder different from the address reflected said Schedule of Claims.

### B.     Undeliverable Distributions.

#### 1.     Holding of Undeliverable Distributions.

If any distribution to any Holders is returned to the City as undeliverable, no further distributions shall be made to such Holder unless and until the City is notified in writing of such Holder's then-current address. Unless and until the City is so notified, such distribution shall be deemed to be "Unclaimed Property" and shall be dealt with in accordance with the following subsection.

#### 2.     Unclaimed Property.

If any entity entitled to receive distributions pursuant to this Amended Plan does not present itself on the Effective Date or on such other date on which such entity becomes eligible for distribution, such distributions shall be deemed to be "Unclaimed Property." Unclaimed Property shall be set aside and held in a segregated account to be maintained by the City pursuant to the terms of this Amended Plan.

#### 3.     Notification and Forfeiture of Unclaimed Property.

No later than June 30, 2013 the City shall file with the Bankruptcy Court a list of Unclaimed Property, together with a schedule that identifies the name and last-known address of Holders of the Unclaimed Property; the City otherwise shall not be required to attempt to locate any such entity. On January 1, 2014, all remaining Unclaimed Property and accrued interest or dividends earned thereon shall be remitted to and vest in the City, except as may be provided under the laws of the State of Rhode Island.

### C.     Distributions of Cash.

Any payment of Cash to be made by the City pursuant to this Amended Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole option of the City.

### D.     Timeliness of Payments.

Any payments or distributions to be made pursuant to this Amended Plan shall be deemed to be timely made if made within fourteen (14) days after the dates specified in this Amended Plan. Whenever any distribution to be made under this Amended Plan shall be due on a day that is a Saturday, Sunday, or legal holiday, such distribution instead shall be made,

without interest, on the immediately succeeding day that is not a Saturday, Sunday, or legal holiday, but shall be deemed to have been timely made on the date due.

### E.      Compliance With Tax Requirements.

The City shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Amended Plan shall be subject to such withholding and reporting requirements. In connection with each distribution with respect to which the filing of an information return (such as Internal Revenue Service Forms W-2, 1099 or 1042) or withholding is required, the City shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all monies so withheld to the extent required by law. With respect to any entity from whom a tax identification number, certified tax identification number, or other tax information is required by law to avoid withholding has not been received by the City, the City at its sole option, may withhold the amount required and distribute the balance to such entity or decline to make such distribution until the information is received.

### F.      Time Bar to Cash Payments.

Checks issued by the City on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the City by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the second anniversary of the Effective Date. After such date, all Claims in respect of voided checks shall be discharged and forever barred and the City shall retain all monies related thereto.

### G.      No Distributions on Account of Disputed Claims.

Notwithstanding anything to the contrary in this Amended Plan, and consistent with Article IX, no distributions shall be made on account of any part of any Disputed Claim until such Claim becomes Allowed (and then only to the extent so Allowed). Distributions made after the Effective Date in respect of Claims that were not Allowed as of the Effective

Date (but which later became Allowed) shall be deemed to have been made as of the Effective Date.

### H.   No Postpetition Accrual.

Except as specifically provided in this Amended Plan or Allowed by order of the Bankruptcy Court, the City shall not be required to pay to any Holder of a Claim any interest, penalty or late charge accruing with respect to such Claim on or after the Petition Date.

## IX.   DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; PROSECUTION OF OBJECTIONS TO DISPUTED CLAIMS.

### A.   Claims Objection Deadline; Prosecution of Objections.

The City shall have the right to object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability or allowance is disputed in whole or in part. Unless otherwise ordered by the Bankruptcy Court, the City shall file and serve any such objections to Claims by the earlier of (i) the date such distribution would otherwise be due or (ii) not later than one hundred and eighty (180) days after the Effective Date (or, in the case of Claims lawfully filed after the Effective Date, by not later than one hundred and eighty (180) days after the date of filing of such Claims).

### B.   Reserves, Payments, and Distributions with Respect to Disputed Claims.

Prior to making *a pro rata* distribution to Holders of Class 16 General Unsecured Claims or Class 17 General Unsecured Convenience Claims, the City shall reserve from the amount of the distribution a reserve for such Class 16 General Unsecured Claims or Class 17 General Unsecured Convenience Claims to the extent that such Claims are Disputed Claims. The amount reserved for each such Claim shall be on the same *pro rata* basis as the distribution to Allowed Class 16 General Unsecured Claims and Allowed Class 17 General Unsecured Convenience Claims, as the case may be, based upon the lesser of (a) the amount asserted by the Holder of the Claim to be owing, and (b) such amount as the Bankruptcy Court may estimate for all distribution purposes upon motion of the City, which motion may be made initially or from time to time.

At such time as a Disputed Claim becomes an Allowed Claim, in whole or in part,

the City or its agent shall distribute to the Holder thereof the distributions, if any, to which such Holder is then entitled under this Amended Plan. Such distributions, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order (or such other date as the Claim becomes an Allowed Claim), but in no event more than sixty (60) days thereafter. Unless otherwise specifically provided in this Amended Plan or Allowed by order of the Bankruptcy Court, no interest shall be paid on Disputed Claims that later become Allowed Claims.

To the extend a Disputed Claim is disallowed, the amounts held in escrow for that Disputed Claim shall be removed from escrow and re-allocated to the remaining Allowed Claims and Disputed Claims for pro rata distribution or escrow on the next scheduled payment date.

