**UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **In re:** | **Case No. 11-13105** |
| | **Chapter 9** |
| **CITY OF CENTRAL FALLS RHODE ISLAND** | **FOURTH AMENDED DISCLOSURE STATEMENT WITH RESPECT TO THE FOURTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF CENTRAL FALLS** |
| | **Dated:  July 27, 2012** |

**NOTE THAT THE EXHIBITS TO THE FOURTH AMENDED DISCLOSURE STATEMENT TO FOURTH AMENDED PLAN OF DEBT ADJUSTMENT ARE POSTED ON THE CITY'S WEBSITE AT: www.centralfallsri.us**

## TABLE OF CONTENTS

SUMMARY……………………………………………………………….. 1

I.      INTRODUCTION.........................................................................................7

    A.      The Purpose of This Amended Disclosure Statement ...............................9

    B.      Summary of Entities Entitled to Vote on the Amended Plan and
        of Certain Requirements Necessary for Confirmation of the
        Amended Plan.........................................................................................10

    C.      Voting Procedures, Balloting Deadline, Confirmation Hearing, and
        Other Important Dates, Deadlines, and Procedures. ..................................11

    D.      Important Notices and Cautionary Statements ...........................................13

    E.      Additional Information ..............................................................................14

II.     BACKGROUND INFORMATION.................................................................15

III.    THE CITY'S LIABILITIES AND ASSETS ....................................................18

    A.      Liabilities  ................................................................................................18

    B.      Assets .......................................................................................................18

IV.     SUMMARY OF THE  AMENDED PLAN OF DEBT ADJUSTMENT .............19

    A.      Classification and Treatment of Claims.....................................................19

    B.      Treatment of Executory Contracts and Unexpired Leases ........................43

    C.      Means for Execution and Implementation of the Amended Plan...............47

    D.      Distributions.............................................................................................52

    E.      Bar Date for Attorney Fees………………………………………… 54

    F.      Incorporation of Agreements and Documents…………………………... 54

    G.      Disputed Claims.......................................................................................55

    H.      Continuing Jurisdiction of the Bankruptcy Court......................................56

V.      CONFIRMATION AND EFFECTIVENESS OF THE AMENDED PLAN .......57

    A.      Voting and Right to Be Heard at Confirmation .........................................57

    B.      The "Best Interests" Test ..........................................................................59

    C.      Feasibility.................................................................................................60

    D.      Cram Down ...............................................................................................60

    E.      Disclosure of City's Professional Fees…………………………… 62

    G.      Conditions to the Occurrence of the Effective Date ..................................62

    H.      Effect of Confirmation ..............................................................................63

VI.     CERTAIN RISK FACTORS TO BE CONSIDERED ...................................... 64

VII.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES .............................. 65

VIII.   RECOMMENDATION AND CONCLUSION .................................................. 66

## SUMMARY

The following pages summarize certain important information set forth elsewhere in this Disclosure Statement.  Capitalized terms are defined in the text of this Fourth Amended Disclosure Statement and in the Fourth Amended Plan, and any capitalized term used but not defined herein shall have the meaning ascribed to it in the Fourth Amended Plan.

The Fourth Amended Disclosure Statement contains important information that is not summarized in this Summary and that may influence your decision regarding whether to accept or reject the Fourth Amended Plan or otherwise affect your rights.  Please do not rely on this Summary standing alone, and please closely read this entire document and the accompanying materials.

The "Fourth Amended Plan For The Adjustment Of Debts Of the City of Central Falls, Rhode Island, dated July 27, 2012 (amending plan filed on June 15, 2012, July 10, 2012 and July 23, 2012)" (the "Fourth Amended Plan"), proposed by the City of Central Falls, Rhode Island (the "City"), if confirmed, will restructure the City's debt and its operations and put the City on a path towards fiscal stability.  The Fourth Amended Plan also addresses and resolves (1) the City's obligations to current and former employees, including those relating to the collective bargaining agreements between the City and its labor organizations; (2) the City's obligation to pay pension benefits and to pay for other post-employment benefits to its current and future retirees; (3) claims of former employees who were not paid the full amount of accrued sick time and other benefits on their separation from the City; (4) claims arising from tort and breach of contract lawsuits against the City; and (5) various other trade and vendor Claims.  Importantly, the Fourth Amended Plan does not impair the City's bond obligations.

Payment to Holders of General Unsecured Claims and General Unsecured Convenience Claims will be paid a distribution from a pool totaling $600,000 during the six-year plan horizon.

The General Unsecured Convenience Claims will be paid thirty-five percent (35%) of their Allowed Claim on or prior to June 30, 2013.  Any balance remaining in FY 2013 claims pool will be added to the FY 2014 claims pool, and the General Unsecured Claims will share *pro rata* in the claims pool on or prior to the following payment dates: June 30, 2014, June 30, 2015, June 30, 2016 and June 30, 2017.   However, in no event will the amount paid to any General Unsecured Creditor exceed forty-five percent (45%) of the Allowed Claim.   In the event there are monies remaining in the General Unsecured Creditor's Pool on June 30, 2017, after distribution as stated herein, such monies will be deposited in the City's Capital Fund.  While the City regrets that it cannot pay a higher percentage, the fact is that the City lacks the revenues to do so while maintaining an adequate level of municipal services such as the provision of fire and police protection and the repairing of the City's streets.

The Fourth Amended Plan does not alter the City's obligations towards funds that are restricted by grants, by federal law and by Rhode Island law; it is the City's position that pursuant to the Tenth Amendment to the United States Constitution and the provisions of the Bankruptcy Code that implement the Tenth Amendment, such funds cannot be impacted in the Bankruptcy Case.

The following chart summarizes key information, including the proposed treatment of the various classes of Claims:

| | |
|---|---|
| **Debtor** | City of Central Falls, Rhode Island |
| **Bankruptcy Court** | United States Bankruptcy Court for the District of Rhode Island, the Honorable Frank J. Bailey of the United States Bankruptcy Court for the District of Massachusetts sitting by designation. |
| **Plan** | Fourth Amended Plan for the Adjustment of Debts of City of Central Falls, Rhode Island, Dated July 27, 2012. |

| | |
|---|---|
| **Purpose of the Fourth Amended Disclosure Statement** | To provide information of a kind, and in sufficient detail, that would enable a typical Holder of Claims in a class impaired under the Fourth Amended Plan to make an informed judgment with respect to voting on the Fourth Amended Plan. |
| **Balloting Information** | Ballots have been provided with this Fourth Amended Disclosure Statement to creditors or their counsel known to have Claims that are impaired under the Fourth Amended Plan.  Ballots must be returned to and received by the Ballot Tabulator by no later than 4:30 p.m., Eastern Standard Time, on August 21, 2012. |
| **Ballot Tabulator** | Theodore Orson, Esq., Orson and Brusini Ltd., 144 Wayland Avenue, Providence, RI 02906.  Fax No. (401) 861-3103.  E-mail address: torson@orsonandbrusini.com |
| **Confirmation Hearing and Confirmation Objections** | A hearing regarding confirmation of the Fourth Amended Plan will be held before the Bankruptcy Court on September 6, 2012, commencing at 10:00 a.m., Eastern Standard Time and continuing on September 7, 2012 commencing at 10:00 a.m. if needed.   Objections to confirmation must be filed and served by no later than August 21, 2012. |
| **Treatment of Claims** | If the Court confirms the Fourth Amended Plan and the Fourth Amended Plan becomes effective, Claims will be treated as follows: |
| **Administrative Claims** | Paid in full, except to the extent that the Holder of an Administrative Claim agrees to a different treatment. |
| **Class 1 $12,000,000 General Obligation School Bonds Claims** | Unimpaired. The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, the principle, interest, and redemption premium under the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues. |
| **Class 2 $8,700,000 General Obligation Municipal Facility Bonds Claims.** | Unimpaired. The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. |

|  | Gen. Laws § 45-12-1, the principle, interest, and redemption premium under the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues. |
|---|---|
| **Class 3 $1,300,000 General Obligation School Bonds Claims** | Unimpaired. The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, the principle, interest, and redemption premium under the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues. |
| **Class 4 $750,000 General Obligation School Bonds** | Unimpaired. The bonds are general obligations of the City, and all taxable property in the City is subject to ad *valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, the principle, interest, and redemption premium under the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues. |
| **Class 5 $4,250,000 General Obligation School Bonds** | Unimpaired. The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, the principle, interest, and redemption premium under the bonds are secured by a Rhode Island statutory lien on property taxes and general fund revenues. |
| **Class 6 April 10, 2009 Lease Claim** | Impaired. On the Effective Date, the term of the Rescue Lease shall be extended by two (2) years, the annual principal payments shall be reduced by fifty percent (50%), and the annual interest rate shall be reduced by one percent (1%).  The new payment schedule is set forth in ***Exhibit Q*** to the Fourth Amended Plan. |
| **Class 7 Retiree Health Insurance Claims** | Impaired. The Holders of these Claims will have their health care benefits modified in accordance with the restructured health benefits schedule set forth on ***Exhibit C*** to the Fourth Amended Plan, and will be required to pay twenty percent (20%) co-share premium payments.  The Holders of these Claims are identified in ***Exhibit D*** to the Fourth Amended Plan. |

| | |
|---|---|
| **Class 8 Retiree $10,000 and Under Pension Claims** | Unimpaired. The Holders of these Claims will not have their annual pension benefits reduced under the newly-designed Central Falls Pension Plan as set forth in *Exhibit E* to the Fourth Amended Plan. The Holders of these Claims are identified in *Exhibit F* to the Fourth Amended Plan. |
| **Class 9 Retiree Reduced to $10,000 Pension Claims** | Impaired. The Holders of these Claims will have their annual pension benefits reduced to $10,000 under the newly-designed Central Falls Pension Plan as set forth in *Exhibit E* to the Fourth Amended Plan. The Holders of these Claims are identified in *Exhibit G* to the Fourth Amended Plan. |
| **Class 10 Retiree Reduced 45% Pension Claims** | Impaired. The Holders of these Claims will have their annual pension benefits reduced by fifty-five percent (55%) under the newly-designed Central Falls Pension Plan as set forth in *Exhibit E* to the Fourth Amended Plan. The Holders of these Claims are identified in *Exhibit H* to the Fourth Amended Plan. |
| **Class 11 Retiree Pension Claims** | Impaired. The Holders of these Claims will have their annual pension benefits reduced by less than fifty-five percent (55%) in accordance with the formula as set forth under the newly-designed Central Falls Pension Plan as set forth in *Exhibit E* to the Fourth Amended Plan. The Holders of these Claims are identified in *Exhibit I* to the Fourth Amended Plan. |
| **Class 12 Retiree Accidental Disability Pension Claims** | Impaired. The Holders of these Claims will have their accidental disability retirement benefits modified in accordance with the restricted benefit schedule set forth in *Exhibit E* to the Fourth Amended Plan. The Holders of these Claims are identified in *Exhibit J* to the Fourth Amended Plan. |
| **Class 13 Employees Covered by the Collective Bargaining Agreement between the City and R.I. Council 94, AFSCME, AFL-CIO Local 1627 for November 23, 2011 to June 30, 2016** | Impaired. The Holders of these Claims have had their compensation, healthcare, and other benefits reduced under the Fourth Amended Plan pursuant to the terms of a new collective bargaining agreement between the union and the City. The Holders of these Claims are identified in *Exhibit K* to the Fourth Amended Plan. |
| **Class 14 Employees Covered by the Collective Bargaining Agreement between the City and** | Impaired. The Holders of these Claims have had their compensation, health benefits, retirement benefits and other benefits reduced under the Fourth Amended Plan. |

| | |
|---|---|
| **the Fraternal Order of Police, Lodge 2 for November 23, 2011 to June 30, 2016** | Plan pursuant to the terms of a new collective bargaining agreement between the union and the City.  The Holders of these Claims are identified in ***Exhibit L*** to the Fourth Amended Plan. |
| **Class 15 Employees Covered by the Collective Bargaining Agreement between the City and Local 1485, International Association of Fire Fighters, AFL-CIO for November 23, 2011 to June 30, 2016** | Impaired.  The Holders of these Claims have had their compensation, health benefits, retirement benefits and other benefits reduced under the Fourth Amended Plan pursuant to the terms of the new collective bargaining agreement between the union and the City.  The Holders of these Claims are identified in ***Exhibit M*** to the Fourth Amended Plan. |
| **Class 16 General Unsecured Claims** | Impaired.  Holders of Allowed General Unsecured Claims will receive their *pro rata* share of the $600,000 during the six-year Fourth Amended Plan term from the General Unsecured Claims Pool after distributions are made to or reserves are created for the Holders of the Class 17 General Unsecured Convenience Claims.  Because this class of Claims will include contract and lease rejection Claims which are currently unliquidated, and because the City intends to object to certain claims, it is impossible at this time to estimate the percentage recovery to Holders of these Claims.  The recovery will not exceed forty-five percent (45%) of the amount of the Claim.  The Holders of these Claims are identified in ***Exhibit N*** to the Fourth Amended Plan. |
| **Class 17 General Unsecured Convenience Claims of $5,000 or less** | Impaired. The Holders of these Claims will receive thirty-five percent (35%) of the amount of their Allowed Claim on or prior to June 30, 2013 in a single lump sum payment.  The Holders of these Claims are identified in ***Exhibit O*** to the Fourth Amended Plan. |
| **Class 18 Property Tax Overpayment Claims** | Unimpaired.  The Holder of these Claims will have the overpayment of their property taxes credited to their fiscal year 2013 tax bills.  If they no longer own property in the City, and make a written request to the City, they will be paid the full amount of the overpayment.  The Holders of these Claims are identified in ***Exhibit P*** to the Fourth Amended Plan. |
| **Class 19 State of Rhode Island Claims** | Impaired.  The Holder of this Claim will be paid in full but most of the distribution will be paid after the term of the plan.  A portion of the payments to the Holder of this Claim will be paid from recoveries obtained by a Claim Recovery Trustee who shall be deemed appointed to |

recover any judgment against elected officials of the City.

| | |
|---|---|
| **Background Information**: | See Executive Summary of Six Year Financial Projection filed herewith as ***Exhibit 2***. |
| **Questions:** | Please contact the Debtor's counsel, Theodore Orson, Orson and Brusini Ltd., 144 Wayland Avenue, Providence, RI 02906 (torson@orsonandbrusini.com) |

Any terms not defined in the Fourth Amended Disclosure Statement, shall have the meanings ascribed to them in the Fourth Amended Plan.  To the extent that there is an inconsistency between the Fourth Amended Plan (including the Exhibits and any supplements to the Fourth Amended Plan) and the Fourth Amended Disclosure Statement, the terms of the Fourth Amended Plan (including the Exhibits to the Fourth Amended Plan) will govern.

