# CITY OF CENTRAL FALLS RHODE ISLAND
# AND
# FRATERNAL ORDER OF
# POLICE LODGE 2
# COLLECTIVE BARGAINING AGREEMENT
# FOR
# NOVEMBER 23, 2011 TO JUNE 30, 2016

W2157

## TABLE OF CONTENTS

Table of Contents .............................. .............................................................................. i

PREAMBLE ............................................................................................................... 1

ARTICLE I: RECOGNITION.......................................................................................... 1

ARTICLE II: EMPLOYMENT SECURITY......................................................................... 2

ARTICLE III: RELEASE FOR BARGAINING .................................................................... 2

ARTICLE IV:  MANAGEMENT RIGHTS  ........................................................................ 3

ARTICLE V: SENIORITY & LAYOFFS  .......................................................................... 4

ARTICLE VI:  APPOINTMENTS TO DEPARTMENT-PROMOTIONS .............................. 6

ARTICLE VII:  DUTIES & STAFFING ............................................................................. 7

ARTICLE VIII: HOURS, COMPENSATION & WAGES ..................................................... 9

ARTICLE IX:  SPECIAL DETAILS  ................................................................................. 11

ARTICLB X:  PAID HOLIDAYS.................................................................................... 11

ARTICLE XI:  VACATIONS........................................................................................... 12

ARTICLE XII:  SICK LEAVE ......................................................................................... 14

ARTICLE XIII: INSURANCE.......................................................................................... 18

ARTICLE XIV: INJURED ON DUTY .............................................................................. 19

ARTICLE XV:  HEALTH & DENTAL ............................................................................. 21

ARTICLE XVI:  CLOTHING & EQUIPMENT ................................................................. 21

ARTICLE XVII:  EDUCATIONAL BENEFITS.................................................................. 22

ARTICLE XVIII:  RETENTION OF PRE-EXISTING RIGHTS  ............................................ 22

ARTICLE XIX:  GRIEVANCES...................................................................................... 23

ARTICLE XX: PENSION PLAN COVERAGE FOR MEMBERS.......................................... 25

ARTICLE XXI:  DURATION OF AGREEMENT .............................................................. 32

W2157

## PREAMBLE

This Collective Bargaining Agreement (herein "CBA" or "Agreement") is entered into as of the

23rd day of November, 2011, by and between the City of Central Falls, a municipality within the State of

Rhode Island (hereinafter the "City"), and the Central Falls Police Department, Fraternal Order of

Police, Lodge No. 2 (hereinafter the "FOP Lodge 2").

This Agreement is entered pursuant to the authority granted by the provisions of Chapter 54 of

the Public Laws of 1963, as amended, and also referred to as R.I.G.L, §28-9.2 of the Rhode Island

General Laws, known as the "Policemen's Arbitration Act," including all amendments thereto.

## ARTICLE I:  RECOGNITION

The City recognizes the FOP Lodge 2 and/or its representative(s) as the sole and exclusive

bargaining agent for all full-time officers excluding the Chief of Police (except the Chief – provided

he/she is promoted from within the ranks of the Police Department – shall be allowed to continue to

participate in the City's Pension Plan as referenced in Article XX) for the purpose of collective

bargaining and entering into agreements relative to wages, rates of pay, salaries, hours, working

conditions, and other terms and conditions of employment.

The words, "member," "member of the bargaining unit," "employee," "officer" and/or

"police officers" (or the plurals thereof) when used in this Agreement shall mean all full-time officers

of the Police Department, from the rank of Patrolman Grade II up to and including the rank of Major,

but specifically excluding the Chief (except that the Chief – provided he/she is promoted from within

the ranks of the Police Department – shall be allowed to continue to participate in the City's Pension

Plan as referenced in Article XX).

The respective rights of the City and the members of the bargaining unit, as represented by

FOP Lodge 2, shall be governed and regulated by the terms and provisions of this Agreement and by

the terms of the so-called "Policeman's Arbitration Act", so as to provide for the prompt and orderly

1

W2157

resolution of all questions of wages, rates of pay, salaries, hours, working conditions, and other terms and conditions of employment arising between the parties during the term thereof.

The City shall deduct dues, fines, and/or assessments as established by FOP Lodge 2 from the members of the bargaining unit and shall forward such deductions to FOP Lodge 2.

## ARTICLE II:  EMPLOYMENT SECURITY

### Section 1.  FOP Lodge 2 Activities

The City agrees that it will not discharge, or cause to be discharged, or discriminate, or cause to be discriminated, in any way, against any member of the bargaining unit, as a result of membership, or lawful activity by such member, in, or on behalf of the FOP Lodge 2.

### Section 2.  No Concerted Activity

(a)      Cognizant of the statutory prohibition against strikes, R.I.G.L. §28-9.2-2 and §28-9.2-12, no employee covered by this Agreement shall engage in, induce, cause or encourage, directly or indirectly, any strike, sit-down, sit-in, work slowdown, work cessation, work stoppage, work interruption, boycott, refusal to perform duties (including collective absenteeism for alleged illness) or withholding of services of any kind for any reason during the life of this Agreement.

(b)      The City shall have the right to discharge or otherwise discipline any employee who violates this Article.

## ARTICLE III:  RELEASE FOR BARGAINING

### Section 1.  Time Off for Bargaining Purposes

Members of the bargaining unit, up to a maximum of three (3), who are appointed by the President of the FOP Lodge 2 for the purpose of negotiating or bargaining on its behalf with the City, shall be allowed reasonable time off from their tour of duty, with pay, while attending to official FOP Lodge 2 business during negotiations and/or conferences on matters arising out of this Agreement with the City.  Such designated members shall not be required to make up any such time used or taken

2

W2157

by them.

### Section 2.  Time Off for Fraternal Order of Police Business

The F.O.P.'s State Trustee will be allowed time off, with pay, for the purpose of attending the monthly meeting of the State I.B.P.O./F.O.P. Trustees, except that the time will not exceed five (5) hours per meeting.  This section applies to employees working the night shift (4:00 p.m.-12:00 a.m.).

### Section 3.  Time-Off for Attendance at Conventions/Conferences

Members who are duly elected as delegates and/or representatives of FOP Lodge 2, not to exceed three (3), shall be afforded time off with pay to attend the State Convention, provided this time off shall not exceed four (4) days per calendar year.  Also, time off, with pay, shall be granted to one (1) member to attend the National Convention (which is held every other year) up to a maximum of four (4) days.  There shall be no requirement on the part of any member to make up any time so granted above.