## X.    **EFFECT OF CONFIRMATION**

### A.    **Discharge of the City.**

Pursuant to § 944 of the Bankruptcy Code, upon the Effective Date, the City shall be discharged from all debts (as defined in the Bankruptcy Code) of the City and any claims against the City other than (a) any debt specifically and expressly excepted from discharge by this Amended Plan or the Confirmation Order, or (b) any debt owed to an entity that, before the Confirmation Date, had neither constructive notice, notice nor actual knowledge of the Chapter 9 Case.

The rights afforded in this Amended Plan and the treatment of all Holders of Claims, be they Claims Impaired or Unimpaired under this Amended Plan, shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever arising on or before the Effective Date, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, whether against the City or any of its properties, assets or interests in property. Except as otherwise provided herein, upon the Effective Date, all Claims against the City that arose prior to the Confirmation Date ("Pre-Effective Date Claims") shall be deemed to be satisfied, discharged and released in full, be they Impaired or Unimpaired under this Amended Plan.

B.       **Injunction.**

Except as otherwise expressly provided in this Amended Plan, all entities who have held, hold or may hold pre-Effective Date Claims shall be permanently enjoined from and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such pre-Effective Date Claim against the City or its property; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the City or its property with respect to such pre-Effective Date Claims; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against the City or its property; and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the City with respect to any such pre-Effective Date Claim, except as otherwise permitted by § 553 of the Bankruptcy Code.

C.       **Term of Existing Injunctions or Stays**.

All injunctions or stays provided for in the Chapter 9 Case pursuant to §§ 105, 362, or 922 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

XI.     **RETENTION OF AND CONSENT TO JURISDICTION**.

Following the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code and relating to the City, arising in or related to the Chapter 9 Case or this Amended Plan, and otherwise, for the following:

1.       To determine any request for specific performance against the City asserted under the terms of Articles VII above or under any other term of the Amended Plan asserted by any creditor, including the State of Rhode Island, and any other stakeholder including any municipal union or retiree.

2.       To resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the City is a party or with respect to which the City may be liable, and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

3.       To enter such orders as may be necessary or appropriate to implement or

consummate the provisions of this Amended Plan, and all other contracts, instruments, releases, and other agreements or documents related to this Amended Plan;

4.      To determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Amended Plan, may be instituted by the City after the Effective Date or that are instituted by any Holder of a Claim before or after the Effective Date concerning any matter based upon, arising out of, or relating to the Chapter 9 Case, whether or not such action initially is filed in the Bankruptcy Court or any other court;

5.      To ensure that distributions to Holders of Allowed Claims are accomplished as provided herein;

6.      To hear and determine any objections to Claims or to proofs of claim filed, both before and after the Effective Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

7.      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

8.      To issue such orders in aid of execution of this Amended Plan, to the extent authorized by § 1142(b) of the Bankruptcy Code;

9.      To consider any modifications of this Amended Plan, to cure any defects or omissions, or reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order;

10.     To hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

11.     To hear and determine all disputes or controversies arising in connection with or relating to this Amended Plan or the Confirmation Order or the interpretation, implementation, or enforcement of this Amended Plan or the Confirmation Order or the extent of any entity's obligations incurred in connection with or released under this Amended Plan or the Confirmation Order;

12.     To issue injunctions, enter and implement other orders or take such

other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of this Amended Plan;

13.    To determine any other matters that may arise in connection with or are related to this Amended Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document related to this Amended Plan or the Disclosure Statement;

14.    To hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

15.    To enter a final decree closing the Chapter 9 Case.

## XII.   **CONDITIONS PRECEDENT.**

The entry of the Confirmation Order in form and substance satisfactory to the City is a condition precedent to confirmation of this Amended Plan and the establishment of an Effective Date.  The "effective date of the plan," as used in § 1129 of the Bankruptcy Code, shall not occur, and this Amended Plan shall be of no force and effect, until the said condition precedent is satisfied.

## XIII.   **MISCELLANEOUS PROVISIONS.**

### A.    **Severability.**

If, prior to the Confirmation Date, any term or provisions of this Amended Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, with the consent of the City, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Amended Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Amended Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**B.**   **Governing Law.**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that an Exhibit hereto or Amended Plan Document provides otherwise, the rights, duties and obligations arising under this Amended Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Rhode Island, without giving effect to principles of conflicts of laws.

**C.**   **Effectuating Documents and Further Transactions.**

Each of the Receiver and employees of the City is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and provisions of this Amended Plan.

**D.**   **Notice of Effective Date.**

On or before ten (10) days after occurrence of the Effective Date, the City or its agent shall mail or cause to be mailed to all Holders of Claims a Notice that informs such Holders of: (a) entry of the Confirmation Order; (b) the occurrence of the Effective Date; (c) the assumption and rejection of the City's executory contracts and unexpired leases pursuant to this Amended Plan, as well as the deadline for the filing of Claims arising from such rejection; (d) the deadline established under this Amended Plan for the filing of Administrative Claims; (e) the procedures for changing an address of record pursuant to Article VII of the Amended Plan and such other matters as the City deems to be appropriate.

DATED: June 15, 2012

CITY OF CENTRAL FALLS

By: /s/ John F. McJennett III, as and only as
Receiver of the City of Central Falls, and
not individually

Submitted by:

CITY OF CENTRAL FALLS


/s/ Theodore Orson
Theodore Orson, Esq. (No. 3871)
Christine Curley, Esq. (No. 4529)
Orson and Brusini Ltd.
144 Wayland Avenue
Providence, RI 02906
(401) 861-0344
torson@orsonandbrusini.com