## I.   **INTRODUCTION**

The City filed a petition under Chapter 9 of Title 11 of the United States Code (the "Bankruptcy Code") on August 1, 2011 (the "Petition Date"), which was designated Case Number 11-13105 (the "Chapter 9 Case") and is currently pending before the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court").

The City is the proponent of the Fourth Amended Plan, a copy of which is attached to this Fourth Amended Disclosure Statement as ***Exhibit 1***.  By Order dated _____, 2012, the Bankruptcy Court determined that this Fourth Amended Disclosure Statement contains "adequate information" within the meaning of § 1125 of the Bankruptcy Code and authorized the City to transmit it to Holders of Impaired Claims in connection with the solicitation of votes with respect to the Fourth Amended Plan.

The City relied, among other things, on the following documents and information in formulating its Fourth Amended Plan of Debt Adjustment, which are filed as Exhibits to this Fourth Amended Disclosure Statement.

Exhibit 1     Fourth Amended Plan of Debt Adjustment with Exhibits

| | |
|---|---|
| Exhibit 2 | Executive Summary of Six Year Financial Projection |
| Exhibit 3 | Six Year Financial Projection |
| Exhibit 4 | Actuarial Analysis and Viability Analysis for Restructured Central Falls Pension Plan |
| Exhibit 5 | Explanation of Active Health Care Changes |
| Exhibit 6 | Explanation of Retiree Health Care Changes |
| Exhibit 7 | Outstanding Debt Service Schedules |
| Exhibit 8 | Schedule of Pending Litigation |
| Exhibit 9 | Amended Creditors List |
| Exhibit 10 | Memorandum of Agreement between the City and R.I. Council 94, AFSCME, AFL-CIO, Local 1627 dated November 23, 2011 |
| Exhibit 11 | Memorandum of Agreement between the City and Fraternal Order of Police, Lodge 2 dated November 23, 2011 |
| Exhibit 12 | Memorandum of Agreement between the City and Local 1485, International Association of Fire Fighters, AFL-CIO dated December 8, 2011 |
| Exhibit 13 | Moody's Investors Service Report regarding City's Bond Status Review |
| Exhibit 14 | Engagement Agreement between the City, the Director of Revenue, State of Rhode Island, and Allan M. Shine |
| Exhibit 15 | Schedule of Professional Fees |

**NOTE THAT THE EXHIBITS TO THE FOURTH AMENDED DISCLOSURE STATEMENT ARE NOT ANNEXED HERETO BUT ARE POSTED ON THE CITY'S WEBSITE AT: www.centralfallsri.us**

In addition, copies of the past five years audited financial statements which were considered by the City in formulating its Fourth Amended Plan and projections will be made available for review on the City's website.

As described more fully elsewhere in this document, the City believes that the Fourth Amended Plan provides the greatest and earliest possible recoveries to Holders of Claims, that acceptance of the Fourth Amended Plan is in the best interests of all parties, and that any alternative restructuring or reorganization would result in delay, uncertainty, expense, litigation and, ultimately, smaller or no distributions to creditors.  Accordingly, the City urges that you cast your ballot in favor of the Fourth Amended Plan.

A.    **The Purpose of this Fourth Amended Disclosure Statement.**

The Bankruptcy Code generally requires that the proponent of a Plan of adjustment prepare and file with the applicable bankruptcy court a "Disclosure Statement" that provides information of a kind, and in sufficient detail, as would enable a typical Holder of Claims in a class impaired under that Plan to make an informed judgment with respect to the Plan.  The City believes that this Fourth Amended Disclosure Statement provides such information with respect to the Fourth Amended Plan.  Parties in interest should read this Fourth Amended Disclosure Statement, the Fourth Amended Plan, and all of the exhibits accompanying such documents in their entirety in order to ascertain:

1.    How the Fourth Amended Plan will affect their Claims against the City;

2.    Their rights with respect to voting for or against the Fourth Amended Plan;

3.    Their rights with respect to objecting to confirmation of the Fourth Amended Plan; and

4.    How and when to cast a ballot with respect to the Fourth Amended Plan.

This Fourth Amended Disclosure Statement, however, cannot and does not provide

creditors with legal or other advice or inform such parties of all aspects of their rights.  Claimants are urged and advised to consult with their attorneys and/or financial advisors to obtain specific and/or personalized advice regarding how the Fourth Amended Plan will affect them and regarding their best course of action with respect to the Fourth Amended Plan.

This Fourth Amended Disclosure Statement has been prepared in good faith and, the City believes, in compliance with applicable provisions of the Bankruptcy Code.  Based upon information currently available, the City believes that the information contained in this Fourth Amended Disclosure Statement is correct as of the date of its filing.  The Fourth Amended Disclosure Statement, however, does not and will not reflect events that occur after July 27, 2012 (and, where indicated, specified earlier dates), and the City assumes no duty and presently does not intend to prepare or distribute any amendments or supplements to reflect such events.

**B.**     **Summary of Entities Entitled to Vote on the Amended Plan and of Certain Requirements Necessary for Confirmation of the Amended Plan.**

Holders of Allowed Claims in the following Classes are entitled to vote on the Fourth Amended Plan because the Claims in each such Class are "impaired" under the Fourth Amended Plan within the meaning of Section 1124 of the Bankruptcy Code:

**Class 6 April 10, 2009 Lease Claim**

**Class 7 Retiree Health Insurance Claims**

**Class 9 Retiree Reduced-to-$10,000 Pension Claims**

**Class 10 Retiree 45% Pension Claims**

**Class 11 Retiree Pension Claims**

**Class 12 Retiree Accidental Disability Pension Claims**

**Class 13 Current Employees Covered by the Collective Bargaining Agreement between the City and R.I. Council 94, AFSCME, AFL-CIO for November 23, 2011 to June 30, 2016**

**Class 14 Current Employees Covered by the Collective Bargaining Agreement between the City and Fraternal Order of Police, Lodge 2 for November 23, 2011**

to June 30, 2016

**Class 15 Current Employees Covered by the Collective Bargaining Agreement between the City and Local 1485, International Association of Fire Fighters, AFL-CIO for November 23, 2011 to June 30, 2016**

**Class 16 General Unsecured Claims**

**Class 17 General Unsecured Convenience Claims**

**Class 19 State of Rhode Island Claim**

The Bankruptcy Court may confirm the Fourth Amended Plan only if at least one Class of impaired Claims has voted to accept the Fourth Amended Plan (without counting the votes of any insiders whose Claims are classified within that Class) and if certain statutory requirements are met as to both non-consenting members within a consenting Class and as to any dissenting Classes.  A Class of Claims has accepted the Fourth Amended Plan only when at least one-half in number **and** at least two-thirds in amount of the Allowed Claims actually voting in that Class vote in favor of the Fourth Amended Plan.

In the event of a rejection of the Fourth Amended Plan by any of the Voting Classes, the City will request that the Bankruptcy Court confirm the Fourth Amended Plan in accordance with those portions of section 1129(b) of the Bankruptcy Code that are applicable to the Chapter 9 Case, which provisions permit confirmation by a process known as "cram down" notwithstanding such rejection if the Bankruptcy Court finds, among other things, that the Fourth Amended Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each rejecting Class.  Other sections of this Fourth Amended Disclosure Statement provide a more detailed description of the requirements for acceptance and confirmation of the Fourth Amended Plan.

C.  **Voting Procedures, Balloting Deadline, Confirmation Hearing, and Other Important Dates, Deadlines, and Procedures.**

  1.  **Voting Procedures and Deadlines.**

The City has provided copies of this Fourth Amended Disclosure Statement, without

exhibits, and Fourth Amended Plan, without exhibits and ballots, to all known Holders of Impaired Claims in the Voting Classes.  However with respect to Classes 13, 14 and 15, the Fourth Amended Disclosure Statement and Fourth Amended Plan, without exhibits, will be sent to counsel for their review and certification to their represented claimants that the Fourth Amended Plan complies with the terms of the respective Collective Bargaining Agreements each of which have been approved by the Court by Orders entered January 9, 2012.  All known Holders of Claims in other Impaired Classes will also receive notice that the exhibits to the Fourth Amended Disclosure Statement and Fourth Amended Plan will be available online at www.centralfallsri.us.

Those Holders of an Allowed Claim in each of the Voting Classes who seek to vote to accept or reject the Fourth Amended Plan <u>must</u> complete a ballot and return it to the Court-appointed Ballot Tabulator so that their ballots actually are received by no later than the Balloting Deadline (as defined two paragraphs below).  Holders of Allowed Claims in Class 13, 14 and 15 shall be deemed to have voted to accept the Amended Plan by ballot completed by their respective counsel.   Ballots do not constitute proofs of claim and must be returned directly to the Ballot Tabulator, **not** to the Bankruptcy Court.  The Ballots will also provide Holders of Allowed Class 16 General Unsecured Claims in excess of $5,000 with the option to reduce their Allowed Claims to $5,000 so that they may be classified as Holders of Class 17 General Unsecured Convenience Claims.

*All ballots, including ballots transmitted by facsimile, must be completed, signed, returned to, and <u>actually received</u> by the Ballot Tabulator by not later than August 21, 2012, at 4:30 p.m.  Eastern Standard Time (the "<u>Balloting Deadline</u>").  Neither Ballots received after the Balloting Deadline, nor ballots returned directly to the Bankruptcy Court rather than by the Ballot Tabulator, shall be counted in connection with confirmation of the Amended Plan.*

**2.**     <u>**Date of the Confirmation Hearing and Deadlines for Objection to Confirmation of the Fourth Amended Plan.**</u>

The hearing to determine whether the Bankruptcy Court will confirm the Fourth Amended Plan (the "Confirmation Hearing") will commence on Thursday, September 6, 2012 at 10:00 a.m. Eastern Standard Time in the United States Bankruptcy Court for the District of Rhode Island on the 6th Floor of the Federal Center, 380 Westminster Street, Providence, Rhode Island 02903 and will continue on Friday, September 7, 2012 at 10:00 a.m. if necessary. The Confirmation Hearing may be continued from time to time, including by announcement in open court, without further notice.

Any objections to confirmation of the Fourth Amended Plan must be filed with the Bankruptcy Court and served on the following entities so as to be actually received by no later than, August 21, 2012, and copies must be sent to City's counsel, Theodore Orson, Esq., 144 Wayland Avenue, Providence, RI 02906, Fax No. (401)861-3103, Email: torson@orsonandbrusini.com. Objections that are not timely filed and served may not be considered by the Bankruptcy Court. *Please refer to the accompanying notice of the Confirmation Hearing for specific requirements regarding the form and nature of objections to confirmation of the Fourth Amended Plan.*

###### D.   Important Notices and Cautionary Statements.

1. The historical financial data relied upon in preparing the Fourth Amended Plan and this Fourth Amended Disclosure Statement is based upon the City's books and records. Although certain professional advisors of the City assisted in the preparation of this Fourth Amended Disclosure Statement, in doing so such professionals relied upon factual information and assumptions regarding financial, business, and accounting data provided by the City and third parties, much of which has not been audited.

*The professional advisors of the City have not independently verified such information and, accordingly, make no representations or warranties as to its accuracy.* Moreover, although reasonable efforts have been made to provide accurate information, the City does not warrant or

represent that the information in this Amended Disclosure Statement, including any and all financial information and projections, is without inaccuracy or omissions or that actual values or distributions will comport with the estimates set forth herein.

2.      ***No entity may rely upon the Fourth Amended Plan or this Fourth Amended Disclosure Statement or any of the accompanying exhibits for any purpose other than to determine whether to vote in favor of or against the Fourth Amended Plan.***   Nothing contained in such documents constitutes an admission of any fact or liability by any party, and no such information will be admissible in any proceeding involving the City or any other party, nor will this Fourth Amended Disclosure Statement be deemed evidence of the tax or other legal effects of the Fourth Amended Plan on Holders of Claims in the Chapter 9 Case.

3.      Certain information included in this Fourth Amended Disclosure Statement and its Exhibits contains forward-looking statements.  The words "believe," "expect," "anticipate" and similar expressions identify such forward-looking statements.  The forward-looking statements are based upon information available when such statements are made, and are subject to risks and uncertainties that could cause actual results to differ materially from those expressed in the statements.  A number of those risks and uncertainties are described below. Readers therefore are cautioned not to place undue reliance on the forward-looking statements in this Fourth Amended Disclosure Statement.  The City undertakes no obligation to publicly update or revise any forward-looking statements, whether as a result of new information, future events or otherwise.