## ARTICLE IV:  MANAGEMENT RIGHTS

### Section 1.  Issuance of Rules and Regulations

The City shall retain the right to issue, through the Director of Public Safety, as provided by applicable City Charter or ordinance provisions, all rules and regulations governing the conduct of the Police Department provided, however, that no rule, regulation, order or ordinance shall be inconsistent with the terms of this Agreement.

### Section 2.  Control of Department

Except as there is contained in this Agreement a specific provision expressly abridging or restricting the City's ability to exercise any and all rights, power, and authority granted to it by law and/or in its capacity as an employer, the City shall have the ability to exercise said rights, power, and authority.  Such rights, power, and authority include, but are not limited to, the following:  to determine the standards and level of services to be offered by the Police Department; the standards

W2157

applicable to selection for employment; to direct employees; to issue rules and regulations applicable to employees; to maintain the efficiency of governmental operations; to determine methods, means and personnel by which the City's law enforcement operations are to be conducted; to determine the content of job classifications; to exercise complete control and discretion over its Police Department and the means of performing its services; to hire and assign and transfer employees within the Police Department; and to fulfill all of its legal responsibilities.

### Section 3. Furnishing and Amending Rules and Regulations

All members shall be furnished with a copy of the Rules and Regulations upon their appointment to the Police Department. It shall be the duty of the City to promulgate and maintain rules and regulations governing the Police Department. As to any amendment or the repeal of the Rules and Regulations, the City shall furnish all members with exact copies thereof within thirty (30) days after the approval of any amendment or the repeal of any rule or regulation. In the absence of notification as herein required, any amendment or repeal to the Rules and Regulations shall not be effective against any member.

## ARTICLE V: SENIORITY & LAYOFFS

### Section 1. Seniority in General

*Definitions:*

**Department Seniority**. Shall commence on the date of appointment, as a police officer, and seniority shall be computed according to continuous service from the date of original appointment by the City.

**Rank Seniority**. Shall commence on the date the police officer is sworn into a particular rank and seniority shall be computed according to continuous service within that rank.

If Department and/or Rank Seniority is interrupted for active service in the Armed Forces of the United States, such service shall be considered as part of said member's continuous service

4

W2157

consistent with applicable state and federal law.

In those cases where one or more members are appointed to duty on the same day or by the same general order, then seniority among said individual(s) shall be determined by the highest score using criteria of the training academy ranking.

Seniority lists of various positions of the Police Department shall be posted by the Police Department semi-annually in the Police Station.  A copy shall be supplied to the FOP Lodge 2.

## Section 2.  Accumulation of Seniority

Department and/or Rank Seniority shall accumulate during absence, because of illness, injury, vacation, or other authorized leave.

## Section 3.  Seniority for Shifts, Beats and Districts

Rank Seniority shall prevail with respect to transfers to shifts.  With respect to assignments to beats and/or districts, the following rules shall govern:

(a)     Rank Seniority shall prevail as far as practicable;

(b)     Whenever not practicable for rank seniority to prevail with respect to assignments to beats and/or districts, then in such event the more senior officer or officers shall in no case be assigned to a foot post for more than two (2) tours of duty in any one (1) cycle.  ("Cycle" for the purposes of this Section shall mean a six (6) day period consisting of four (4) work days followed by two (2) days off);

(c)     No member shall be entitled to the same beat and/or district for more than two (2) of his/her four (4) tours of duty in any one (1) cycle.

## Section 4.  Layoffs

In the event it becomes necessary for the City to lay off members of the bargaining unit, those members with the least amount of Departmental Seniority shall be laid off first.  For purposes of computing seniority for this section, it shall be based solely upon the length of employment as a police

5

officer without regard for the member's rank, position or the fact that the member has received a

salary, or any part thereof under any Federal or State program.  Prior service with the City in some

other department shall not be considered in determining the member's seniority within the Police

Department.  The last laid off member shall be the first to be re-hired.

## ARTICLE VI:  APPOINTMENTS TO
## DEPARTMENT-PROMOTIONS

**Section 1.  Original Appointment**

The City shall maintain, as far as practicable, a list of candidates who have graduated from the

R.I. Municipal Police Training Academy.  The candidates on said list shall be utilized to fill the vacancies

in the rank of Patrol Officer.  Said vacancies shall be filled within fourteen (14) days of the vacancy.  In

the event that two or more candidates have the same graduation date, then the candidate with the

highest score from the academy shall be appointed first.

In the event that there are more vacancies in the rank of Patrol Officer than candidates on the

list, and such situation has not been caused by the City's neglect in maintaining the list, then the City

shall arrange to have candidates attend the next scheduled Police Academy to fill such vacancies in

the rank of Patrol Officer.  If vacancies exist at the time candidate(s) graduate from the Academy, they

shall be filled within fourteen (14) days of the graduation date.

**Section 2.  Probation Period**

Each new employee shall serve one (1) year probationary period and shall be classified as

Patrolman Grade II during that probationary period.  Upon completion of the said one (1) year

probationary period, said employee shall be classified as Patrolman Grade I.

**Section3.  Promotions**

Promotions to the rank of Sergeant, Lieutenant, Captain, and Major, shall be from within the

ranks of the Police Department, and shall be on a competitive basis, as required by the City Charter

6

W2157

and ordinances.  Notice of all promotional examinations shall be posted at least twenty-one (21) days prior

to the date of said examination on the Police Department bulletin board.  Vacancies for said promotional

ranks shall be filled within ninety (90) days of the vacancy.

The City reserves the right to hire from outside the Police Department for the rank of Chief of

Police or Colonel.

## ARTICLE VII:  DUTIES & STAFFING

### Section 1.  Duties

The duties of the members of the bargaining unit shall consist of the repression and prevention

of crime; the enforcement of the laws and ordinances of the City and the Statutes of the State of Rhode

Island; such other necessary auxiliary administrative and service functions presently conducted by the

Police Department; and such other duties as are, or may be, prescribed by the Public Safety Director,

in accordance with the provisions of the Statutes of the State of Rhode Island, and City ordinances.

The City agrees that members of the bargaining unit shall not be detailed to any other police

department, except for the performance of police duties.

### Section 2.  Minimum Staffing

The total number of police officers employed by the Police Department will be at least thirty-

three (33), exclusive of the Chief/Colonel.  The parties agree to reach the number of thirty-three

(33) through attrition only, with no layoffs.

The parties agree that it is in their best interest to have a minimum number of uniformed

police officers on the street answering calls for each tour of duty.  The parties further agree that in

order to achieve that goal, it may be necessary to "call back" police officers in order to satisfy the

minimum staffing established herein.