4.      Neither the Securities and Exchange Commission nor any other regulatory agency has approved nor disapproved this Fourth Amended Disclosure Statement, nor has any such agency determined whether this Fourth Amended Disclosure Statement is accurate, truthful or complete.

E.      **Additional Information.**

If you have any questions about the procedures for voting on the Fourth Amended Plan,

desire another copy of a ballot, or seek further information about the timing and deadlines with respect to confirmation of the Fourth Amended Plan, please write to counsel for the City as follows: Theodore Orson, Esq., Orson and Brusini Ltd., 144 Wayland Avenue, Providence, RI 02906 (torson@orsonandbrusini.com).  Please note that counsel for the City cannot and will not provide creditors with any legal advice, including advice regarding how to vote on the Amended Plan or the effect that confirmation of the Fourth Amended Plan will have upon Claims against the City.

## II.     BACKGROUND INFORMATION.

The background information pertaining to the Receivership and the formulation of the Fourth Amended Plan is contained in the Executive Summary of the Six Year Financial Projection filed herewith as *Exhibit 2*.

The financial foundation for the Fourth Amended Plan is set forth on the Six Year Financial Budget Projection filed herewith as *Exhibit 3*.

The City filed its Petition on August 1, 2011, together with a Statement of Qualifications, with supporting exhibits in support of eligibility.  On that same date, the City also filed a Motion to Reject Lease or Executory Contract with respect to three collective bargaining agreements between the City and R.I. Council 94, AFSCME, AFL-CIO, Local 1627 ("the Local"); between the City and the Fraternal Order of Police, Lodge 2 ("FOP Lodge 2"); and between the City and Local 1485, International Association of Fire Fighters, AFL-CIO ("Local 1485").  The Police and Firefighter Retirees and their Associations filed an Objection to the City's eligibility.

The City negotiated with counsel for a group of retirees (the "Represented Retirees") and entered into a Settlement and Release Agreement executed by the Receiver and the Director of the Rhode Island Department of Revenue on November 30, 2011 (the "Settlement and Release

Agreement") to resolve and release their Claims against the City.  As part of the Settlement and

Release Agreement, the Represented Retirees withdrew their Objection to the City's eligibility.

On December 1, 2011, this Court entered an Order for Relief finding the City to be an

eligible debtor under Chapter 9.

The Settlement and Release Agreement which was accepted by the requisite number of

Represented Retirees, as well as a number of unrepresented retirees, (collectively, the

"Participating Retirees") and was approved by this Court by Order entered January 9, 2012 is

attached to the Fourth Amended Plan as *Exhibit W*.  Certain retirees elected not to accept the

Settlement and Release Agreement, and are therefore not bound by the Settlement and Release

Agreement.  The retirees that agreed to the Settlement and Release Agreement shall share in $2.6

million of non-City funds appropriated by the State of Rhode Island.  Specifically, the

Participating Retirees shall receive supplemental payments from this appropriation for a period

of five years.  The Appropriation Legislation was passed by the General Assembly on June 12,

2012, and signed by the Governor on June 15, 2012.  In consideration for the appropriation, the

Participating Retirees, agreed, among other things, to a general release of all claims against the

State and the City and also not to challenge the Rhode Island statute granting bondholders a lien

on a city's general revenues.  The appropriation is not part of the City's general fund and

therefore is not part of the Fourth Amended Plan.  Rather, the appropriated funds are trust funds

which have been deposited in a Restricted 5-Year Account established by the City which the City

simply administers.  An explanation of the Restructured Retiree Benefits and supplemental payments

to be paid pursuant to the Settlement and Release Agreement is filed with the Fourth Amended Plan

as *Exhibit R*.

The retiree Classes, Classes 7, 8, 9, 10, 11 and 12, include both "Participating Retirees" and

those retirees who elected not to sign the Settlement and Release Agreement.  All Holders of

Allowed Claims in these classes are impaired and therefore entitled to vote to accept or reject the Fourth Amended Plan, with the exception of those retirees in Class 8 who are unimpaired under the Fourth Amended Plan.

The City negotiated with each of its labor unions throughout the fall of 2011. On November 23, 2011, the City and its labor unions entered into new collective bargaining agreements covering the period from November 23, 2011 through June 30, 2016. The City and the Local entered into a Memorandum of Agreement dated November 23, 2011, which was approved by Order of this Court entered on January 9, 2012. A true and accurate copy of the Memorandum of Agreement is attached hereto as ***Exhibit 10***. The City and the FOP Lodge 2 entered into a Memorandum of Agreement dated November 23, 2011, which was approved by Order of this Court entered on January 9, 2012. A true and accurate copy of the Memorandum of Agreement is attached hereto as ***Exhibit 11***. The City and Local 1485 entered into a Memorandum of Agreement dated December 8, 2011, which was approved by Order of this Court entered on January 9, 2012. A true and accurate copy of the Memorandum of Agreement is attached hereto as ***Exhibit 12***.

The City filed an adversary proceeding on December 30, 2011, seeking a determination regarding whether the Central Falls School District was part of the City, in order to ascertain whether the revenues, expenditures, collective bargaining agreements and the overall budget of the Central Falls School District need to be part of the City's Amended Plan. After hearings on the City's Motion for Summary Judgment, on March 27, 2012, the Court issued Proposed Findings of Fact and Conclusions of Law finding that the Central Falls School District was not part of the City. The City did not object to the Proposed Findings of Fact and Conclusions of Law and the adversary proceeding was dismissed by stipulation of all parties filed with the Court on May 14, 2012.

Consequently, the City has not included the Central Falls School District or its budget as part of its Fourth Amended Plan, except to the extent that the City bills certain City services to the Central Falls School District and remains obligated to issue and pay school related bonds.

In recognition of, among other things, "the increased likelihood that the city will exit Chapter 9 bankruptcy…" on June 29, 2012, Moody's Investors Service placed the City on review for a ratings upgrade.  A copy of the Moody's Investors Service report is annexed hereto as **Exhibit 13.**

## III.   THE CITY'S LIABILITIES AND ASSETS.

### A.   Liabilities.

The City's liabilities include its outstanding financing obligations, its present and future pension and other post-employment benefit obligations, and vendor and other general unsecured obligations as described in the City's amended Schedule of Creditors filed with the Court on June 6, 2012 and filed herewith as *Exhibit 9.*

### B.   Assets.

#### 1.   Capital Assets.

The City owns all manner of capital assets, including buildings, roads, bridges, infrastructure and utility improvements, parks, undeveloped real property and service vehicles (such as fire trucks, police cars and street equipment).  Virtually all of these municipal assets are used daily in the performance of public functions and cannot be easily liquidated — particularly under current market conditions.  They are valued in the City's books and records at depreciated historical cost, which does not represent the cash value that could be recognized by the City in the event of a voluntary sale.

#### 2.   Claims and Causes of Action Against Third Parties.

Parties in interest may not rely on the absence of a reference in this Fourth Amended Disclosure Statement or in the Fourth Amended Plan as any indication that the City ultimately will not pursue any and all available claims, rights and causes of action against them.  **All parties who previously dealt with the City hereby are on notice that the Fourth**

**Amended Plan preserves certain of the City's rights, claims, causes of action, interests and defenses.  The City expects that any and all meritorious claims will be pursued and litigated after the Effective Date to the extent they remain vested in the City.**

**IV.**   **SUMMARY OF THE FOURTH AMENDED PLAN OF ADJUSTMENT.**

The discussion of the Fourth Amended Plan set forth below is qualified in its entirety by reference to the more detailed provisions set forth in the Fourth Amended Plan and its exhibits, the terms of which are controlling.  Holders of Claims and other interested parties are urged to read the Fourth Amended Plan and its exhibits, copies of which are filed with this Fourth Amended Disclosure Statement as *Exhibit 1*, in their entirety so that they may make an informed judgment regarding the Fourth Amended Plan.

The Fourth Amended Plan is premised upon the Executive Summary of Six Year Financial Projection and the Six Year Financial Plan, which are the financial planning documents that present strategies for the City to maintain a balanced operating budget, to address the City's debts, to rebuild fiscal stability, and to enable the City to continue to provide municipal services through June 30, 2017 and hopefully beyond.  The Executive Summary of Six Year Financial Projection is filed herewith as *Exhibit 2* and the Six Year Financial Plan is filed herewith as *Exhibit 3*.  Note that to the extent that there is any inconsistency between the Fourth Amended Plan (including the Exhibits and any supplements to the Fourth Amended Plan) and the description in the Fourth Amended Disclosure Statement, the terms of the Fourth Amended Plan (including the Exhibits to the Fourth Amended Plan) will govern.

**A.**   **Classification and Treatment of Claims.**

**1.**   **Unclassified Claims.**

The Fourth Amended Plan governs the treatment of certain Claims that are not classified into

Classes under the Fourth Amended Plan.

### a.  <u>Administrative Expense Claims.</u>

Administrative Expense Claims are Claims of the kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code.  Article II, Section A of the Fourth Amended Plan provides for the treatment of Administrative Claims.  Throughout the course of the Chapter 9 Case, the City has endeavored to satisfy administrative expenses as they became due.  Accordingly, the City believes that most Claims that otherwise would constitute Allowed Administrative Claims previously have been or will be satisfied in the ordinary course of business prior to and after the Effective Date.

### *(i)  Treatment of All Other Administrative Claims Other Than Professional Claims.*

The Fourth Amended Plan provides that, except as provided in Article II, Section B of the Fourth Amended Plan, with respect to Professional Claims, or to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment, the City or its agent will pay to each Holder of an Allowed Administrative Claim, in full satisfaction, release and discharge of such Claim, cash in an amount equal to such Allowed Administrative Claim in the ordinary course of the City's business, but in no event later than the later of the date that is practicable after (i) the Effective Date, or (ii) the date on which such Claim becomes an Allowed Administrative Claim.

Professional Claims are Claims of professionals for unpaid services and costs incurred by or for the benefit of the City prior to the Effective Date or for services to be rendered following the Effective Date or expenses to be incurred in rendering such services following the Effective Date either in the Chapter 9 Case or incident to the Fourth Amended Plan.  No Professional Claims are to be paid for professional fees incurred by or on behalf of any third party or creditors.

Article II, Section B of the Fourth Amended Plan provides that, pursuant to section 943(a)(3) of the Bankruptcy Code, all Professional Claims must be disclosed and be reasonable and that, upon being deemed reasonable, the City will pay to each Holder of a Professional Claim, in full satisfaction, release and discharge of such Claim, cash in an amount

equal to that portion of such Claim that is deemed reasonable.

The City intends to pay the reasonable fees of its bankruptcy counsel, labor counsel, municipal finance counsel and other professionals during the term of the Fourth Amended Plan.  The State will continue to advance payment for these fees.

The fees described in the preceding paragraph are not subject to Bankruptcy Court review or approval, as Bankruptcy Code § 326 *et seq.* does not apply in Chapter 9 cases.

### b. __Bar Date for Assertion of Requests for Payment of Administrative Claims (Other Than Ordinary Course Administrative Claims) and Professional Claims.__

Article II, Section D of the Fourth Amended Plan provides that all requests for approval of Administrative Expense and Professional Claims must be filed with the Bankruptcy Court and served upon the City no later than thirty (30) days after the date on which the Notice of Effective Date is mailed pursuant to the Fourth Amended Plan.

**Except as otherwise provided herein, all requests for payment or any other means of preserving and obtaining payment of Administrative Claims (other than Ordinary Course Administrative Claims) that have not been paid, released, or otherwise settled, and all requests for approval of Professional Claims, must be filed with the Bankruptcy Court and served upon the City no later than thirty (30) days after the date on which the Notice of Effective Date is mailed.** Any request for payment of an Administrative Claim or a Professional Claim that is not timely filed by such date will be forever barred, and Holders of such Claims shall be barred from asserting such Claims in any manner against the City.

### 3. __Classes of Claims.__

There are 19 classes of creditors.   We have described the designation, voting rights and description of each class in separate sections below.  Each such section is divided into three (3) subsections.  In the first subsection, we identify the members of the class.  In the second subsection, we explain whether the claims in the class are impaired or unimpaired, and, as a result, whether the Holders of Allowed Claims in the class may vote on the plan.  (Under the

Bankruptcy Code, impaired creditors may vote on a plan while unimpaired creditors are deemed to have accepted a plan.)  In the third subsection, we explain how the allowed claims of the class will be treated under the plan.

Note that many creditors have claims in more than one class.  For example, creditor Joseph P. Moran III is a member of three classes: Class 7 for his claim relative to health insurance, Class 10 for his claim relative to his pension, and Class 16 for his claim of breach of his employment agreement.  If a creditor has claims in more than one class of impaired claims, that creditor will receive a ballot for each class of impaired claims in which he/she/it is a creditor.

**Class 1** –

  **1.**   **Designation.**

This Class is comprised of Claims of Holders of $12,000,000 City of Central Falls, Rhode Island General Obligation School Bonds, dated July 15, 1999, bearing the CUSIP numbers filed as **Exhibit A** to the Fourth Amended Plan.  (Registered owner for notice purposes as of the date of the filing of the Fourth Amended Plan: The Depository Trust Company ("DTC")).  These Claims will hereinafter be referred to as the "Class 1 $12,000,000 General Obligation School Bonds Claims."