In that context, the following is the number of police officers (including superior officers) who

are to be assigned to beats and/or districts and who are actually and physically on the streets

7

answering calls for each of the designated shifts.

| | |
|---|---|
| Day Shift (8:00 a.m.-4:00 p.m.) | Three (3) Officers |
| Night Shift (4:00 p.m.-12:00 a.m.) | Four (4) Officers |
| Morning Shift (12:00 a.m.-8:00 a.m.) | Three (3) Officers |
| Morning Shift on Friday (12:00 a.m.-8:00 a.m.) and Saturday (12:00 a.m.-8:00 a.m.) | Four (4) Officers |

Whenever there is an insufficient amount of officers to fill the minimum staffing requirements set forth herein, the City shall be required to call back a sufficient number of officers necessary to satisfy said minimum staffing requirements.

Call back under this provision shall be done on a rank for rank rotating basis, starting with the most senior member in each rank in the Police Department. If the offered call-back refuses the same, he/she shall be considered to have taken the call-back for purposes of the rotation, if all members of a required rank refuse the call-back, the most junior member of that respective rank shall be required to work. If, because of the circumstances, no member of the required rank is available, the member of the next higher rank and next in rotation shall be called back. Next lower ranks may be used when no member of the next higher rank is available.

Members called back to satisfy the minimum staffing requirements hereunder shall be paid at the rate of time and one-half (1 1/2) their normal rate of pay.

With respect to call-back, only those officers who are actively working for the City at the time of the call-back will receive a pass and be eligible for a call-back before other officers on the next rotation. An officer excused from duty for sick leave, I.O.D., light duty, vacation or for cause will not be entitled to a pass.

The provisions of this section (Minimum Staffing) shall become effective as of July 1, 1997.

8

### Section 3. Foot Posts

No member shall be required to walk a foot post for disciplinary reasons.

## ARTICLE VIII:  HOURS, COMPENSATIONS & WAGES

### Section 1.  Hours of Employment

The regular work week cycle for all members of the bargaining unit shall be an average of 37.2 hours (computed on an annual basis) consisting normally of four (4), eight (8) hour work days, followed by two (2) consecutive days off of duty.

### Section 2.  Overtime Pay

All members of the bargaining unit shall be paid at the rate of one and one-half (1 1/2) the member's hourly rate of pay for hours worked over forty (40) in a workweek.  Vacation and compensatory time is calculated toward hours worked during a work week.  The workweek shall be 12:00 a.m. Friday to 11:59 p.m. Thursday.

In lieu of overtime pay and at the member's request with approval from the Chief and/or his/her designee, compensatory time off may be taken.  The rate in such case shall be one and one-half (1 1/2) hours of compensatory time for each hour of overtime worked.  Members shall be permitted to accrue up to one hundred sixty (160) hours of compensatory time.  There is no payout for compensatory time upon retirement or termination.

### Section 3.  Call-Back Pay

Members who are called to return to duty shall be compensated for a minimum of three (3) hours at their overtime rate of pay, only to the extent they work the extra three (3) hours, or are directed by a superior to leave prior to the conclusion of the three (3) hours.  If a member elects to leave prior to the conclusion of three (3) hours being completed, he/she shall only be paid for the hours worked.  When an officer returns from court in less than three (3) hours, it shall be determined by the officer-in-charge if the officer shall stay for the remaining time or be relieved of duty.

9

**Section 4.  Schedule of Wages**

The following is the weekly salary schedule for all members of the bargaining unit.  The City may implement a bi-weekly pay period.

| RANK | | 1.04 Signing | | 1.025 7/1/2012 | | 1.029 7/1/2013 | | 1.024 7/1/2014 | | 1.023 7/1/2015 |
|------|---|---|---|---|---|---|---|---|---|---|
| Patrolman Grade II | $ | 658.70 | $ | 685.05 | $ | 702.17 | $ | 722.54 | $ | 739.88 | $ 756.90 |
| Patrolman Grade I | $ | 866.18 | $ | 900.83 | $ | 923.35 | $ | 950.12 | $ | 972.93 | $ 995.31 |
| Sergeant | $ | 926.82 | $ | 963.89 | $ | 987.99 | $ | 1,016.64 | $ | 1,041.04 | $ 1,064.99 |
| Lieutenant | $ | 991.67 | $ | 1,031.34 | $ | 1,057.12 | $ | 1,087.78 | $ | 1,113.88 | $ 1,139.50 |
| Captain | $ | 1,061.09 | $ | 1,103.53 | $ | 1,131.12 | $ | 1,163.92 | $ | 1,191.86 | $ 1,219.27 |
| Major | $ | 1,135.37 | $ | 1,180.78 | $ | 1,210.30 | $ | 1,245.40 | $ | 1,275.29 | $ 1,304.62 |

For all members assigned to the position of Detective, he or she shall receive a stipend in the amount of twenty-five dollars ($25.00) per week (fifty dollars ($50.00) per pay period) in addition to base wage.  Stipends paid to detectives will be considered part of base wage for purposes of pension calculation, but not for the purposes of overtime, vacation, holiday or sick time pay.

**Section 5.  Longevity**

In addition to the wages set forth in Section 4 of this Article, there shall be paid to each member of the bargaining unit a longevity payment in accordance with the schedule set forth below:

| YEARS OF SERVICE | AMOUNT |
|------------------|--------|
| Under Four (4) Years: | $0 |
| Four (4) to Eight (8) Years: | $1,500 |
| Nine (9) to Fourteen (14) Years: | $2,000 |
| Fifteen (15) to Nineteen (19) Years: | $2,500 |
| Twenty (20) Years and Longer: | $3,000 |

The longevity payment shall be payable on the member's anniversary date.  Longevity payments shall be considered and set forth in as part of base pay for the purposes of computing retirement benefits.

**Section 6.  Personal Days**

Each member shall be entitled to one (1) personal day which will be awarded annually in January.  Personal days shall not effect or be drawn from a member's sick leave.  Personal days must

W2157

be used within the year and cannot be carried over to the upcoming year.  Notwithstanding the foregoing, officers who have previously accrued and unused personal days as of the date this Agreement is signed will have until March 31, 2012 to use those existing personal days or they will be forfeited.

## ARTICLE IX:  SPECIAL DETAILS

**Section 1.  Injuries on Details**

Any member of the bargaining unit, who may be injured while engaged on a detail, shall be entitled to the same rights, privileges and benefits as a member, whom is injured while performing regular police duties.  When an injury on a detail was caused under circumstances creating a legal liability in some person to pay damages with respect thereto, the City shall be subrogated to the rights of the member to recover damages thereof and the member shall cooperate with the City in said subrogation action.

Members working a detail are subject to all Police Department Rules and Regulations.