Note that any claim for reasonable attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court, shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

  **2.**   **Impairment and Voting.**

The bonds are general obligations of the City, and all taxable property in the City is subject to ad valorem taxation without limitation as to rate or amount to pay the bonds and the

interest thereon.    Pursuant to Rhode Island General Laws § 45-12-1, bonds, notes, and

obligations securing bonds, notes or certificates are secured by a Rhode Island statutory lien on

property taxes and general fund revenues.  The lien covers only amounts representing principal

of, interest on, and redemption premium on the City's Bonds, and does not include costs of

collection.  Subject to an annual appropriation by the Rhode Island General Assembly, the City

receives state aid reimbursements for 97% of principal and interest on the Bonds.

This Class is Unimpaired by the Fourth Amended Plan.  The legal, equitable and

contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of

Claims in this Class are not entitled to vote to accept or reject the Fourth Amended Plan.  Under

Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Fourth

Amended Plan.

### 3.   Treatment.

The City shall honor its legal, equitable and contractual obligations to Holders of Claims

in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class

shall remain unaltered.

### Class 2 –

### 1.   Designation.

This Class is comprised of Claims of Holders of $8,700,000 City of Central Falls, Rhode

Island General Obligation Municipal Facility Bonds, dated October 1, 2007, bearing the CUSIP

numbers filed herewith as **Exhibit B** to the Fourth Amended Plan.  (Registered owner for notice

purposes as the date of the filing of this Fourth Amended Plan: DTC.)  These Claims will

hereinafter be referred to as the "Class 2 $8,700,000 General Obligation Municipal Facility

Bonds Claims."

Note that any claim for reasonable attorney fees and costs incurred by the Holder, if

legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court, shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

### 2.        Impairment and Voting.

The bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the Bonds and the interest thereon.    Pursuant   to Rhode Island General Laws § 45-12-1, bonds, notes, and obligations securing bonds, notes or certificates are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  The lien covers only amounts representing principal of, interest on, and redemption premium on the City's Bonds, and does not include costs of collection.

This Class is Unimpaired by the Fourth Amended Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject the Fourth Amended Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Fourth Amended Plan.

### 3.        Treatment.

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.

### Class 3 –

### 1.        Designation.

This Class is comprised of Claims of Holders of $1,300,000 City of Central Falls, Rhode Island General Obligation School Bonds, dated August 15, 2007. (Registered owner for notice purpose as of the date of the filing the Fourth Amended Plan: the Rhode Island Health and

Educational Building Corporation ("RIHEBC").  (These "borrower" bonds are part of a pool securing publicly offered bonds issued by RIHEBC—DTC is Registered Owner for notice purposes of bonds issued by RIHEBC).  These Claims will hereinafter be referred to as the "Class 3 $1,300,000 General Obligation School Bonds Claims."

Note that any claim for reasonable attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court, shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

### 2.     Impairment and Voting.

The borrower bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, bonds, notes, and obligations securing bonds, notes or certificates are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  The lien covers only amounts representing principal of, interest on, and redemption premium on the City's Bonds, and does not include costs of collection. Subject to annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursement for 97% of principal and interest on the borrower bonds which are intercepted by the General Treasurer and paid directly to the RIHEBC bond trustee to pay the borrower bonds.

This Class is Unimpaired by the Fourth Amended Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject the Fourth Amended Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Fourth Amended Plan.

### 3.     Treatment.

The City shall honor its legal, equitable and contractual obligations to Holders of Claims

in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.

**Class 4** –

1.      **Designation.**

This Class is comprised of Claims of Holders of $750,000 City of Central Falls, Rhode Island General Obligation Qualified School Construction Bonds, 2010 Series 1, dated June 29, 2010.  (Registered owner for notice purpose as of the date of the filing the Fourth Amended Plan: RIHEBC.)   These Claims will hereinafter be referred to as the "Class 4 $750,000 General Obligation School Bonds."

Note that any claim for reasonable attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court, shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

2.      **Impairment and Voting.**

The bonds are general obligations of the City, and all taxable property in the City is subject to ad valorem taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, bonds, notes, and obligations securing bonds, notes or certificates are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  The lien covers only amounts representing principal of, interest on, and redemption premium on the City's Bonds, and does not include costs of collection.  Subject to appropriation by the federal government and certain other conditions, the City receives an interest rate subsidy to pay interest on the bonds.  Subject to annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursements for 97% of the principal on the bonds which is intercepted by the General Treasurer and paid directly to the paying agent to

pay the bonds.  Pursuant to R.I. Gen. Laws § 45-12-32, the City has directed that additional state aid be intercepted to pay the remaining 3% of principal.

This Class is Unimpaired by the Fourth Amended Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject the Fourth Amended Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Fourth Amended Plan.

> **3.**      **Treatment.**

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.

**Class 5** –

> **1.**      **Designation.**

This Class is comprised of Claims of Holders of **$4,250,000** Central Falls, Rhode Island General Obligation School Bonds, 2010 Series 2, dated June 30, 2010**.**  (Registered owner for notice purpose as of the date of the filing the Fourth Amended Plan: RIHEBC.)  These "borrower bonds" secure qualified school construction bonds issued by RIHEBC which were privately placed with The Washington Trust Company (the "RIHEBC Bonds").  These Claims will hereinafter be referred to as the "Class 5 $4,250,000 General Obligation School Bonds."

Note that any claim for reasonable attorney fees and costs incurred by the Holder, if legally entitled to payment of its reasonable attorney fees and expenses, and allowed by the Bankruptcy Court, shall be treated as a Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim, as the case may be.

> **2.**      **Impairment and Voting.**

The borrower bonds are general obligations of the City, and all taxable property in the City is subject to *ad valorem* taxation without limitation as to rate or amount to pay the bonds and the interest thereon.  Pursuant to R.I. Gen. Laws § 45-12-1, bonds, notes, and obligations securing bonds, notes or certificates are secured by a Rhode Island statutory lien on property taxes and general fund revenues.  The lien covers only amounts representing principal of, interest on, and redemption premium on the City's Bonds, and does not include costs of collection. Subject to an appropriation by the federal government and certain other conditions, RIHEBC receives an interest rate subsidy to pay interest on the RIHEBC bonds which is applied to reduce the payment required from the City on the borrower bonds.  Subject to an annual appropriation by the Rhode Island General Assembly, the City receives state aid reimbursements for 97% of principal on the borrower bonds, which is intercepted by the General Treasurer and paid directly to the RIHEBC bond trustee to pay the borrower bonds.  Pursuant to R.I. Gen. Laws § 45-12-32, the City has directed that additional state aid be intercepted to pay the remaining 3% of principal on the borrower bonds.

This Class is Unimpaired by the Fourth Amended Plan.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject the Fourth Amended Plan.  Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Fourth Amended Plan.

### 3.    Treatment.

The City shall honor its legal, equitable and contractual obligations to Holders of Claims in this Class.  The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered.

### Class 6 –

### 1.    Designation.

This Class is comprised of the Claim of lessor of Lease dated April 10, 2009 by and

between First Municipal Leasing Corporation and the City (the "Rescue Lease").  This Claim will hereinafter be referred to as the "Class 6 April 10, 2009 Lease Claim."

### 2.      Impairment and Voting

The Rescue Lease is secured by a Horton rescue vehicle Vin No. 1FDFX47R78EE39070. The fiscal year 2012 lease payment is secured by a Rhode Island statutory lien on property taxes and general fund revenues.

This Class is Impaired by this Fourth Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holder of the Claim.  Accordingly, the Holder of the Claim in this Class is entitled to vote to accept or reject the Fourth Amended Plan.

### 3.      Treatment.

On the Effective Date, the term of the Rescue Lease shall be extended by two (2) years, the annual principal payments shall be reduced by fifty percent (50%), and the annual interest rate shall be reduced by one percent (1%).  The new payment schedule shall be as set forth in **Exhibit Q** filed with the Fourth Amended Plan.  All other terms and conditions of the Rescue Lease shall remain unaltered and in full force and effect.  On or prior to the Effective Date, at either party's written election, the parties shall enter into a modified lease agreement reflecting these modifications.

**Class 7** –

### 1.      Designation.

The Class 7 Claimants are specifically identified in Exhibit D to the Fourth Amended Plan.   These Claims will hereinafter be referred to as the "Class 7 Retiree Health Insurance Claims."

### 2.      Impairment and Voting

This Class is Impaired by the Fourth Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims. Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Fourth Amended Plan.

### 3.    Treatment.

The Holders of these Claims will have their health care benefits modified in accordance with the restructured health benefits schedule set forth on **Exhibit C** to the Fourth Amended Plan and will be required to pay 20% co-share premium payments.

**Class 8** -

### 1.    Designation.

The Class 8 Claimants are specifically identified in **Exhibit F** to the Fourth Amended Plan. These Claims will hereinafter be referred to as the "Class 8 Retiree $10,000-and-Under Pension Claims."

### 2.    Impairment and Voting

This Class is Unimpaired by the Fourth Amended Plan. The legal, equitable and contractual rights of the Holders of Claims in this Class shall remain unaltered. Holders of Claims in this Class are not entitled to vote to accept or reject the Fourth Amended Plan. Under Bankruptcy Code § 1126(f), this Class is conclusively presumed to have accepted the Fourth Amended Plan.

### 3.    Treatment.

The Holders of these Claims will not have their benefits reduced under the Central Falls Pension Plan as set forth in **Exhibit E** to the Fourth Amended Plan. The City has determined, as a matter of governmental policy, that because the annual pension benefits in this group are relatively low, and the average age of the individuals in this group is older than the

average age of the individuals in the other retiree classes, there is a smaller unliquidated benefit

and therefore a lesser impact on the City and the Fourth Amended Plan.  Moreover, the City has

further determined, as a matter of governmental policy, that because these individuals have less

ability to adjust and absorb a reduction in benefits, the City will not impact its most vulnerable

retirees by reducing their benefits.

**Class 9** –

1. **Designation.**

The Class 9 Claimants are specifically identified in **Exhibit G** to the Fourth Amended

Plan.  These Claims will hereinafter be referred to as the "Class 9 Retiree Reduced-to-$10,000

Pension Claims."

2. **Impairment and Voting**

This Class is Impaired by this Fourth Amended Plan since the treatment of this

Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.

Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the

Fourth Amended Plan.

3. **Treatment.**

The Holders of these Claims will have their annual pension benefits reduced to $10,000

under the Central Falls Pension Plan as set forth in **Exhibit E** to the Fourth Amended Plan.

Although the strict application of the new pension plan formula would reduce these individuals'

benefits to less than $10,000 annually, the City has determined, as a matter of governmental

policy, that it will not reduce benefits below this $10,000 threshold.  The City determined that

because the annual pension benefits in this group are relatively low, there is a smaller

unliquidated benefit and therefore a lesser impact on the City and the Fourth Amended Plan.

Moreover, the City has further determined, as a matter of governmental policy, that it would be unfair to reduce benefits below the $10,000 threshold.

**Class 10** -

1. **Designation.**

The Class 10 Claimants are specifically identified in **Exhibit H** to the Fourth Amended Plan. These Claims will hereinafter be referred to as the "Class 10 Retiree 45% Pension Claims."

2. **Impairment and Voting**

This Class is Impaired by the Fourth Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims. Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Fourth Amended Plan.

3. **Treatment.**

The Holders of these Claims will have their annual pension benefits reduced by fifty-five percent (55%) under the Central Falls Pension Plan as set forth in **Exhibit E** to the Fourth Amended Plan. Although strict application of the new pension plan formula would reduce these individuals' benefits to an amount which would be less than forty-five percent (45%) of the amount of their pre-petition pension benefit annually, the City has determined, as a matter of governmental policy, that it will not reduce benefits below this 45% threshold. The City has further determined, as a matter of governmental policy that it would be unfair to reduce benefits below 45% of pre-petition pension benefits, and therefore, the City would lessen the impact of the plan on this group of retirees.

**Class 11** –

1. **Designation.**

The Class 11 Claimants are specifically identified in **Exhibit I** to the Fourth Amended Plan.  These Claims will hereinafter be referred to as the "Class 11 Retiree Pension Claims."

### 2.  Impairment and Voting.

This Class is Impaired by the Fourth Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Fourth Amended Plan.

### 3.  Treatment.

The Holders of these Claims will have their benefits reduced in accordance with the formula set forth under the Central Falls Pension Plan.  All reductions in this Class shall be less than a 55% reduction of the Holder's prior annual pension benefits.  See **Exhibit E** to the Fourth Amended Plan.

### Class 12 –

### 1.  Designation.

The Class 12 Claimants are specifically identified in **Exhibit J** to the Fourth Amended Plan.   These Claims will hereafter be referred to as the "Class 12 Retiree Accidental Disability Pension Claims."

### 2.  Impairment and Voting.

This Class is Impaired by the Fourth Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holder of these Claims.  Accordingly, the Holders of these Claims are entitled to vote to accept or reject the Fourth Amended Plan.

### 3.  Treatment.

The Holders of these Claims will have their accidental disability retirement benefits modified in accordance with the restructured benefits schedule set forth on **Exhibit E** to the

Fourth Amended Plan.  Specifically, these Claimants will not have their benefits reduced by an Early Retirement Factor.

**Class 13** –

1.    **Designation.**

The Class 13 Claimants are specifically identified in **Exhibit K** to the Fourth Amended Plan.  These Claims will hereafter be referred to as the "Class 13 Council 94 Claims."