## ARTICLE X:  PAID HOLIDAYS

**Section 1. Holidays**

The following twelve (12) holidays shall be paid holidays for all members of the bargaining unit:

| | |
|---|---|
| New Year's Day | Columbus Day |
| Easter Sunday | Veteran's Day |
| Police Memorial Day | Thanksgiving |
| Memorial Day | Day after Thanksgiving |
| Independence Day | Christmas Day |
| Victory Day (VJ Day) | |
| Labor Day | |

W2157

**Section 2.  Holiday Pay**

Holiday Pay shall be one-fourth (1/4) of the member's weekly salary and shall be paid to each member on the first pay period in December.

## ARTICLE XI:  VACATIONS

**Section 1.  Vacation Periods and Times**

All members of the bargaining unit who have continuously been in the employ of the City for at least one (1) year but not more than five (5) years shall be entitled to an annual vacation of twelve (12) working days, with pay.

All members of the bargaining unit who have been in the employ of the City for a period of five (5) years but not more than ten (10) years shall be entitled to an annual vacation of seventeen (17) days.

All members of the bargaining unit who have been in the employ of the city for a period of ten (10) years but not more than fifteen (15) years shall be entitled to an annual vacation of twenty-one (21) days.

All members of the bargaining unit who have been in the employ of the city for a period of fifteen (15) years or more shall be entitled to an annual vacation of twenty-four (24) days.

Commencing on January 1, 2012, vacation pay will accrue each year on January 1st.  Up to five (5) vacation days may be carried over from one year to the next.  Accrued vacation time will be paid out upon termination of employment.

Any member who selects a vacation during the period from the start of the last full calendar week in May through the end of the first full calendar week in October (said period of time is hereinafter referred to as the "summer vacation period"), may only select fourteen (14) consecutive working days during said period.  The intent of this section is to permit any member of the bargaining unit to have at least fourteen (14) working days' vacation during the summer.  However, it is not

12

W2157-8

necessary that the member select fourteen (14) consecutive working days during the summer vacation period.

## Section 1.1.  Cancellation of Vacations

In the event that the Chief determines that because of a severe shortage of manpower due to injuries or illnesses, or public safety emergencies, vacation furloughs have to be cancelled, then a member may be limited to only seven (7) working days' vacation during the summer vacation period. In such an event, however, any member whose summer vacation is to be affected shall receive at least fourteen (14) days written notice from the Chief.  Where a member is notified of the cancellation of vacation under this section, and has prior reservation, which may not be able to be cancelled without being monetarily penalized, the member shall then notify the Chief of that fact immediately.  The Chief may require evidence establishing that the cancellation of the member's vacation will result in a loss of money to the member.  In no event, however, shall a member lose any monies, because a vacation is cancelled.

## Section 2.  Procedure for Selecting Vacations

During the month of December of each year, members shall be allowed to select their vacations for the upcoming year.

Vacations shall be granted by shifts, according to rank, and then according to Rank Seniority on each respective shift.

The City shall permit two (2) members off for vacation from the same shift provided, however, that the members are in different day-off groups.  More than two (2) members may be permitted to take vacation time with the approval of the Chief or his designee, provided it does not cause overtime.

Vacations not selected in December, including but not limited to carry over vacation days, shall be selected during the course of the year using the following guidelines; the City shall permit a

13

W2157-8

minimum of two (2) members off for vacation from the same shift provided they are different day-off

groups.  In addition, in granting this vacation time off, the Chief may consider toward that two (2)

member total, that:  members who are being carried under I.O.D. and Light Duty status by the

Department; members who are attending seminars or schools in their official capacities as police

officers; members who have already selected vacations for the days in question; and any major

public safety emergencies.  These matters shall be taken into consideration by the Chief at the time

the member requests the vacation time off.  These are the only matters that the Chief can take into

consideration.  Members, who may be on sick leave, bereavement leave, etc., shall not be

considered by the Chief in determining whether the two (2) member minimum has been reached.

Members shall be permitted to carry over to the next calendar year up to five (5) days of unused

vacation.  In such event, however, the unused vacations days must be taken by the member on or

before December 31st of the following year.

**Section 3.  Vacation Allotment on Retirement, Resignation or Death**

A member who retires, resigns or dies during the calendar year, and who has not taken

his/her allotted vacation, shall be paid at the time of his/her retirement, resignation or death for all

of his/her unused vacation time on a prorated basis.

## ARTICLE XII:   SICK LEAVE

**Section 1.  Amount of Sick Leave**

Up to twelve (12) days of sick leave per year shall be granted to each member of the bargaining

unit beginning on January 1st.

**Section 1.1.  Unused Sick Leave**

Any sick days on the books as of August 1, 2011 will continue to be carried forward.

As of August 1, 2011, the maximum number of accrued sick days that may be carried

forward will be one hundred twenty (120).  Sick days will not be paid out upon termination of

14

W2157-8

employment or retirement.

**Section 2.  Sick Leave Defined**

Sick leave with pay is hereby defined to mean a necessary absence from duty due to the

member's illness, an illness in a member's immediate family, non-work related injury, or exposure to a

contagious disease that prevents the member from performing work duties and functions.

In the event that a member must take sick leave pursuant to this Article for a period in excess

of three (3) consecutive days, then said member may be required to submit a physician's certificate

to the highest ranking member of the Police Department.  Any member who has used sick leave on

three (3) separate occasions (regardless of time involved) in any given calendar year, may be required

to provide a physician's certificate to the highest ranking member of the Police Department, for each

and every additional request for sick leave.

In all cases of extended sick leave, the City may periodically require a physician's report by the

member's physician.  The City shall have the right to have the member examined by a physician of its

choice.  In the event of a conflict of opinion between the member's physician and the City's

physician, then a third physician mutually agreeable to both parties shall be selected.  The opinion

of said third physician shall be conclusive on all parties.  The City has the right to have a member

examined, and re-evaluated, by a physician of its choice, at any time.

**Section 3.  Sick Leave Incentive**

Any employee having perfect attendance, defined as calling in sick one or less times, during the

course of the fiscal year will be granted three (3) days' pay at their normal rate of pay, payable the first

pay period after the end of the fiscal year.

**Section 4.  Bereavement Leave**

Up to five (5) consecutive days of bereavement leave with regular pay shall be granted in the

event of the death of a member's spouse or domestic partner, grandparent, parent, step-parent,

15

W2157-8

sibling, child, step-child, or grandchild.

Up to three (3) consecutive days of bereavement leave with regular pay shall be granted in the event of the death of a member's niece, nephew, father-in-law, mother-in-law, brother-in-law, sister-in-law, son-in-law, or daughter-in-law.