2.    **Impairment and Voting.**

This Class is Impaired by the Fourth Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Fourth Amended Plan.

The Holders of these Claims had certain compensation and benefits reduced in accordance with the Pendency Plan instituted by the Receiver by Memorandum to "All Employees of the City of Central Falls" dated August 19, 2011, effective August 1, 2011.  These Claims were settled by Memorandum of Agreement entered into between the City and the Local dated November 23, 2011 and approved by Order of this Court entered January 9, 2012.  Pursuant to the Terms of the Memorandum of Understanding, these employees have agreed to vote to accept the Fourth Amended Plan, provided its terms comport with the terms of the Agreement between R.I. Council 94, AFSCME, AFL-CIO, Local 1627 and The City of Central Falls, November 23, 2011 to June 30, 2016, annexed to the Fourth Amended Plan as **Exhibit T**.

3.    **Treatment.**

The Holders of these Claims will have their compensation, health benefits and other benefits reduced under the Fourth Amended Plan in accordance with the Agreement between R.I.

Council 94, AFSCME, AFL-CIO, Local 1627 and The City of Central Falls, November 23, 2011

to June 30, 2016, annexed to the Fourth Amended Plan as **Exhibit T**.

**Class 14** –

1.      **Designation.**

The Class 14 Claimants are specifically identified in **Exhibit L** to the Fourth Amended

Plan.  These Claims will hereinafter be referred to as the "Class 14 FOP Claims."

2.      **Impairment and Voting.**

This Class is Impaired by the Fourth Amended Plan since the treatment of this Class will

affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly,

the Holders of these Claims are entitled to vote to accept or reject the Fourth Amended Plan.

The Holders of these Claims had certain compensation and benefits reduced in

accordance with the Pendency Plan instituted by the Receiver by Memorandum to "All

Employees of the City of Central Falls" dated August 19, 2011, effective August 1, 2011.  These

claims were settled by Memorandum of Agreement entered into between the City and FOP

Lodge 2 dated November 23, 2011 and approved by Order of this Court entered January 9, 2012.

Pursuant to the Terms of the Memorandum of Understanding, these employees have agreed to

vote to accept the Fourth Amended Plan, provided its terms comport with the terms of the City of

Central Falls Rhode Island and Fraternal Order of Police Lodge 2 Collective Bargaining

Agreement for November 23, 2011 to June 30, 2016, annexed to the Fourth Amended Plan as

**Exhibit U**.

3.      **Treatment.**

The Holders of these Claims will have their compensation, health benefits, retirement

benefits and other benefits reduced under the Fourth Amended Plan in accordance with the terms

of the City of Central Falls Rhode Island and Fraternal Order of Police Lodge 2 Collective

Bargaining Agreement for November 23, 2011 to June 30, 2016, annexed to the Fourth

Amended Plan as **Exhibit U**.

**Class 15** –

1. **Designation.**

The Class 15 Claimants are specifically identified in **Exhibit M** to the Fourth Amended

Plan.  These Claims will hereinafter be referred to as the "Class 15 Local 1485 Claims."

2. **Impairment and Voting.**

This Class is Impaired by the Fourth Amended Plan since the treatment of this Class will

affect the legal, equitable and/or contractual rights of the Holders of these Claims.  Accordingly,

the Holders of these Claims are entitled to vote to accept or reject the Fourth Amended Plan.

The Holders of these Claims had certain compensation and benefits reduced in

accordance with the Pendency Plan instituted by the Receiver by Memorandum to "All

Employees of the City of Central Falls" dated August 19, 2011, effective August 1, 2011.  These

Claims were settled by Memorandum of Agreement entered into between the City and Local

1485 dated December 8, 2011 and approved by Order of this Court entered January 9, 2012.

Pursuant to the Terms of the Memorandum of Understanding, these employees have agreed to

vote to accept the Fourth Amended Plan, provided its terms comport with the terms of the

Collective Bargaining Agreement between the City of Central Falls and Local 1485,

International Association of Fire Fighters, AFL-CIO, November 23, 2011 to June 30, 2016,

annexed to the Fourth Amended Plan as **Exhibit V**.

3. **Treatment.**

The Holders of these Claims will have their compensation, health benefits, retirement

benefits and other benefits reduced under the Fourth Amended Plan in accordance with the terms

of the Collective Bargaining Agreement between the City of Central Falls and Local 1485,

International Association of Fire Fighters, AFL-CIO, November 23, 2011 to June 30, 2016, annexed to the Fourth Amended Plan as **Exhibit V**.

**Class 16** –

1. **Designation.**

The Class 16 Claimants are specifically identified in **Exhibit N** to the Fourth Amended Plan. These Claims will hereinafter be referred to as the "Class 16 General Unsecured Claims."

It should be noted however, that any Holder of a Class 16 General Unsecured Claim may become a Holder of a Class 17 General Unsecured Convenience Claim, defined below, by agreeing to reduce the amount of his/her/its General Unsecured Claim to Five Thousand Dollars ($5,000) when said Holder submits his/her/its Ballot to the City. (Said Ballots shall have a section providing for such an election.)

2. **Impairment and Voting.**

This Class is Impaired by the Fourth Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holders of these Claims. Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Fourth Amended Plan.

3. **Treatment.**

The Holders of these Claims shall share *pro rata* in the balance of the $600,000 aggregate budget for Allowed General Unsecured Claims after full payment of the distribution to Class 17 General Unsecured Convenience Claims. The first distribution to the Holders of these Claims shall be made on or prior to June 30, 2013 from the balance of the General Unsecured Claims Pool after distributions are made to or reserves are created for the Holders of Allowed Class 17 General Unsecured Convenience Claims. The Holders of Allowed Class 16 General Unsecured Claims shall thereafter share *pro rata* on or prior to June 30, 2014, June 30, 2015, June 30, 2016

and June 30, 2017 from the General Unsecured Claims Pool.  Notwithstanding anything set forth herein to the contrary, the total distribution to the Holders of these Claims will not exceed forty-five percent (45%) of the amount of their Allowed Claim.  Any monies remaining in the General Unsecured Claims Pool after all distributions have been made shall be deposited in the City's Capital Fund.

**Class 17** –

1.    **Designation.**

The Class 17 Claimants are specifically identified in **Exhibit O** to the Fourth Amended Plan; provided however, that any Holder of a Class 16 General Unsecured Claim may become a Holder of a Class 17 General Unsecured Convenience Claim, defined below, by agreeing to reduce the amount of his/her/its General Unsecured Claim to Five Thousand Dollars ($5,000) when said Holder submits his/her/its Ballot to the City.  (Said Ballots shall have a section providing for such an election.)  This class is being established for convenience purposes so that the City will not be required to pay these small claims in separate distributions over a period of years.   These Claims will hereinafter be referred to as the "Class 17 General Unsecured Convenience Claims."

2.    **Impairment and Voting.**

This Class is impaired by the Fourth Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holder of the Claim.  Accordingly, the Holders of these Claims in this Class are entitled to vote to accept or reject the Fourth Amended Plan.

### 3.    Treatment.

The Holders of these Allowed Claims shall receive a one-time single lump sum distribution of thirty-five percent (35%) of the amount of their Allowed Claim from the General Unsecured Claims Pool on or prior to June 30, 2013.

**Class 18** –

### 1.    Designation.

The Class 18 Claimants are specifically identified in **Exhibit P** to the Fourth Amended Plan.  These Claims will hereinafter be referred to as the "Class 18 Property Tax Overpayment Claims."

### 2.    Impairment and Voting.

This Class is Unimpaired by the Fourth Amended Plan.  The legal, equitable and/or contractual rights of the Holder of Claims in this Class shall remain unaltered.  Holders of Claims in this Class are not entitled to vote to accept or reject the Fourth Amended Plan.  Under Bankruptcy Code §1126(f), this Class is conclusively presumed to have accepted the Fourth Amended Plan.

### 3.    Treatment.

The City shall honor its legal, equitable and/or contractual obligations to Holders of Claims in this Class.  The City has determined, as a matter of governmental policy, that because these Claimants overpaid property taxes to the City in error, they are entitled to be fully refunded.  The City has determined that for administrative convenience, the overpayments will be credited to each Claimant's fiscal year 2013 property tax bill.  In the event that a Holder no longer owns property in the City, the Holder may notify the City in writing that (1) it is Holder of an Allowed Class 18 Property Tax Overpayment Claim, (2) the Holder no longer owns property

in the City, (3) the address where the Holder would like the City to send its distribution on account of its Allowed Class 18 Property Tax Overpayment Claim.

**Class 19** –

1.      **Designation.**

Claim of the State of Rhode Island for fees and costs incurred for the proper administration of the Receiver and his staff.  This Claim will hereinafter be referred to as the "Class 19 State of Rhode Island Claim."

2.      **Impairment and Voting.**

This Class is Impaired by the Fourth Amended Plan since the treatment of this Class will affect the legal, equitable and/or contractual rights of the Holder of the Claim.  Accordingly, the Holder of the Claim in this Class is entitled to vote to accept or reject the Fourth Amended Plan.

3.      **Treatment.**

Under Rhode Island Gen. Laws  § 45-9-3(f), the City is required to pay the amounts sufficient for the proper administration of the Receiver and his staff or the State may deduct those funds from the City's distribution of state aid.  Thus, the State could insist on full payment of the Class 19 State of Rhode Island Claim during the current fiscal year.  However, in order that the City be able to achieve balanced budgets during the term of the Fourth Amended Plan, the State has agreed to limit its distribution during the Fourth Amended Plan term to (i) the appropriations provided in the Six-Year Financial Projection in the aggregate amount of $600,000, plus (ii) all amounts recovered by the Claim Recovery Trustee pursuant to the terms set forth in the following paragraph, net of the Claim Recovery Trustee's fees and costs.  The balance of Class 19 State of Rhode Island Claim shall be paid after the Fourth Amended Plan term as set forth in the Six-Year Financial Projection.

*Flanders vs. Moreau, et al.* P.B. No. 10-5615 is a lawsuit pending before the Providence

County Business Calendar in the Rhode Island Superior Court.  That suit involved, among other things, determination of the issue of whether <u>Act Relating to Cities and Towns – Providing Financial Stability</u>, Rhode Island General Laws § 45-9-1 *et seq.* (the "Fiscal Stability Act") is constitutional.  The Superior Court and the Rhode Island Supreme Court each determined that the Fiscal Stability Act is constitutional.  Subsequent to those rulings, the Superior Court ruled that the mayor of City and the members of the Central Falls City Council (with the exception of James Diossa) (the "Elected Officials") are liable for the reasonable attorney fees and costs incurred by the City in litigating the lawsuit.  Pursuant to a Superior Court order, the City has filed a Proof of Claim with the Superior Court seeking $238,455.34 in attorney fees incurred in connection with the lawsuit.  The Elected Officials have objected to the Proof of Claim.  The issue of whether the fees and costs requested by the City in the Receiver's Proof of Claim were reasonable is currently being litigated by the parties.

The Elected Officials would have a conflict of interest when they returned to full authority if they are required to litigate the claims against the Elected Officials on behalf of the City.  Accordingly, on the Effective Date, a trust (the "Trust") shall be deemed created for the benefit of the State, and all of the City's claims against Elected Officials shall be deemed transferred into the Trust including, without limitation, the City's claims against Elected Officials under any Final Order in *Flanders vs. Moreau* et al., P.B. No 10-5615 ("*Flanders vs. Moreau*").

Also, on the Effective Date, Allan M. Shine shall be deemed appointed as "Trustee" of the Trust.  The Trustee (and successor Trustees, if any), shall be impressed with the duty to make a good faith effort to collect the maximum amount reasonably attainable from any Final Order against Elected Officials, including a Final Order in *Flanders vs. Moreau*.  Notwithstanding anything set forth below, the Trustee, not the City's or State's counsel, shall be responsible for

**collecting** any Final Order against any Elected Official.

The Trustee shall be compensated at the rate of twenty percent (20%) of any recovery by the Trust, plus reasonable out of pocket expenses, and the Trustee shall be authorized to immediately pay himself (or if a successor Trustee is a woman, herself) said amount from any recovery, subject to final review and approval by the Bankruptcy Court as part of the Trustee's Final Report.  The Trustee may seek instructions from the Bankruptcy Court regarding any issue relative to his trusteeship.  Within fourteen (14) days of any recovery obtained by the Trustee, the Trustee shall pay the balance of said recovery to the State, and said payment shall be treated as a credit against the balance owing to the State on account of the State's Allowed Class 19 State of Rhode Island Claim.

In the event that the Trustee resigns or is no longer able to serve, the United States Bankruptcy Court may appoint a successor Trustee.

In that event that there has not been a Final Order in *Flanders vs. Moreau* on the Effective Date, the City's attorney shall act as counsel to the Trust until a Final Order is obtained in *Flanders vs. Moreau*.  The State shall advance the costs of City's counsel for such services subject to reimbursement of those costs pursuant to the treatment of the Class 19 State of Rhode Island Claim, as described aforesaid.

If the State believes that the City has additional claims against Elected Officials, it may send a letter to the Trustee requesting that the Trust pursue those claims.  Depending upon the Trustee's evaluation of any such claims, the Trustee may cause the Trust to pursue those claims, to decline to pursue those claims, and/or seek instructions from the Bankruptcy Court as to whether the Trust should or should not pursue those claims.

If the Trust pursues claims pursuant to the terms of the preceding paragraph, the State may offer the use if its counsel to litigate those claims.  If the Trust elects to use the State's

counsel to litigate those claims, the State shall advance the costs of its counsel for such services subject to reimbursement by the City pursuant to the treatment of the Class 19 State of Rhode Island as described aforesaid.