Up to one (1) day of bereavement leave with regular pay shall be granted in the event of the death of a member's aunt, uncle, cousin or spouse's or domestic partner's grandparent.

**Section 5. Hypertension**

Any member diagnosed with hypertension agrees to a six (6) month rehabilitation program to include the AMA best practices for hypertension including but not limited to medications, dietary and exercise programs as prescribed by a treating physician.  The member agrees to continue to participate in the prescribed program and provide medical examinations and progress reports from the treating physician to the human resources director.  If at the end of the six (6) month period of medically supervised rehabilitative protocols, the member continues to suffer from hypertension, and if in the opinion of the treating physician and City's physician further treatment would indicate a likelihood of success, the member shall continue with said medical directives and protocols for another period of six (6) months.

A member suffering from hypertension, which in the opinion of the member's treating physician and the City's physician, is capable of being controlled by medication, diet and/or exercise, shall be required to continue to work and shall not be eligible to receive a disability pension.  If, however, in the opinion of the member's treating physician and the City's physician (or if there is disagreement among said physicians) that said member's hypertension cannot be controlled by medication, diet and/or exercise, then said member shall be entitled to apply for a disability pension in accordance with Article XX of this Agreement.  The determination of whether or not a member's hypertension is a service connected disability or non-service connected disability shall be made in

16

accordance with Section 2 of Article XX. In the event a member with hypertension desires to remain

in active service and there is a disagreement among the treating physician and the City's physician

regarding the members ability to remain in active service, a third physician shall be selected by said

physicians and that physician's opinion shall be binding.

### Section 6.  Moonlighting

Members will be prohibited from working a second job while out on sick leave.

### Section 7.  Light Duty

When a police officer has been certified by the employee's physician or the City's physician as

capable of performing light duties as a result of an injury or illness on or off the job, the City,

consistent with its needs and in its best interests, shall assign such police officers for light duty in the

Police Department. The assignments to such light duty shall be on a 'first-out/first-in basis' as

available. The City will use its best efforts to assign the police officers to the shift he/she normally

works. In the event that the employee's physician and a physician selected by the City disagree as to

the police officer's fitness to assume light duties, both shall select a neutral physician, who specializes

in that related field of medicine, whose decision shall be final and binding.

### Section 8.  Donation of Sick Leave and Vacation Time

A member may elect to donate, subject to City approval, any accumulated sick leave time or

vacation time to any member of equal or lower rank. In order to receive donated sick time or

vacation time, a member must be:

    (a)    Suffering from a non-I.O.D. related illness (including maternity leave); or

    (b)    Absence from work due to an immediate family member's illness; or

    (c)    Absence from work due to bereavement of an immediate family member.

In order to receive the donated time, the recipient must have exhausted all of their sick time

and vacation time.

17

W2157-8

In the case of a member, who has exceeded his/her maximum pay out allotment of sick time accrued, the donations must come off of a donor member's payable vacation time or sick time (i.e., 180 days or less accrued time).

The member donating days will then start to accumulate sick leave or vacation days in accordance with the regular schedule to replace sick time or vacation time that was donated from their payable allotment of sick time (i.e. replacing time from the 180 day count). If this donating member uses sick time for their own ailment, the sick time will be deducted from their total allotment.

## ARTICLE XIII:  INSURANCE

### Section 1.  Life Insurance

The City shall pay for life insurance in the amount of Fifty-Thousand Dollars ($50,000.00), with double indemnity for employees killed in the line of duty, the full cost of such premium to be paid by the City.

This benefit is in addition to any other benefit a member may be entitled to under this Agreement and federal, state or municipal law.

### Section 2.  Death in the Line of Duty

In the event that member of the bargaining unit dies, or incurs an illness resulting in death, while in the line of duty then his/her designated beneficiary or estate shall be entitled to receive from the City the sum of Ten-Thousand Dollars ($10,000.00).  This benefit is in addition to any other benefits a member may be entitled to under this Agreement and federal, state or municipal law.

Any employee who is killed while in the actual performance of his/her duties or whose death directly results from injuries sustained in the actual performance of his/her duties shall be promoted posthumously to the next highest rank (e.g. Patrol Officer to Sergeant, Detective to Detective-Sergeant, Sergeant to Lieutenant, Lieutenant to Captain, and Captain to Major), and all benefits that

18

his/her beneficiaries are entitled to receive under this Agreement will be calculated at the "new rank."

## Section 3.  Liability Insurance

The City agrees to provide and pay for liability insurance for all members of the bargaining unit to protect them for their actions while performing their duties as police officers as prescribed by City Charter and state statute.

## ARTICLE XIV:  INJURED ON DUTY

### Section 1.  Benefits Payable

A member of the bargaining unit who is injured in the line of duty shall receive full salary while his/her incapacity exists or until he/she is placed on disability pension.  All injuries and recurrences of injuries shall be reported as required by department regulations.

Members of the bargaining unit who for a period of eighteen (18) continuous months are unable to work due to their work-related injury shall return to regular duty within thirty (30) days thereafter, or shall be deemed physically unfit for duty, and thereafter shall be placed on a disability pension within sixty (60) days of the date upon which they had to return to service in accordance with Article XX, Section 2 herein.

### Section 2.  Medical Care for Injuries

Medical care for members injured in the line of duty, shall be as follows:

(a)      A member injured in the line of duty whose condition requires hospitalization shall have the right to select their own hospital and their own attending physician.  The choice shall be made by the member whenever possible.

(b)      In other cases involving injuries in the line of duty, which do not require hospitalization, the injured member shall have the right to be treated by a physician of his/her choice.

(c)      When a member has suffered a minor injury in the line of duty, which does not

19

W2157-8

require hospitalization or the care of a physician, a report on the injury shall be made to the Chief, in accordance with Police Department regulations.

(d)     When a member has suffered an injury in the line of duty, and subsequently claims a recurrence of that injury, the member shall be examined by a physician selected by the City. If the City's selected physician finds that the present condition is not related to the previous injury, the member shall be entitled to be examined by the physician who attended to the member for the original injury. If the opinion of the member's physician is in conflict with that of the City selected physician as to whether or not the member's condition is a recurrence of the previous injury in the line of duty, then a third physician specializing in the related field of injury and mutually agreeable to the City's physician and the member's physician shall examine said member. The opinion of said third physician shall be conclusive on all parties. If it is finally determined that the said injury is a recurrence of the previous injury in the line of duty, the City shall be responsible for the payment of the member's medical expenses.

(e)     In all cases involving injuries, the City may request, or require, a member to submit to re-examination by a physician selected by the City.