When the Trustee determines that no further amounts can be reasonably attained from Elected Officials, the Trustee shall file a Final Report with the Bankruptcy Court.  At such time as the Final Report is approved by the Bankruptcy Court, the Trustee shall be discharged and the Trust shall be deemed dissolved

In the event that after dissolution of the Trust, the Trustee discovers that there may be additional funds to be recovered for the benefit of the State, or there are additional claims that may be pursued against Elected Officials, the Trustee may file a motion with the Bankruptcy Court seeking to revive the Trust for that purpose, subject to all of the same terms and conditions set forth above.

A copy of the engagement agreement between the City, the Director of Revenue, State of Rhode Island and Mr. Shine is filed herewith as **Exhibit 14**.

### B.   Treatment of Executory Contracts and Unexpired Leases.

#### 1.      Generally.

The Bankruptcy Code empowers debtors, subject to the terms of the Bankruptcy Code and the approval of the Bankruptcy Court, to assume or reject their executory contracts and unexpired leases.  An "executory contract" generally means a contract under which material performance remains due by both parties.

A debtor's assumption of an executory contract or unexpired lease means that it will and must continue to honor its obligations under such agreement.  In other words, as to such agreement, it is business as usual.  Rejection of an executory contract or unexpired lease

constitutes a prepetition breach of such agreement, excusing the debtor's future performance, but creating a Claim for the breach.

### 2. Rejection.

Prior to the hearing on confirmation, the City shall file a "Rejection Motion" if there are any additional executory contracts and unexpired leases that the City seeks to reject any party whose executory contract or unexpired lease is rejected as the result of a Rejection Motion may have a General Unsecured Claim under Class 16 or Class 17, as the case may be. The Rejection Motion shall include the City's recommendation as to the amount of allowance of said General Unsecured Claim, if any. The party to an executory contract or an unexpired lease that is the subject of a Rejection Motion shall have two (2) weeks to file an objection with the Court to said Rejection Motion on any legitimate basis including, without limitation, that the party believes that the executory contract or unexpired should not be rejected or that the party disagrees with the City's recommendation as to the amount of allowance of its General Unsecured Claim. The Court shall then schedule a hearing on each Rejection Motion to the extent that the Court determines a hearing is necessary.

At the current time, there is only a single additional executory contract which the City intends to reject: a "Red Light Camera and Service Agreement between ACS Local Solutions, Inc. and the City of Central Falls, Rhode Island." However, the City expects to shortly receive written confirmation from the party to that contract that it acknowledges that the contract is not in effect. If this occurs the City shall not seek to reject the contract.

Parties whose executory contract or unexpired lease have already been rejected pursuant to a court order shall file a proof of claim with the Court as to the amount of their General Unsecured Claim related to their rejected executory contract or unexpired lease prior to the

hearing on confirmation.  The City shall then have two (2) weeks to file an objection with the Court to said proof of claim.  The Court shall then schedule a hearing on each such objection to the extent the Court determines a hearing is necessary.  If the City does not file an objection to a proof of claim related to a rejected executory contract or unexpired lease, the proof of claim shall be deemed allowed.

During the pendency of Chapter 9 case, the City filed Rejection Motions, pursuant to section 365(a) of the Bankruptcy Code, to seek approval and authorization for the rejection of the collective bargaining agreements with (i) Central Falls Police Department Fraternal Order of Police, Central Falls Lodge No. 2; (ii) International Association of Fire Fighters, Local 1485, AFL-CIO; (iii) Rhode Island Council 94, American Federation of State, County and Municipal Employees, AFL-CIO, Local 1627; (iv) Employment Contract between the City and Joseph P. Moran, III, executed March 24, 2010 (the "Employment Contract"); and (v) the Agreement pertaining to retirement of Rudolph Lezenga dated April 16, 1998.  Such agreements are those that the City, in the exercise of its business judgment, deemed burdensome.

The Court entered an Order approving the rejection of the Employment Contract between the City and Joseph Moran on October 20, 2011.  Mr. Moran appealed the Bankruptcy Court Order rejecting the Employment Contract to the United States District Court for the District of Rhode Island and on May 4, 2012, the District Court affirmed the Bankruptcy Court's decision. Mr. Moran has appealed District Court's decision to the United States Court of Appeal for the First Circuit.  The City believes it likely that United States Court of Appeal for the First Circuit will affirm the District Court decision.

Mr. Moran recently filed a motion with the Bankruptcy Court under Rule 12.1 of the Federal Rules of Appellate Procedure, pursuant to which he requested that the Bankruptcy Court make an indicative ruling whether or not it would grant the motion for reconsideration or

determine that the motion raises a substantial issue, so that a request could be made by Mr. Moran to the First Circuit to remand the case to the Bankruptcy Court.  That request for indicative ruling was denied by a Bankruptcy Court order entered on July 20, 2012 although the Bankruptcy Court indicated that after the appeal was decided, Mr. Moran would not be prohibited from reviving his motion to reconsider before the Bankruptcy Court.

The City has also disputed Mr. Moran's proof of claim.  The City has represented to the Court that it will file a written objection to Mr. Moran's claim on or before August 2, 2012.
The Court entered an Order approving rejection of the Agreement between the City and Rudolph Lezenga on October 28, 2011.

The Court entered an Order granting the rejection of the collective bargaining agreements with Fraternal Order of Police, Central Falls Lodge 2, and the Rhode Island Council 94, AFSCME.  The motion to reject the collective bargaining agreement with International Association of Fire Fighters, Local 1485, AFL-CIO, was withdrawn by the City.

### 3.   <u>Assumed Executory Contracts and Unexpired Leases.</u>

Prior to the hearing on confirmation, the City shall file a schedule of all assumed executory contracts and unexpired lease with the amounts, if any, that the City intends to pay the parties to the assumed contracts or leases as a cure payment.  Simultaneous to filing said schedule, the City shall file motions to approve the amounts of each such cure payment ("Cure Payment Motion").  Any party whose executory contract or unexpired lease is the subject of a Cure Payment Motion, may shall have two (2) weeks to file an objection with the Court to said Cure Payment Motion on any legitimate basis including, without limitation, that the party believes that the executory contract or unexpired should not be assumed or that the party disagrees with the amount that the City intends to pay as a cure payment.  The Court shall then

schedule a hearing on each such Cure Payment Motion to the extent that the Court determines a hearing is necessary.

Any party that believes that it has an executory contract or unexpired lease that is not the subject of a Rejection Motion or a Cure Payment Motion shall file a motion with the Court to require the City to assume or reject its executory contract or unexpired lease prior to the hearing on confirmation ("Motion to Require Assumption or Rejection").  The City shall then have two (2) weeks to file an objection with the Court to each such Motion to Require Assumption or Rejection.  The Court shall then schedule a hearing on each such Motion to Require Assumption or Rejection to the extent the Court determines a hearing is necessary.

### C.   Means for Execution and Implementation of the Amended Plan.

The City will continue to operate under its Charter, governed by the City Council, following the Effective Date.  It will continue to collect real property tax revenues, sales tax revenues, the user utility tax and other taxes following the Effective Date, spending such revenues on municipal services such as providing fire and police protection, paving roads, and facilitating the provision of funding for transportation services.  The Six-Year Financial Plan provides the framework for sustainable operation of the City through June 30, 2017 by allocating available unrestricted revenues among the City's obligations.  The Six-Year Financial Plan balances the need to satisfy prebankruptcy debt with the City's obligation to provide services to its residents and businesses.  The Fourth Amended Plan implements the Six-Year Financial Plan by creating the General Unsecured Claims Pool, which will contain a total of $600,000 in fiscal years 2013-2017 to be paid to Holders of General Unsecured Claims pro rata after distributions are made or reserves are created on or prior to June 30, 2013 for the Holders of General Unsecured Convenience Claims in the amount of thirty-five percent (35%) according to the

amounts of the Claims of the Holders of General Unsecured Convenience Claims.  It is estimated that the Holder of Allowed Class 16 General Unsecured Claims shall receive a distribution in an amount between twenty five percent (25%) to forty five percent (45%) on account of their Allowed Claim, provided however the distribution to Allowed Claims in the General Unsecured Claims Pool shall not exceed forty-five percent (45%) of the amount of the Allowed Claim.  Any monies remaining in the General Unsecured Creditor's Claims Pool after all distributions have been made shall be deposited in the City's Capital Fund.

### 1.     Rights of Action.

The Fourth Amended Plan provides that the City retains all of its Claims, causes of action, rights of recovery, rights of offset, recoupment rights to refunds and similar rights after the Effective Date.  Unless a Right of Action is expressly waived, relinquished, released, compromised or settled in the Fourth Amended Plan, the City expressly reserves all Rights of Action for later adjudication and, as a result, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Rights of Action upon or after the confirmation or consummation of the Fourth Amended Plan or the Effective Date.  In addition, the City expressly reserves the right to pursue or adopt against any other entity any claims alleged in any lawsuit in which the City is a plaintiff, defendant or an interested party.  A Schedule of Pending Litigation against the City is annexed hereto as **Exhibit 8**.

### 2.     Compliance with Fourth Amended Plan Terms by Elected Officials or Fiduciary with the Power of Elected Officials.

#### a.     City's Budget Must Remain in Balance during the Plan Term.

The City believes that the Fourth Amended Plan is a contract between the City, on the one hand, and its creditors, including the State of Rhode Island, and its other major

stakeholders, including its labor unions and its retirees, on the other hand.  Although the City's

elected officials, or a fiduciary acting with the powers of elected officials under the Act Relating

to Cities and Towns – Providing Financial Stability, Rhode Island General Laws § 45-9-1 et seq.,

shall continue to make policy decisions during the Fourth Amended Plan term, the City believes

that they may only do so to the extent that such policy decisions do not make the City's fiscal

budgets unbalanced.  So, for example, if in a given year, the City is required to pay more than it

has been budgeted for snow removal, or if the City replaces an employee creating an obligation

to pay unemployment benefits, the City must find and demonstrate either additional revenues or

reductions in expenditures to keep the City's budget in balance.  It is the City's intention to

establish reporting requirements for the City so that during the Fourth Amended Plan term,

creditors, including the State of Rhode Island, and the City's other major stakeholders, including

its labor unions and its retirees, will have adequate and timely financial information necessary to

monitor whether the City remains in balance and whether the City is otherwise complying with

the Fourth Amended Plan terms.  It is also the City's intention to grant to creditors, including the

State of Rhode Island, and the City's other major stakeholders, including its labor unions and its

retirees, standing to seek specific enforcement from the Bankruptcy Court to comply with the

Fourth Amended Plan terms if the City takes any action(s) which makes the Fourth Amended

Plan not in Material Conformity with the Fourth Amended Plan terms.

### b.    Reporting Requirements.

Within thirty (30) days after the City enacts a budget or an amended budget, each person

acting with the powers of an elected official (i.e. the Mayor and each City Council member or a

state-appointed fiduciary, as the case may be) shall be required to sign an "Annual Attestation

Form," in the form set forth as **Exhibit S** annexed to the Fourth Amended Plan, attesting under

oath, that to the best of his or her knowledge and belief, the budget is in Material Conformity

with the terms of the Six-Year Financial Projection or to the extent that the budget is not Material Conformity with the Six-Year Financial Projection, to identify the specific line items in the budget that are not in Material Conformity with the Six-Year Financial Projection. "Material Conformity" shall mean that the budget is consistent with the Six-Year Financial Projection and/or that any increase in expenditures in any line item is offset by increases in revenues based upon additional revenues and/or decreases in expenditures. Any assumptions regarding any such additional revenues and/or decreases in expenditures must be reasonable. Each Annual Attestation Form shall be electronically filed with the Bankruptcy Court and a copy shall be sent by first class mail to the Rhode Island Director of Revenue at Rosemary Booth Gallogly, Director of Revenue, State of Rhode Island, Department of Revenue, One Capitol Hill, Providence, Rhode Island 02908.

Within fourteen (14) days after elected officials file Annual Attestation Forms, the Administrative and Finance Officer appointed under R.I. Gen. Laws § 45-9-10 shall file an "Annual Administrative and Finance Officer Statement" in the form set forth as **Exhibit S** annexed to the Fourth Amended Plan stating that he or she agrees or disagrees with the attestations of the elected officials. If the Administrative and Finance Officer disagrees with the attestations of an elected official, he or she shall explain why. Each Annual Administrative and Finance Officer Statement shall be filed with the Bankruptcy Court and a copy shall be sent by first class mail to the Rhode Island Director of Revenue at Rosemary Booth Gallogly, Director of Revenue, State of Rhode Island, Department of Revenue, One Capitol Hill, Providence, Rhode Island 02908.

Within thirty (30) days after the end of each fiscal quarter, the elected officials shall be required to sign a "Quarterly Attestation Form" in the form set forth as **Exhibit S** annexed to the Fourth Amended Plan, stating under oath whether or not actual performance by the City during

the prior quarter and year-to-date remains in Material Conformity with the terms of the Six-Year Financial Projection. To the extent that an elected official states that actual performance by the City during the prior quarter and year-to-date does not remain in Material Conformity with the terms of the Six-Year Financial Projection, the elected official shall identify the specific line items that do not remain in Material Conformity with the Six-Year Financial Projection. Each Quarterly Attestation Form shall be electronically filed with the Bankruptcy Court and a copy shall be sent by first class mail to the Rhode Island Director of Revenue at Rosemary Booth Gallogly, Director of Revenue, State of Rhode Island, Department of Revenue, One Capitol Hill, Providence, Rhode Island 02908.