(f)     The benefits under this section shall not be in lieu of, but shall be in addition to all the benefits payable to any member of the bargaining unit under any federal, state or municipal law.

## Section 3. Moonlighting

Members will be prohibited from working a second job while out on Injured on Duty or Light Duty status.

## Section 4. Light Duty

When a police officer has been certified by the employee's physician or a physician selected by the City as capable of performing light duties as a result of an injury or illness on or off the job, the City, consistent with its needs and in its best interests, shall assign such police officer for light

20

duty in the Police Department. The assignments to such light duty shall be on a 'first-out—first-in basis' as available. The City will use its best efforts to assign the police officer to the shift he/she normally works. In the event that the employee's physician and the City's physician disagree as to the police officer's fitness to assume light duties, both physicians shall select a neutral physician specializing in the related field of injury and whose decision shall be final and binding.

## ARTICLE XV:  HEALTH & DENTAL

**Section 1.  Coverage for Active Members**

The City shall provide each member with a medical plan design substantially similar to the Blue Cross Blue Shield of Rhode Island Healthmate 80/60 with a Two Thousand Dollar ($2,000.00)/Four Thousand Dollar ($4,000.00) plan with Twenty Dollar ($20.00) primary care office visits, Thirty Dollar ($30.00) specialist visits and One Hundred Fifty Dollar ($150.00) emergency room co- payments. The City shall also provide a dental benefit design substantially similar to the current custom dental plan in place with Delta Dental. The City will also provide a Health Reimbursement Account which will cover a portion of the deductible in place as of the date of this agreement (including the full year adjustment effective January 1, 2012) as set forth in the HRA Application dated August 1, 2011.

**Section 2. Coverage for Retired Members**

Retirees who retire with twenty-five (25) years or more of service shall be eligible to participate in individual health coverage under the same terms in existence for active employees up to his/her sixty-fifth (65) birthday. Said retirees may elect family coverage but will be responsible for the total difference in costs between individual coverage and family coverage.

## ARTICLE XVI:  CLOTHING & EQUIPMENT

**Section 1. Clothing and Equipment Allowance**

Each member of the collective bargaining unit shall-receive an annual clothing allowance (for new uniforms and maintenance of uniforms) and equipment allowance (for the maintenance or repair of various items of police equipment, including, without limitation; gun belt, holster, flashlight, handcuffs, off-duty weapon, ammunition, bulletproof vest, etc.) of a total of One Thousand Dollars ($1,000.00). The annual clothing and equipment allowance shall be paid in the first pay period of April.

W2157-8

The City shall replace and repair clothing and other personal property normally worn by members in performance of their regular duties, when the same is destroyed or damaged in the course of performing said regular duties.

Members shall purchase only articles of uniform and personal equipment approved by the Chief.  Newly appointed members, however, shall, after successfully completing one (1) year of continuous service, be reimbursed for a complete set of uniform clothing.  Said reimbursement, for initial clothing, will be made within thirty (30) days after completion of one (1) year of continuous service, and successful completion of the Rhode Island Municipal Police Training Academy.

The payment of this equipment allowance by the City shall not be construed evidence any obligation of the City to assume full cost of acquiring, maintaining or repairing the various items of police equipment referenced herein for illustrative purposes.

**Section 2.  Prorated Upon Retirement**

The annual clothing and equipment allowance shall be prorated upon a member's date of retirement.

## ARTICLE XVII:  EDUCATIONAL BENEFITS

Members of the bargaining unit shall be entitled to all the benefits provided under Title 42, Chapter 28.1 of the Rhode Island General Laws.  The past practice for the procedure for reimbursement/payment of educational benefit costs will continue to be followed by the parties.

## ARTICLE XVIII:  RETENTION OF
## PRE-EXISTING RIGHTS

Notwithstanding the enumeration of rights and privileges pertaining to the members of the bargaining unit under the terms of this Agreement, it is further agreed between the parties hereto that all rights, privileges, and benefits, heretofore afforded members of the bargaining unit are

22

W2157-8

retained by said members as if specifically included herein.

## ARTICLE XIX:  GRIEVANCES

### Section 1.  Grievance Defined

A Grievance shall mean a complaint by an employee or a complaint by the FOP Lodge 2 that:

(a)      There has been any violation, misinterpretation, or a misapplication of the provisions

of this Agreement or violation of any established policy or practice; or

(b)      An employee's health, safety or  civil liability is jeopardized by a condition, which

is possible to correct.

### Section 2.  Grievance Procedure

Alleged grievances of members of the bargaining unit shall be handled in accordance with the

following procedure:

(a)      An employee having a grievance shall, in writing, bring the grievance to the attention

of the Grievance Committee of the FOP Lodge 2 within sufficient tune to allow for filing the same

with the Chief.  If, in the judgment of the Committee, the nature of the grievance justifies further

action, it shall, through the President of the FOP Lodge 2 or his/her designee, file the grievance in

writing with the Chief or his/her designee.

(b)      The Chief and the Human Resources Director shall meet with the President of the FOP

Lodge 2 or his/her designee within five (5) working days of the receipt of a request from said officer

or the FOP Lodge 2, which must be made at the time of the filing of the grievance unless otherwise

mutually agreed.  If either party feels it is necessary, the member or members involved in the

grievance shall be ordered to appear before the Chief and the Personnel Director and the President

of FOP Lodge 2 or his/her designee for the purpose of testifying on the grievance.  Within six (6)

working days (unless otherwise agreed) of the first meeting among the Chief, the Personnel

Director and the President of the FOP Lodge 2 or his/her designee, the Personnel Director shall

W2157-8

render a decision, in writing, a copy of the same to be delivered to the President of the FOP Lodge 2 or his/her designee.

(c)     If the decision of the Personnel Director is not acceptable to the FOP Lodge 2, then the Director of Public Safety or his/her designee shall meet with the President of the FOP Lodge 2 or his/her designee within three (3) working days of the receipt of the unacceptable decision of the Personnel Director.  Within five (5) working days (unless otherwise agreed) of the first meeting between the Director of Public Safety or his/her designee and the President of the FOP Lodge 2 or his/her designee, the Director of Public Safety shall render his/her decision, in writing, a copy of the same to be delivered to the President of the FOP Lodge 2 or his/her designee.

(d)     If the decision of the Director of Public Safety is not acceptable to the FOP Lodge 2, said FOP Lodge 2 may request an assignment of an arbitrator by the American Arbitration Association ("AAA") or the Labor Relations Connection ("LRC").  The arbitrator shall have no authority or power to add to or subtract from the terms and conditions of this Agreement.  Fees and necessary expenses of the arbitration shall be borne equally by the parties.