Within fourteen (14) days after the elected officials file Quarterly Attestation Forms, the Administrative and Finance Officer shall file a "Quarterly Administrative and Finance Officer Statement" in the form set forth as **Exhibit S** annexed to the Fourth Amended Plan stating that he or she agrees or disagrees with the attestations of the elected officials. If the Administrative and Finance Officer disagrees with the attestations of the elected official, he or she shall explain why. Each Quarterly Administrative and Finance Officer Statement shall be filed with the Bankruptcy Court and a copy shall be sent by first class mail to the Rhode Island Director of Revenue at Rosemary Booth Gallogly, Director of Revenue, State of Rhode Island, Department of Revenue, One Capitol Hill, Providence, Rhode Island 02908.

c.     **Enforcement.**

Any creditor or stakeholder of the City under the Fourth Amended Plan, including the State of Rhode Island, the City's labor unions and the retirees, shall have power to seek specific enforcement from the Bankruptcy Court to require the City to comply with the Fourth Amended Plan terms and/or to require the City to make changes necessary for the City to be in Material Conformity with the Six-Year Financial Projection.

D.    **Distributions.**

All distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the books and records of the City or its agents, unless the City has been notified by such Holder in a writing that contains an address for such Holder different from the address reflected in its books and records.  All such notifications of address changes and all address continuations should be mailed to: City of Central Falls, Attn: City Clerk, 580 Broad Street, Central Falls, Rhode Island 02863.

1.    **Undeliverable Distributions.**

*Holding Of Undeliverable Distributions.*  If any distribution to any Holders is returned to the City or its agent as undeliverable, no further distributions shall be made to such Holder unless and until the City is notified in writing of such Holder's then-current address.  Unless and until the City is so notified, such distribution shall be deemed to be "Unclaimed Property."

*Unclaimed Property.*  If any entity entitled to receive distributions pursuant to the Fourth Amended Plan does not present itself on the Effective Date or on such other date on which such entity becomes eligible for distribution, such distributions shall be deemed to be "Unclaimed Property." Unclaimed Property shall be set aside and held in a segregated account to be maintained by the City pursuant to the terms of the Fourth Amended Plan.

No later than sixty (60) days after June 30, 2017 the City shall file with the Bankruptcy Court a list of Unclaimed Property, together with a schedule that identifies the name and last-known address of Holders of the Unclaimed Property; the City otherwise shall not be required to attempt to locate any such entity. On August 31, 2017, all remaining Unclaimed Property and accrued interest or dividends earned thereon shall be remitted to and vest in the City, except as may be provided under the laws of the State of Rhode Island.

2.    **Timeliness of Payments.**

Any payments or distributions to be made pursuant to the Fourth Amended Plan shall be deemed to be timely made if made within fourteen (14) days after the dates specified in

the Fourth Amended Plan.  Whenever any distribution to be made under the Fourth
Amended Plan shall be due on a day that is a Saturday, Sunday, or legal holiday, such
distribution instead shall be made, without interest, on the immediately succeeding day that
is not a Saturday, Sunday, or legal holiday, but shall be deemed to have been made on the
date due.

### 3.      Compliance With Tax Requirements.

The City will comply with all tax withholding and reporting requirements imposed on
it by any governmental unit, and all distributions pursuant to the Fourth Amended Plan will be
subject to such withholding and reporting requirements.  In connection with each distribution
with respect to which the filing of an information return (such as Internal Revenue Service
Forms W-2, 1099 or 1042) or withholding is required, the City will file such information
return with the Internal Revenue Service and provide any required statements in connection
therewith to the recipients of such distribution, or effect any such withholding and deposit all
monies so withheld to the extent required by law.  With respect to any entity from whom a tax
identification number, certified tax identification number, or other tax information required by
law to avoid withholding has not been received by the City, the City at its sole option, may
withhold the amount required and distribute the balance to such entity or decline to make such
distribution until the information is received.

### 4.      Time Bar to Cash Payments.

Checks issued by the City on account of Allowed Claims will be null and void if not
negotiated within ninety (90) days from and after the date of issuance thereof.  Requests for
reissuance of any check shall be made directly to the City by the Holder of the Allowed Claim
with respect to which such check originally was issued.  Any claim in respect of such a
voided check must be made on or before the second anniversary of the Effective Date.  After
such date, all claims in respect of voided checks will be discharged and forever barred and the
City will retain all monies related thereto.

### 5.      No Distributions on Account of Disputed Claims.

No distributions shall be made on account of any part of any Disputed Claim until
such Claim becomes Allowed (and then only to the extent so Allowed).  Distributions made

after the Effective Date in respect of Claims that were not Allowed as of the Effective Date
(but which later became Allowed) shall be deemed to have been made as of the Effective
Date.

**6.**     **No Postpetition Accrual.**

Unless otherwise specifically provided in the Fourth Amended Plan or Allowed by
order of the Bankruptcy Court, the City will not be required to pay to any Holder of a Claim
any interest, penalty or late charge accruing with respect to such Claim on or after the
Petition Date.

**E.**     **Bar Date for Attorney Fees.**

Any holder of Class 1 $12,000,000 General Obligation School Bonds Claims, Class
2 $8,700,000 General Obligation Municipal Facility Bonds Claims, Class 3 $1,300,000
General Obligation School Bonds Claims, Class 4 $750,000 General Obligation School
Bonds, of Class 5 $4,250,000 General Obligation School Bonds, that seeks allowance of a
Class 16 General Unsecured Claim or a Class 17 General Unsecured Convenience Claim for
attorney fees, shall file a Proof of Claim with the Court no later than 30 days after the Court
enters an Order confirming the Fourth Amended Plan or any such claim shall be deemed
forever barred.  The City reserves its right to object to the allowance of any such claims.

**F.**     **Incorporation of Agreements and Documents.**

The following agreements are attached and incorporated into the Fourth Amended
Plan by reference:

a.     City of Central Falls Rhode Island and Fraternal Order of Police Lodge
2 Collective Bargaining Agreement for November 23, 2011 to June 30, 2016.   The Court
will retain jurisdiction over this matter.  However, nothing in the Fourth Amended Plan shall
impair any rights that the parties may have under the collective bargaining agreement or
state law.  In the event of a conflict between the Fourth Amended Plan and the collective
bargaining agreement or state law, the collective bargaining agreement or state law shall
prevail.

b.     Collective Bargaining Agreement between the City of Central Falls and
Local 1485, International Association of Fire Fighters, AFL-CIO, November 23, 2011 to

June 30, 2016.  The Court will retain jurisdiction over this matter.  However, nothing in the Fourth Amended Plan shall impair any rights that the parties may have under the collective bargaining agreement or state law.  In the event of a conflict between the Fourth Amended Plan and the collective bargaining agreement or state law, the collective bargaining agreement or state law shall prevail.

        c.      Agreement between R.I. Council 94, AFSCME, AFL-CIO, Local 1627 and The City of Central Falls, November 23, 2011 to June 30, 2016.  The Court will retain jurisdiction over this matter.  However, nothing in the Fourth Amended Plan shall impair any rights that the parties may have under the collective bargaining agreement or state law. In the event of a conflict between the Fourth Amended Plan and the collective bargaining agreement or state law, the collective bargaining agreement or state law shall prevail.

        d.      Settlement and Release Agreement (with Central Falls retirees). Notwithstanding any set forth herein to the contrary, to the extent that the terms of Settlement and Release Agreement are inconsistent with the terms of the Fourth Amended Plan, the terms of the Settlement and Release Agreement shall govern.  If and when such an amendment is ratified and executed, the Fourth Amended Plan will be modified in order to incorporate the amendment by reference.

        e.      Six Year Financial Projection.

    **G.**    **Disputed Claims.**

        **1.**    **Claims Objection Deadline; Prosecution of Objections.**

The City shall have the right to object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability or allowance is disputed in whole or in part. Unless otherwise ordered by the Bankruptcy Court, the City shall file and serve any such objections to Claims by the earlier of (i) the date such distribution would otherwise be due or (ii) not later than one hundred and eighty (180) days after the Effective Date (or, in the case of Claims lawfully filed after the Effective Date, by not later than one hundred and eighty (180) days after the date of filing of such Claims).

**2.    Reserves, Payments, and Distributions With Respect to Disputed Claims.**

Prior to making a pro rata distribution to Holders of Class 16 General Unsecured Claims or Class 17 General Unsecured Convenience Claim, the City shall reserve from the amount of the distribution a reserve for such Class 16 General Unsecured Claims or Class 17 General Unsecured Convenience Claim to the extent that such Claims are Disputed Claims. The amount reserved for each such Claim shall be on the same pro rata basis as the distribution to Allowed Class 16 General Unsecured Claims and Allowed Class 17 General Unsecured Convenience Claims, as the case may be, based upon the lesser of (a) the amount asserted by the Holder of the Claim to be owing, and (b) such amount as the Bankruptcy Court may estimate for all distribution purposes upon motion of the City, which motion may be made initially or from time to time.

At such time as a Disputed Claim becomes an Allowed Claim, in whole or in part, the City or its agent shall distribute to the Holder thereof the distributions, if any, to which such Holder is then entitled under the Fourth Amended Plan. Such distributions, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order (or such other date as the Claim becomes an Allowed Claim), but in no event more than sixty (60) days thereafter. Unless otherwise specifically provided in the Fourth Amended Plan or Allowed by order of the Bankruptcy Court, no interest shall be paid on Disputed Claims that later become Allowed Claims.

To the extent a Disputed Claim is disallowed, the amounts held in escrow for that Disputed Claim shall be removed from escrow and re-allocated to the remaining Allowed Claims and Disputed Claims for pro rata distribution or escrow on the next scheduled payment date.

**H.     Continuing Jurisdiction of the Bankruptcy Court.**

The Fourth Amended Plan provides for the Bankruptcy Court to retain jurisdiction over a broad range of matters relating to the Chapter 9 Case, the Fourth Amended Plan, and other related items.  Readers are encouraged to review the Fourth Amended Plan carefully to ascertain the nature of the Bankruptcy Court's continuing post-Effective Date jurisdiction.

## V.   CONFIRMATION AND EFFECTIVENESS OF THE FOURTH AMENDED PLAN.

Because the law with respect to confirmation of a plan of adjustment is complex, creditors concerned with issues regarding confirmation of the Fourth Amended Plan should consult with their own attorneys and financial advisors.  The following discussion is intended solely for the purpose of providing basic information concerning certain confirmation issues. The City cannot and does not represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Bankruptcy Court may confirm the Fourth Amended Plan.  Some of the requirements discussed in this Fourth Amended Disclosure Statement include acceptance of the Fourth Amended Plan by the requisite number of creditors, and whether the Fourth Amended Plan is in the "best interests" of creditors.  These requirements, however, are not the only requirements for confirmation, and the Bankruptcy Court will not confirm the Fourth Amended Plan unless and until it determines that the Fourth Amended Plan satisfies all applicable requirements, including requirements not referenced in this Fourth Amended Disclosure Statement.

### A.   Voting and Right to Be Heard at Confirmation.

#### 1.   Who May Support or Object to Confirmation of the Fourth Amended Plan?

Any party in interest may support or object to the confirmation of the Fourth Amended

Plan.  Even entities who may not have a right to vote (e.g., entities whose Claims are classified into an unimpaired Class) may still have a right to support or object to confirmation of the Fourth Amended Plan.  (See Section I(C)(2) for information regarding the applicable deadlines for objecting to confirmation of the Fourth Amended Plan).

## 2.      Who May Vote to Accept or Reject the Fourth Amended Plan?

A creditor generally has a right to vote for or against the Fourth Amended Plan if its Claim is both Allowed for purposes of voting and is classified into an Impaired Class. Generally, a Claim is deemed Allowed if a proof of claim was timely filed, provided, however, that if an objection to a Claim has been filed, the claimant cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the Claim for voting purposes.  Thus, the definition of "Allowed Claim" used in the Fourth Amended Plan for purpose of determining whether creditors are entitled to receive distributions is different from that used by the Bankruptcy Court to determine whether a particular Claim is an "Allowed Claim" for purposes of voting.  Holders of Claims are advised to review the definitions of "Allowed Claim," "Claim," and "Disputed Claim" set forth in A of the Fourth Amended Plan to determine whether they may be entitled to vote on, and/or receive distributions under, the Fourth Amended Plan.

## 3.      Who Is Not Entitled to Vote?

The Holders of the following types of Claims are not entitled to vote on the Fourth Amended Plan:  (a) Claims that have been disallowed; (b) Claims that are subject to a pending objection and which have not been Allowed for voting purposes; (c) Claims that are not impaired; and (d) Administrative Expense Claims, since such Claims are not placed in Classes and are required to receive certain treatment specified by the Bankruptcy Code.

### 4.    Vote Necessary to Confirm the Fourth Amended Plan.

The Bankruptcy Court cannot confirm the Fourth Amended Plan unless, among other things, (a) at least one impaired Class has accepted the Fourth Amended Plan without counting the votes of any insiders within that Class; and (b) either all impaired Classes have voted to accept the Fourth Amended Plan, or the Fourth Amended Plan is eligible to be confirmed by "cram down" with respect to any dissenting impaired Class.

A Class of Claims is considered to have accepted the Fourth Amended Plan when more than one-half in number and at least two-thirds in dollar amount of the Claims that actually voted in that Class have voted in favor of the Fourth Amended Plan.