(e)     The decision handed down by this arbitrator shall be submitted to the Director of Public Safety and the President of the FOP Lodge 2, and shall be binding in nature in all matters.

### Section 3.  Grievances Filed by FOP Lodge 2

In addition to the foregoing grievance procedure, FOP Lodge 2 shall have the right to initiate a grievance as a grievance on its own behalf by filing the same in writing with the Chief.  In such event, the grievance shall be processed in accordance with the provisions of Section 2, steps (b), (c) and (d), above.

### Section 4.  Time Limitations

If a grievance is not filed with the Chief by the FOP Lodge 2 within fifteen (15) days of the date of the event giving rise to the grievance or grievant's knowledge thereof, or if the FOP Lodge 2

W2157-8

fails to file a demand for Arbitration under the rules of the AAA or LRC within thirty (30) days of an unacceptable decision of the Director of Public Safety (Section 2, (d) above), the grievance shall be deemed to have been waived.

## Section 5.  Law Enforcement Officers' Bill of Rights

The grievance procedure set forth above in this Article shall not apply in those cases involving the suspension or dismissal of any member of the bargaining unit.  In such cases, the provisions set forth in the Law Enforcement Officers' Bill of Rights shall govern.

## Section 6.  Employee Disciplinary Records

If a disciplined employee has not engaged in any further misconduct or violated applicable employment policies, rules or regulations, and has otherwise satisfactorily performed the duties and responsibilities of his position, then the documentation of the following forms of discipline shall be deemed no longer outstanding for the purposes of progressive discipline and promotional process and inadmissible in a grievance proceeding after expiration of the time indicated.

| Form of Discipline | Time Period |
| --- | --- |
| Verbal warning | 1 year from issuance |
| Written warning | 2 years from issuance |
| Suspension | Three years from the final date of the suspension term |

## ARTICLE XX:  PENSION PLAN
## COVERAGE FOR MEMBERS

### Section 1.  Normal Retirement

A.       Effective August 1, 2011, employees of the Police Department who were previously covered under the John Hancock Pension Plan and all new employees who become members of the Police Department, will be provided pension benefits in accordance with the new Central Falls Pension Plan, and with the terms set forth herein.

W2157-8

B.      An employee will be considered vested after five (5) years of service.

C.      All employees may retire at his/her own option upon completion of twenty-five (25)

years of credited service, regardless of age, and shall receive as a pension fifty percent (50%) of the

employee's average regular salary including longevity and holiday pay for the highest consecutive five

(5) years within the final ten (10) years of employment (the "Average Salary").  An employee who

chooses to remain on the department after twenty-five (25) years of credited service shall receive an

additional one percent (1%) for each additional complete year of credited service up to a maximum of

fifty-five (55%) of the Average Salary.

D.      Provided, that any member who chooses to retire and collect a pension prior to age

fifty-seven (57) shall have his/her pension reduced by the following early retirement factor (ERF):

| Age at Commencement | Reduction Multiplier |
|---|---|
| 30.00 | 0.1072 |
| 31.00 | 0.1159 |
| 32.00 | 0.1252 |
| 33.00 | 0.1354 |
| 34.00 | 0.1464 |
| 35.00 | 0.1584 |
| 36.00 | 0.1713 |
| 37.00 | 0.1854 |
| 38.00 | 0.2007 |
| 39.00 | 0.2174 |
| 40.00 | 0.2354 |
| 41.00 | 0.2551 |
| 42.00 | 0.2766 |
| 43.00 | 0.2999 |
| 44.00 | 0.3254 |
| 45.00 | 0.3532 |
| 46.00 | 0.3836 |
| 47.00 | 0.4169 |
| 48.00 | 0.4533 |
| 49.00 | 0.4932 |
| 50.00 | 0.5370 |
| 51.00 | 0.5852 |
| 52.00 | 0.6382 |
| 53.00 | 0.6967 |
| 54.00 | 0.7613 |
| 55.00 | 0.8327 |

W2157-8

| | |
|---|---|
| 56.00 | 0.9120 |
| 57.00 | 1.0000 |

E.        Provided, further, any member who chooses to retire prior to age fifty-seven (57), but defers his receipt of pension benefits until age fifty-seven (57) or any other age prior thereto, shall only have his pension amount reduced by the early retirement factor applicable to the age upon which he begins to collect his pension benefits.

F.        Upon signing of the agreement, existing members of the Police Department shall begin making pension contributions in the amount of nine and one half percent (9.5%) of their salary (which includes base pay, holiday and longevity pay) on a pre-tax basis paid bi-weekly.  All new employees who become members of the Police Department shall make pension contributions of ten and one half percent (10.5%) of their salary on a pre-tax basis paid bi-weekly.

G.        Benefits shall be paid to the spouse or dependent children upon the death of a retired police officer or police office eligible to retire pursuant to R.I. Gen. Laws § 45-21.3-1 and § 45-21.3-2, as the same may be amended.

**Section 2.  Disability Retirement**

A.        Determination of Disability Status

The determination of disability from any cause, whether service connected or non-service connected, shall be made upon the basis of reports on examinations made by three (3) physicians consisting of the treating physician, a physician selected by the City, and a third physician to be selected by the other two (2) physicians.  A majority decision by the selected physicians must be reached with regard to (a) determination of disability, and (b) whether the disability is total and permanent, or partial and permanent.  The member shall be provided a written determination of the decision within sixty (60) days after the date that the City has received all three (3) physicians' reports.

For the purposes of this agreement, total and permanent disability shall be determined by the City using the same standard for determining disability status as utilized by Social Security.  For the

27

purposes of this Agreement, presumptive total and permanent disability shall include but not be limited

to:

 * Amputation of the leg at the hip
 * Complete deafness
 * Complete blindness
 * Confinement to bed because of a long-standing condition
 * Confinement to a wheelchair due to a long-standing condition
 * Being in hospice care
 * Spinal injuries which have resulted in an inability to walk

For the purposes of this Agreement, the term "partially permanently disabled" shall mean that

the member who is disabled can no longer perform his or her duties as a police officer based upon his or

her employment with the City, but who has not been determined to be totally disabled from all gainful

employment, based upon age, education, or impairment.

B.      Service Connected Disability

(a)      A member incurring disability resulting from an act of duty and determined to be totally

and permanently disabled, shall be entitled to a service connected disability pension equal to sixty-six

and two thirds percent (66 2/3 %) pay of the salary including longevity and holiday of the rank held at

the time of his disability for life.   A member who is determined to be totally and permanently disabled

under this provision shall not be subject to the recertification procedures or income offset procedures

set forth in this Agreement.