### B.    The "Best Interests" Test.

The Bankruptcy Court also must determine that the Fourth Amended Plan is in the "best interests of creditors" pursuant to section 943(b)(7) of the Bankruptcy Code, which in the Chapter 9 context means that treatment under the Fourth Amended Plan must be better than the only alternative available, which is dismissal of the case.  Dismissal permits every creditor to fend for itself in the race to the courthouse, since a municipality such as the City is not eligible under the Bankruptcy Code for a court-supervised liquidation under chapter 7.

The City submits that the Fourth Amended Plan is in the best interests of all creditors because significant payments will be made to all impaired Classes.  While the Fourth Amended Plan permits the City to continue to maintain minimally acceptable levels of vital municipal services for its residents and businesses, and while it devotes substantial resources to the repayment of the City's creditors, it nevertheless further defers infrastructure maintenance as well as the optimal staffing of City service units such as police and fire.

In contrast, in the absence of the financial adjustments made in Fourth Amended Plan, the

City's creditors would be left to "fend for themselves." Individual creditor collection actions likely would aggregate, through lawsuits, attempts at attachments and writs of mandamus, to make continued operation of the City untenable.  Massive litigation costs would burden the City, its creditors and all parties in interest, although creditors financially equipped to pursue litigation most quickly (and thus win "the race to the courthouse") would benefit disproportionately.  In short, the City cannot afford to pay its creditors absent the debt relief afforded by the Fourth Amended Plan, and dismissal of the Chapter 9 Case could well result in chaos, with few if any creditors emerging safely from the blizzard of inevitable litigation.

### C.    <u>Feasibility.</u>

To satisfy the requirement set forth in Bankruptcy Code section 943(b)(7) that the Fourth Amended Plan be feasible, the City must demonstrate the ability to make the payments required under the Fourth Amended Plan and still maintain its operations at the level that it deems necessary to the continued viability of the City.  The City submits that the Fourth Amended Plan is feasible.  The financial underpinning of the Fourth Amended Plan, the Six-Year Financial Plan, filed herewith as Exhibit 3, constitutes a sustainable matching of revenues and expenses, including the expenses created by or modified in the Fourth Amended Plan.  The Executive Summary of the Six Year Financial Projection, filed herewith as **Exhibit 2**, further supports the feasibility of the Fourth Amended Plan in terms of revenue projection, necessary expenditures, and the continuation of municipal services to the residents of the City.

### D.    <u>Cram Down.</u>

The Bankruptcy Code provides that the Bankruptcy Court may confirm a plan of adjustment that is not accepted by all impaired classes if at least one impaired Class of Claims accepts the Fourth Amended Plan and the so-called "cram down" provisions set forth in sections

1129(b)(1), (b)(2)(A) and (b)(2)(B) of the Bankruptcy Code are satisfied.  The Fourth Amended

Plan may be confirmed under the cram down provisions if, in addition to satisfying the other

requirements of section 943(b) of the Bankruptcy Code, it (a) is "fair and equitable", and (b)

does not discriminate unfairly with respect to each Class of Claims that is impaired under and

has not accepted the Fourth Amended Plan.

The "fair and equitable" standard, also known as the "absolute priority rule," requires,

among other things, that unless a dissenting unsecured Class of Claims receives payment in full

for its Allowed Claims, no Holder of Allowed Claims in any Class junior to that Class may

receive or retain any property on account of such Claims.  The "fair and equitable" standard also

has been interpreted to prohibit any class senior to a dissenting Class from receiving more than

one hundred percent (100%) of its Allowed Claims under a plan.  The City believes that the

Fourth Amended Plan satisfies the "fair and equitable" standard because, among other things, no

classes junior to the classes of unsecured Claims are receiving or retaining any property under

the Fourth Amended Plan.

The requirement that the Fourth Amended Plan not "discriminate unfairly" means, among

other things, that a dissenting Class must be treated substantially equally with respect to other

Classes of equal rank.  The City does not believe that the Fourth Amended Plan unfairly

discriminates against any Class that may not accept or otherwise consent to the Fourth Amended

Plan.

As noted above, the City has reserved the right to request the Bankruptcy Court to

confirm the Fourth Amended Plan by "cram down" in accordance with sections 1129(b)(1),

(b)(2)(a) and (b)(2)(b).  The City also has reserved the right to modify the Fourth Amended Plan

to the extent, if any, that confirmation of the Fourth Amended Plan under sections 943 and

1129(b) of the Bankruptcy Code requires such modifications.

### E.   <u>Disclosure of City's Professional Fees.</u>

Bankruptcy Code section 943 requires disclosure of professional fees to be paid by the City or by any person for services or expenses in the case or incident to the plan.  Annexed as **Exhibit 15** is a schedule demonstrating the professional fees through June 2, 2012, incurred by the City and either advanced by the State or paid by the City since the appointment of the Receiver on July 16, 2010, and an estimation of future expenses.  All amounts advanced by the State will be reimbursed by the City under the plan's treatment of the Class 19 State of Rhode Island Claim.  The remainder of the State's claims will be paid outside of the terms of the City's Fourth Amended Plan in accordance with 2012 R.I. Pub. Laws No. 12-241 § 6 which recognizes "that the City of Central Falls does not currently have the financial ability to reimburse the State in full for said expenses and may need additional time to reimburse the State for expenses reflected in future bills submitted by the State for such expenses, the City of Central Falls shall have up to June 30, 2021 to reimburse the State for all such expenses paid by the State and billed to the city."

At the hearing on confirmation, the City shall offer expert evidence on the reasonableness of the fees.

### F.   <u>Conditions to the Occurrence of the Effective Date.</u>

The entry of the Confirmation Order in form and substance satisfactory to the City is a condition precedent to confirmation of the Fourth Amended Plan and the establishment of an Effective Date.  The "effective date of the Fourth Amended Plan," as used in § 1129 of the Bankruptcy Code, shall not occur, and the Fourth Amended Plan shall be of no force and effect, until the said condition precedent is satisfied.

The Effective Date will occur on the thirtieth (30th) day after the Court enters a Final

Order confirming the Amended Plan.

### G.   Effect of Confirmation.

Article X of the Fourth Amended Plan provides that confirmation of the Fourth Amended Plan and the occurrence of the Effective Date will have a number of important and binding effects, some of which are summarized below.  Readers are encouraged to review Article X of the Fourth Amended Plan carefully and in its entirety to assess the various consequences of confirmation of the Fourth Amended Plan.

### 1.   Discharge of the City.

Pursuant to § 944 of the Bankruptcy Code, on the Effective Date, the City will be discharged from all debts (as defined in the Bankruptcy Code) of the City and Claims against the City other than (a) any debt specifically and expressly excepted from discharge by the Fourth Amended Plan or the Confirmation Order, or (b) any debt owed to an entity that, before the confirmation of the Fourth Amended Plan, had neither notice nor actual knowledge of the Chapter 9 Case.

The rights afforded in the Fourth Amended Plan and the treatment of Claims will be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever arising on or before the Effective Date, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, whether against the City or any of its properties, assets, or interests in property.  Except as otherwise provided in the Fourth Amended Plan, on the Effective Date, all Claims against the City will be deemed to be satisfied, discharged and released in full.

### 2.   Injunction.

The Fourth Amended Plan provides that all entities who have held, hold or may hold pre-

Effective Date Claims will be permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such pre-Effective Date Claim against the City; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the City with respect to such pre-Effective Date Claims; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against the City or its property or interests in property; and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the City with respect to any such pre-Effective Date Claim, except as otherwise permitted by § 553 of the Bankruptcy Code.

### 3.    Term of Existing Injunctions and Stays.

The Fourth Amended Plan provides that all injunctions or stays provided for in the Chapter 9 Case pursuant to §§ 105, 362, or 922 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.

## VI.    CERTAIN RISK FACTORS TO BE CONSIDERED

Confirmation of the Fourth Amended Plan and the occurrence of the Effective Date are not without risk to the City and its creditors in that the sources of revenue projected in the Six Year Financial Plan could contract.  Thus, while the City devoted considerable time and effort in formulating the Six Year Financial Plan, there can be no guaranty that it will be 100% accurate. For example, few Rhode Island cities, if any, predicted the length and depth of the economic downturn that saw real property values (and thus real property tax revenues) plummet.  Nor did city financial planners predict the high unemployment and underemployment that accompanied the burst of the housing bubble and reduced the amount of sales tax revenues to state and local governments.  Conversely, while the General Fund expenditures projected in the Six Year

Financial Plan are the City's best and most reasoned estimate of costs, the occurrence of a natural or human-caused disaster could and likely would cause costs to rise, if not to spike.  These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Fourth Amended Plan and its implementation.

The City submits, though, that the risk to creditors and parties in interest is greater if the Fourth Amended Plan is not confirmed and consummated than if it is.

### VII.     CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The implementation of the Fourth Amended Plan may have federal, state, local and foreign tax consequences to the City and its creditors.  No tax opinion has been sought or will be obtained with respect to any tax consequences of the Fourth Amended Plan.  However, because the City is a municipal corporation duly organized and existing under its Charter and the Constitution of the State of Rhode Island, and is treated as a political subdivision of the State of Rhode Island for federal income tax purposes, the City believes that it will not be subject to any federal income tax liability from implementation of the Fourth Amended Plan.  The City anticipates that, in conformity with past practice, it will not file any federal corporate income tax returns with respect to the periods in which the Fourth Amended Plan is implemented nor report any income for federal income tax purposes as a result of implementing the Fourth Amended Plan.

Because individual circumstances may differ, and the income tax consequences of a Chapter 9 case are complex and uncertain, this summary does not address the federal income tax consequences that may be relevant to the creditors of the City as a result of the Fourth Amended Plan.  Accordingly, the creditors should consult with their own tax advisors regarding the income tax consequences of the Fourth Amended Plan to them, including the effect, if any, the Fourth

Amended Plan may have on prior outstanding obligations the interest components of which the creditors were treating as excludable from gross income for federal income tax purposes.

To ensure compliance with requirements imposed by the Internal Revenue Service, you are hereby notified that any tax advice contained in this summary is not intended or written to be used by any taxpayer, and cannot be used by any taxpayer, for the purpose of avoiding tax-related penalties that otherwise may be imposed under the Internal Revenue Code on the taxpayer.  Such advice was written in connection with the solicitation of votes in favor of the Fourth Amended Plan.  The City and its creditors should seek tax advice regarding the tax consequences to them of the Fourth Amended Plan based on their particular circumstances from an independent tax advisor.

## VIII.        <u>RECOMMENDATION AND CONCLUSION</u>

The City believes that confirmation and implementation of the Fourth Amended Plan is preferable to all other available and feasible alternatives.  Accordingly, **<u>the City urges Holders of Impaired Claims to vote to accept the Fourth Amended Plan by so indicating on their ballots and returning them as specified in this Fourth Amended Disclosure Statement and on their ballots.</u>**

DATED: July 27, 2012

                                          CITY OF CENTRAL FALLS


                                          By: /s/ John F. McJennett III as and only as
                                          Receiver of the City of Central Falls, and
                                          not individually


Submitted by:

CITY OF CENTRAL FALLS


/s/ Theodore Orson
Theodore Orson, Esq. (No. 3871)
Christine Curley, Esq. (No. 4529)
Orson and Brusini Ltd.
144 Wayland Avenue
Providence, RI 02906
(401) 861-0344
torson@orsonandbrusini.com

**EXHIBITS TO FOURTH AMENDED DISCLOSURE STATEMENT WITH RESPECT TO THE THIRD AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF CITY OF CENTRAL FALLS, RHODE ISLAND, DATED JULY 27, 2012 (AMENDING PLAN FILED ON JUNE 15, 2012, JULY 10, 2012 and July 23, 2012)**

| | |
|---|---|
| Exhibit 1 | Fourth Amended Plan of Debt Adjustment with Exhibits |
| Exhibit 2 | Executive Summary of Six Year Financial Projection with Appendices |
| Exhibit 3 | Six Year Financial Projection |
| Exhibit 4 | Actuarial Analysis and Viability Analysis for Restructured Central Falls Pension Plan |
| Exhibit 5 | Explanation of Active Health Care Changes |
| Exhibit 6 | Explanation of Retiree Health Care Changes |
| Exhibit 7 | Outstanding Debt Service Schedules |
| Exhibit 8 | Schedule of Pending Litigation |
| Exhibit 9 | Amended Creditors List |
| Exhibit 10 | Memorandum of Agreement between the City and R.I. Council 94, AFSCME, AFL-CIO, Local 1627 dated November 23, 2011 |
| Exhibit 11 | Memorandum of Agreement between the City and Fraternal Order of Police, Lodge 2 dated November 23, 2011 |
| Exhibit 12 | Memorandum of Agreement between the City and Local 1485, International Association of Fire Fighters, AFL-CIO dated December 8, 2011 |
| Exhibit 13 | Moody's Investors Service Report regarding City's Bond Status Review |
| Exhibit 14 | Engagement Agreement between the City, the Director of Revenue, State of Rhode Island, and Allan M. Shine |
| Exhibit 15 | Schedule of Professional Fees |

**NOTE THAT THE EXHIBITS TO THE FOURTH AMENDED DISCLOSURE STATEMENT ARE NOT ANNEXED HERETO BUT ARE POSTED ON THE CITY'S WEBSITE AT: www.centralfallsri.us**

DISCLOSURE STATEMENT FOR CITY OF CENTRAL FALLS'S PLAN OF ADJUSTMENT