(b)      A member incurring a disability resulting from an act of duty and determined to be

partially and permanently disabled, shall be entitled to a service connected disability pension that shall

be fifty percent (50%) of the salary including longevity and holiday pay of the rank held at the time of his

disability until he reaches full Social Security retirement age.  Upon reaching his/her full Social Security

retirement age, he/she shall be placed on a regular pension.  The member shall then be entitled to

receive the higher of either his normal retirement benefit at the time of being found disabled or a

W2157-8

pension benefit in the amount of twenty-five (25) percent of the salary (including longevity and holiday pay) of the rank held at the time of his or her disability.

(c)    A member who is determined to have a disability resulting from an act of duty, whether determined to be total or partially disabled, shall not have his pension benefit reduced by the early retirement fact as set forth in Section 1 of this Article.

C.    Non-Service Connected Disability

(a)    A member of the police department who has been determined to be totally and permanently disabled, as defined in Article XX, Section 2, as a result of a non-service connected injury or disease shall be entitled to receive a pension of fifty percent (50%) of his or her highest salary including longevity and holiday pay of the rank held at the time of his disability .

(b)    A member of the police department who has been determined to be partially and permanently disabled shall be entitled to receive a pension of two percent (2%) of his or her highest salary at the time of disability per year of credited service with the police department.

(c)    A member of the police department shall only be entitled to a non-service connected disability pension provided he or she has completed five (5) years of credited service with the police department.  If a member has not completed five (5) years of credited service with the police department he will be terminated and any contributions made to the City pension plan shall be returned with interest.

(d)    A member who applies for a non-service connected disability, whether said disability is determined to be total or partial, shall have his pension benefit reduced by the early retirement factor set forth in Section 1 of this Article if he or she elects to receive pension benefits prior to attaining age fifty seven (57).

29

W2157-8

D.      Recertification of Disability

(a)      A member of the police department who has been determined to be partially disabled, whether service connected or non-service connected, shall be required to submit to an examination at least one (1) time per year for a period of not more than four (4) years from the date the member is placed on disability by a physician appointed by the City to establish that the member remains incapacitated for service as a police officer and is entitled to continue to receive a disability pension.  In the event a physician specifically recommends re-examination on a more frequent basis, the City may conduct a second examination within the year, but in no event shall it be more than two examinations per year.  The member has the option to be evaluated by his treating physician, if he does not agree with the medical opinion of the City's physician.  If the physician chosen by the City and the member's treating physician disagree, they shall both select a third physician whose decision shall be binding by both parties.  The City shall cancel a disability pension upon evidence that the member is no longer disabled for such service in accordance with the above procedures.  Neither party will engage in "doctor shopping."

(b)      The disability pension presently being received by the member will be reduced to fifty percent (50%) of the prior disability benefit or the member may elect to revert his benefit to a normal retirement benefit, based upon a two percent (2%) accrual rate for each year of credited service prior to his disability, reduced by the early retirement factor set forth in Section 1 of this Article for each year the member elects to receive benefit prior to attaining age fifty-seven (57).

(c)      If the member elects to no longer receive any form of pension benefit from the City,  the member may elect to receive a refund of the excess, if any, of the contributions made by the member, including interest, over the amounts received by the member on the disability pension.

30

(d)     Should a retiree refuse to submit to such medical examination, his or her pension may be suspended until his or her withdrawal of such refusal, and should his or her refusal continue for one (1) year, all rights in and to his or her pension may be suspended indefinitely by the City.

(e)     Should a retired employee receive a disability pension again become an active employee for the City, his/her disability retirement pension shall cease and he/she shall immediately become a member of the retirement system as of the date of his/her reemployment. His/her creditable service at the time of his/her disability retirement shall be restored in full force and effect.  Reentry into service shall be at the direction of the City.

E.      Outside Income Offset

(a)     Any member receiving a disability pension, whether service connected or non-service connected, shall be required to submit to the City at least once each a year a sworn written report of his/her earned income for the preceding twelve (12) months on a form supplied by the City, together with supporting data as may reasonably be required.  Any adjustment in disability pension payments shall be based upon such statements of income.

(b)     Earned income is defined as amounts received as compensation for services rendered. The member's pension amount for the following twelve (12) months after the filing of the report of earned income shall be reduced dollar for dollar by any amount the actual earned income when added to the disability pension benefit, exceeded the salary paid including holidays and longevity to a permanent member with the same rank and seniority on active duty at the time such reports are filed.

**Section 3. Cost of Living Adjustment**     All retired members shall receive a two percent (2%) non-compounding cost of living increase to his/her pension.  Cost of living adjustments shall be made effective July 1 following a member's retirement date and every July 1 thereafter.

W2157-8

**Section 4. Termination**

If upon termination, the member has not accrued five (5) years of vesting service, then he/she will be entitled to a refund of his/her accumulated contributions, with interest. If upon termination, the participant has accrued five (5) or more years of vesting service he/she may elect either (i) to receive a refund of their accumulated contributions with interest, or (ii) to leave their accumulated contributions in the plan and receive a deferred annuity. If the deferred option is elected, the participant may elect to start the annuity at any age after 55. If the annuity commences prior to age 57, an early retirement reduction will apply. If a participant elects a refund of their accumulated deductions with interest, no other benefits are payable from the trust.

**Section 5. Copy of Plan/Actuary Study**

The City agrees that a copy of the City of Central Falls Pension Plan, Plan Document, will be provided to each member and which will include information about the City's Actuarially Required Contribution ("ARC"). The City also agrees that each year it will provide all members covered under this Article an actuarial study report on the City Pension Plan

## ARTICLE XXI:  DURATION OF AGREEMENT

This Agreement shall be effective as of November 23, 2011 and shall remain in full force and effect through June 30, 2016 and from year to year thereafter in accordance with R.I. Gen. Laws § 28-9.2 thereafter unless it is replaced by a newly negotiated contract between both the City and FOP Lodge 2. This Agreement shall be binding upon the City and FOP, Lodge 2 and its successors and assigns. No provisions, or article herein contained shall be nullified or affected in any manner, as a result of any change(s) in the administration or administrative procedures in the City, or the FOP, Lodge No. 2.

W2157-8

CITY OF CENTRAL FALLS

RHODE ISLAND

CENTRAL FALLS POLICE

DEPARTMENT, FRATERNAL ORDER

OF POLICE, LODGE NO. 2

BY: _____

BY: _____

President

BY: _____

BY: _____

Negotiating Committee Member

DATED: 11/23/11 _____

DATED: 11/23/11 _____

WITNESS: _____

WITNESS: _____

33

W2157-8